1
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLUMBIA

2

   * * * * * * * * * * * * * * *  )

3   UNITED STATES OF AMERICA,      )   Criminal Action
                            )   No. 18-343

4               Plaintiff,     )
                            )

5     vs.                     )
                            )

6   GEORGE HIGGINBOTHAM,        )   Washington, DC
                            )   November 30, 2018

7           Defendant.     )   1:21 p.m.
                            )

8   * * * * * * * * * * * * * * *  )

9

10

       TRANSCRIPT OF ARRAIGNMENT AND CHANGE OF PLEA

11     BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,
            UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE GOVERNMENT:     RYAN ELLERSICK, ESQ.
                         NICOLE LOCKHART, ESQ.

15                      UNITED STATES DEPARTMENT OF JUSTICE
                      PUBLIC INTEGRITY SECTION

16                      1400 New York Avenue, NW
                      Suite 1200

17                      Washington, DC 20005

18                      JOHN KELLER, ESQ.
                      UNITED STATES DEPARTMENT OF JUSTICE

19                      PUBLIC INTEGRITY SECTION
                      10th and Constitution Avenue, NW

20                      Washington, DC 20530

21                      WOO LEE, ESQ.
                      JOSHUA SOHN, ESQ.

22                      UNITED STATES DEPARTMENT OF JUSTICE
                      MONEY LAUNDERING AND ASSET RECOVERY

23                        SECTION
                      950 Pennsylvania Avenue, NW

24                      Washington, DC 20530

25

1    APPEARANCES, CONT'D:

2    FOR THE DEFENDANT:        LANCE A. ROBINSON, ESQ.
                               CHRISTOPHER MEAD, ESQ.
3                              LONDON & MEAD
                               1225 19th Street, NW
4                              Suite 320
                               Washington, DC 20036
5

6    REPORTED BY:             LISA EDWARDS, RDR, CRR
                              Official Court Reporter
7                             United States District Court for the
                                District of Columbia
8                             333 Constitution Avenue, NW
                              Room 6706
9                             Washington, DC 20001
                              (202) 354-3269
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good afternoon, everyone.

2          MR. ELLERSICK:  Good afternoon, your Honor.

3          MR. ROBINSON:  Good afternoon, your Honor.

4          THE COURT:  Go ahead and call the case.

5          THE COURTROOM DEPUTY:  Criminal Case 18-343, the

6    United States versus George Higginbotham.

7          Counsel, would you please identify yourself for

8    the record.

9          MR. ELLERSICK:  Good afternoon, your Honor.

10          Ryan Ellersick for the United States.  Also with

11    me at counsel table are John Keller and Nicole Lockhart from

12    the public integrity section and Woo Lee and Joshua Sohn

13    from the money laundering and asset recovery section.

14          THE COURT:  Good afternoon.

15          MR. ROBINSON:  Good afternoon, your Honor.

16          Lance Robinson on behalf of Defendant George

17    Higginbotham.  And with me at counsel table is Christopher

18    Mead.

19          THE COURT:  Good afternoon.

20          MR. MEAD:  Good afternoon, your Honor.

21          THE COURT:  Good afternoon, Mr. Higginbotham.

22          THE DEFENDANT:  Good afternoon.

23          THE COURT:  We're here for a plea.

24          I do have the pretrial services report.  So I'll

25    deal with that at the end.  If he's ready to proceed, we can

```
 1    arraign him on the indictment because I don't believe he's

 2    been arraigned yet.

 3            THE COURTROOM DEPUTY:  May the record reflect that

 4    the Defendant has received a copy of the information.

 5            Does the Defendant waive --

 6            THE COURT:  Is it information or indictment?

 7            MR. ROBINSON:  It's an information, your Honor.

 8            THE COURT:  Information?  Okay.

 9            THE COURTROOM DEPUTY:  Information.

10            Does the Defendant waive formal reading of the

11    information?

12            THE DEFENDANT:  Yes, I do.

13            THE COURTROOM DEPUTY:  In Criminal Case 18-343, in

14    which you are charged in Count 1 with conspiracy to make a

15    false statement to banks and a forfeiture allegation, how

16    does the Defendant wish to plead?

17            THE DEFENDANT:  Guilty.

18            THE COURTROOM DEPUTY:  Would you raise your right

19    hand, please.

20            (Whereupon, the Defendant was duly sworn.)

21            THE COURT:  Mr. Higginbotham, move the microphone

22    straight up so you don't have to keep leaning over, and you

23    can move it closer to you so we can hear you and we have a

24    record.

25            I'm going to be asking you some questions as part
```

1    of this plea.  I need to make a finding at the end that

2    you're entering this plea knowingly and voluntarily.  So the

3    questions relate to that.

4            If you don't understand what I'm asking you -- I

5    realize you're an attorney, but this is, I'm sure, a

6    different proceeding.

7            So if you don't understand anything that I'm

8    asking you, please a -- at least I'm assuming he's an

9    attorney.

10           Am I correct or not?

11           MR. ROBINSON:  You're correct, your Honor.

12           THE COURT:  If you don't understand anything,

13   don't just give me the answer you think I want to hear.

14   Make sure you ask.  You also can consult with your lawyer at

15   any time.

16           As I go through this, I may be explaining things

17   differently than what you've discussed with your attorney.

18   If it doesn't sound like what you understood, again, please

19   speak up.

20           Also, I want you to make sure you understand that

21   you can't come back in a week or two and say, "Well, Judge,

22   I've changed my mind."  We need to make sure this is really

23   what you want to do.

24           We also need to put on the record everything that

25   is related to this agreement.  So if it's not in writing or

1    we don't talk about it orally, you can't come back and say

2    well, this or that was part of it.  Okay?  Do you

3    understand?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  So I've just placed you under oath.  I

6    want to make sure that you understand that, if you don't

7    answer my questions truthfully, that you could be prosecuted

8    for perjury or for making a false statement.

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  You've been charged in a criminal

11   information with Count 1, conspiracy to make false

12   statements to banks, and that is what you're -- and there

13   was also a forfeiture count.

14             You are pleading to the information, which is the

15   Count 1 conspiracy to make false statements to banks, and

16   you are agreeing to a forfeiture, as I understand it,

17   although the amount has not been determined.

18             The Government has agreed not to seek detention.

19   Pending sentencing, the Court will make an independent

20   decision.

21             In terms of allocution, recommendations to the

22   Court about a sentence, the Government is reserving its

23   right to make recommendations and the plea letter does

24   discuss things.

25             But is that the basic agreement as you understand

1    it?

2              THE DEFENDANT:  Yes, your Honor, it is.

3              THE COURT:  Anything that -- counsel, that I

4    didn't bring up as strictly the basic?

5              MR. ROBINSON:  No, your Honor.

6              THE COURT:  Then, let me ask you some background

7    questions.

8              How old are you, sir?

9              THE DEFENDANT:  46.

10             THE COURT:  And what's your date of birth?

11             THE DEFENDANT:  9-18-72.

12             THE COURT:  And how far have you gone in school?

13             THE DEFENDANT:  Juris doctor.

14             THE COURT:  Where were you born?

15             THE DEFENDANT:  Washington, DC.

16             THE COURT:  In the last 48 hours, have you taken

17   any alcohol, any drugs?

18             THE DEFENDANT:  Not at all.

19             THE COURT:  How about any kind of medication?

20             THE DEFENDANT:  No, ma'am.

21             THE COURT:  What was the process with which you

22   went through the plea letter and the other materials with

23   your counsel?  Just explain to me how you did it.

24             THE DEFENDANT:  On a number of occasions, I met

25   with my counsel both in person and on the phone and

1    discussed the information as well as the plea, as well as

2    the factual basis, at length.

3              THE COURT:  So have you read all of it?

4              THE DEFENDANT:  Yes, I have, your Honor.

5              THE COURT:  Have you ever received any treatment

6    for any type of mental illness or emotional disturbance?

7              THE DEFENDANT:  No, your Honor, I have not.

8              THE COURT:  You have a copy, I believe, of the

9    information, which sets out the charge against you.

10             Have you fully discussed that charge with your

11   counsel?

12             THE DEFENDANT:  Yes, your Honor, I have.

13             THE COURT:  And are you completely satisfied with

14   the services of your attorney in this case?

15             THE DEFENDANT:  Yes, your Honor.  I am very

16   satisfied.

17             THE COURT:  Have you had enough time to talk with

18   your attorney, discuss the case, review the materials in

19   order to make a decision to accept the plea?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  I'm going to go through the basic

22   constitutional rights.  My initial questions will be whether

23   you understand your rights.

24             So the first is:  You're pleading guilty to a

25   felony information.  So you have not -- the case has not

1    been indicted, which means that you do have a right to a

2    grand jury indictment.

3              In other words, the Government would have to

4    convince 12 grand jurors out of at least 16, but not more

5    than 23, that there's probable cause that the crime was

6    committed and that you're actually the person who committed

7    it.

8              Do you understand your rights?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  And have you given up that right?

11             THE DEFENDANT:  Yes, your Honor, I have.

12             THE COURT:  Did you sign a waiver?

13             THE DEFENDANT:  Yes, your Honor, I did.

14             THE COURT:  Now, you have also a right to plead

15   not guilty and have a jury trial in this case.  12 citizens

16   from the District of Columbia would be summoned to the

17   courtroom.

18             You, through counsel and the Government and the

19   Court, could ask them questions in order to select a jury

20   that would be fair and impartial.

21             And 12 citizens of the District of Columbia would

22   determine your guilt or innocence based on the evidence

23   presented in the courtroom.

24             Do you understand your right to a jury trial?

25             THE DEFENDANT:  Yes, your Honor, I do.

1              THE COURT:  Do you understand that, if you did

2       have a trial, you would have a right to be represented by a

3       lawyer and, if you could not afford one, one could be

4       appointed for you?

5              THE DEFENDANT:  Yes, your Honor, I do.

6              THE COURT:  And do you understand that, at a

7       trial, you would have the right through your lawyer to

8       confront and cross-examine any witnesses against you?

9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  And do you understand that you'd have

11       the right to present your own witnesses and have the right

12       to subpoena them, in other words, require them to come to

13       your defense?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Do you understand that, if you went

16       forward to trial, you would have the right to testify and

17       present evidence on your own behalf if you wanted to, but

18       that you would not have to testify or present any evidence

19       if you didn't want to?  And that's because you can't be

20       forced to incriminate yourself, that is, present evidence of

21       your own guilt.

22              And I would tell the jury that they could not

23       infer any guilt to you based on the fact that you had

24       asserted your constitutional rights.

25              Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that, unless and

3    until I accept your guilty plea, you are presumed by the law

4    to be innocent because it's the Government's burden to prove

5    your guilt beyond a reasonable doubt and, until it does, you

6    can't be convicted at trial?

7          THE DEFENDANT:  Yes, your Honor, I do.

8          THE COURT:  And do you understand that, if you

9    went forward at trial and were convicted, you would have the

10   right to appeal your conviction to the Court of Appeals and

11   have a lawyer again help you prepare your appeal, including

12   one that could be appointed for you?

13         THE DEFENDANT:  Yes, your Honor, I do.

14         THE COURT:  Do you understand that, by pleading

15   guilty, you're giving up your rights to an appeal?  And let

16   me go over.  There is a particular discussion about that in

17   the plea agreement.

18         Do you understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Let's look at Page 9, Paragraph 16,

21   and then on Page 11, Paragraph 18.  It just seems easier to

22   have you look at what's actually in here.  So it's Page 9 at

23   the bottom.

24         So, generally, you would have certain

25   constitutional rights associated relating to an appeal as

1      well as there's a statutory right.

2              And the waiver -- and I'm going to go through it

3      because it's fairly complicated.

4              I take it that you are aware that you have a right

5      to challenge both the sentence as well as the plea on direct

6      appeal.

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  And that you would be able, in certain

9      circumstances, to argue that your guilty plea should be set

10     aside or the sentence set aside or reduced and collateral

11     challenges and that could be under a 2255, which is a form

12     of a writ of habeas corpus.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now, in exchange for promises that the

16     Government has made about this plea agreement, you are

17     voluntarily and expressly waiving all rights to appeal or

18     collaterally attack your conviction, sentence or any other

19     matter related to the prosecution, including any claim that

20     the statute to which you have pled is unconstitutional

21     and/or the conduct admitted as part of the factual basis

22     doesn't fall within the scope of the statute, whether such a

23     right to appeal or collateral attack arises under any other

24     provision of law.

25             Do you understand that?

1            THE DEFENDANT:  Yes, your Honor, I do.

2            THE COURT:  Now, notwithstanding this very broad

3    waiver, if the Government appeals the sentence, then you can

4    file a direct appeal as well.

5            If they don't appeal, you can file a direct appeal

6    or petition for collateral relief on a claim if otherwise

7    permitted by law in such proceeding.

8            In other words, at this point you're giving up

9    your right to appeal directly a claim that it's

10   unconstitutional or your conduct is outside the scope.

11           However, if in another case it became -- your

12   statute that you're pleading under -- under which you're

13   pleading was found to be unconstitutional or your conduct

14   was outside of that scope, you would then be able to take an

15   appeal.

16           So that's the otherwise permitted by law.  So, in

17   other words, you're waiving it if it's otherwise permitted

18   by law in that proceeding.

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor, I do.

21           THE COURT:  And the other thing you could take on

22   appeal, if the Court exceeds the statutory maximum, which

23   would be an unlawful sentence, and also challenging a

24   decision by the sentencing judge to increase -- and this is

25   specific to your case -- to increase the offense level under

1  a specific -- and this is (ii), if you want to look at it --

2  the offense level under 2B1.1(b)(1) by 12 levels or more

3  corresponding to a loss or gain of $250,000 or more.

4          So, in other words, if I sentence you and the

5  offense level was above this, then you would be in a

6  position to appeal.

7          Do you understand that?

8          THE DEFENDANT:  Yes, your Honor, I do.

9          THE COURT:  You could also appeal if I impose an

10  upward departure pursuant to the sentencing guidelines.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor, I do.

13          THE COURT:  And you would also be able to appeal

14  if I did an upward variance, which -- and I'll get to some

15  of this, what the difference between a departure and a

16  variance is.

17          But, anyway, it would be above what is generally

18  set out as the sentencing guidelines.  But, obviously, it

19  would have to be lower than the maximum, and a variance --

20  since the sentencing guidelines are advisory, the Court

21  could vary the sentence and give you one that's above that

22  not as a departure, but as a variance.  Under those

23  circumstances, you could also appeal.

24          Do you understand?

25          THE DEFENDANT:  Yes, your Honor, I do.

1          THE COURT:  And I think the last one is that if

2    you indicated that you did not receive effective assistance

3    of counsel in the proceedings.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And if you do appeal or seek the

7    collateral relief, you cannot raise any other issues other

8    than the exceptions, which I've set out.

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  So have you had a discussion -- I

13   mean, this is a fairly complicated appeal waiver.  Have you

14   discussed this specifically with your counsel both in terms

15   of the constitutionality issue as well as the statutory

16   rights that you have?

17         THE DEFENDANT:  Yes, your Honor, I have.

18         THE COURT:  And did you have a discussion with him

19   in terms of what he's giving up and what the exceptions are?

20         MR. ROBINSON:  I did, your Honor.

21         THE COURT:  And assuming you fell into one of

22   these exceptions in terms of being able to appeal, do you

23   understand that any notice of appeal must be filed within

24   14 days of judgment?

25         If you are unable to afford the cost of an appeal,

1      you can ask to have the appeal filed without cost to you and

2      you also can request counsel to represent you if you cannot

3      afford it.

4                  Do you understand that?

5                  THE DEFENDANT:  Yes, your Honor.

6                  THE COURT:  Now, do you understand that, if you

7      plead guilty and I accept your guilty plea, you'll be giving

8      up the rights I've just explained to you, you're not going

9      to have a trial, and there won't be an appeal unless it

10     falls into one of those exceptions?

11                 Do you understand that?

12                 THE DEFENDANT:  Yes, your Honor.

13                 THE COURT:  Do you want to plead guilty in this

14     case, give up your rights to a trial and your right to an

15     appeal as I've explained it to you?

16                 THE DEFENDANT:  Yes, your Honor, I do.

17                 THE COURT:  The next phase is going to be the

18     discussion of the statement of offense, which is a written

19     proffer.

20                 The Government is going to state what evidence

21     they have relating to your conduct and they've going to

22     match it up with the elements of the offense that you're

23     pleading guilty to.

24                 I want you to listen to it very carefully.  I know

25     you've signed it, but I still go through it.

1          One of the things that I go through in making sure

2     that you're agreeing to everything is to find out whether

3     this is information or actions on your part that you either

4     took at the time or knew at the time.

5          Sometimes the Government has evidence from other

6     sources that still go into the proffer, but it may not be

7     things that you knew at the time.  That's something you know

8     now, but didn't know at the time.

9          I don't know whether that's true.  But when I go

10    through it, I would ask that you indicate that.

11          Go ahead and sit down.

12          We'll go through the proffer, which I'm assuming

13    is what the Government is going to do.

14          And I would ask that, in going through the proffer

15    at the end or however you want to do it, that you then hook

16    it up to the elements of the offense.

17          MR. ELLERSICK:  Would the Court --

18          THE COURT:  If I could just indicate one thing.

19          What we do have is a redacted version, which is

20    fine.  And my understanding is the unredacted version, which

21    would provide some more information and identity of people,

22    has been signed by the Defendant.

23          Is that correct?

24          MR. ROBINSON:  That's correct, your Honor.

25          THE COURT:  But I'm going to work from the

1    redacted version, and I'm assuming you are, too.

2              MR. ELLERSICK:  Yes, your Honor.

3              Would the Court like me to read it verbatim from

4    the factual basis?

5              THE COURT:  I leave it to you as to how you wish

6    to do it.  You do need to go through enough of it to make

7    sure that, one, it makes sense, but also that it includes

8    all of the conduct that you would need in order to meet the

9    elements of the offense he's pleading guilty to.

10             But there may be more detail in here that you

11   don't need to go through.  But I leave it to you.  If you

12   want to read it, that's fine.  It's your choice.

13             MR. ELLERSICK:  I may start reading it, your

14   Honor, and I may deviate at some point, if it's superfluous.

15             THE COURT:  That's fine.

16             MR. ELLERSICK:  Your Honor, we expect that, if

17   this case were to proceed to trial, that the evidence would

18   show that, from in or about April 2017 to in or about

19   January 2018, in the District of Columbia and elsewhere, the

20   Defendant and others knowingly conspired to commit the

21   offense of making false statements to a bank by

22   misrepresenting the true source and purpose of transfers of

23   tens of millions of dollars from foreign accounts to various

24   federally insured financial institutions in the United

25   States.

1          The individuals involved in this conspiracy, your

2    Honor, were the Defendant, an associate of his, who's

3    identified as Coconspirator A, and then a foreign national,

4    identified as Coconspirator B, who is alleged to have

5    orchestrated a multi-billion-dollar embezzlement and bribery

6    scheme from 1 Malaysia Development Berhad, which is commonly

7    known as 1MDB, which was an investment development company

8    wholly owned by the Government of Malaysia.

9          In or about July 2016, the United States

10   Department of Justice filed multiple civil forfeiture

11   complaints seeking the forfeiture of over a billion dollars

12   in assets allegedly associated with laundered proceeds from

13   the 1MDB embezzlement and bribery scheme.

14         Coconspirator B was named in the complaint as one

15   of the primary architects of that embezzlement scheme.

16         In or about March 2017, Coconspirator A asked the

17   Defendant to assist with identifying someone with political

18   influence in the United States who could resolve

19   Coconspirator B's issues surrounding the 1MDB forfeiture

20   matters and DOJ investigation of that scheme.

21         The Defendant introduced Coconspirator A to a law

22   firm recruiter who recommended two different law firms, but

23   Coconspirator B ultimately selected an individual identified

24   as Person 1, who was a nonlawyer business owner, political

25   fundraiser and financier with political connections at high

1    levels of the United States Government.  That person was

2    hired to lobby Government officials to resolve the 1MDB

3    matters.

4         The Defendant had no role or had no involvement in

5    introducing Person 1 to Coconspirator A or Coconspirator B.

6         According to Coconspirator A, Person 1 did not

7    want to be paid directly by Coconspirator B for the services

8    because he didn't want -- did not want to be linked to

9    Coconspirator B.

10        So at Coconspirator A's direction, the Defendant

11   worked on various retainer and consulting agreements that

12   provided for payments to pass-through entities to distance

13   Coconspirator B from Person 1 and anonym ize Coconspirator B

14   in the transaction.

15        According to these written agreements,

16   Coconspirator B would pay tens of millions of dollars to

17   Person 1 through various intermediaries and entities as

18   compensation for Person 1's efforts to lobby United States

19   Government officials to drop all civil and/or criminal

20   matters related to 1MDB.

21        According to Coconspirator A, as part of the

22   lobbying campaign, Person 1 agreed to try to influence a

23   potential nominee for a federal position that would have

24   authority over the 1MDB civil forfeiture matters, but that

25   person ultimately was not nominated.

1          In or about May of 2017, Coconspirator A informed

2     the Defendant that Coconspirator B had another request that

3     was separate from the 1MDB matters that was potentially more

4     lucrative than their work on the 1MDB issue.

5          Coconspirator B wanted Foreign National 1, a

6     former resident of Country Q who was living in the United

7     States on a temporary visa and who had publicly criticized

8     the leadership of Country Q, to be removed from the United

9     States and sent back to Country Q.

10         According to Coconspirator A, Person 1 and others

11    would use their political connections to lobby United States

12    Government officials to have Foreign National 1 removed from

13    the United States.

14         In or about July 2017, Coconspirator A requested

15    that the Defendant meet with Country Q's ambassador to the

16    United States at Country Q's embassy in Washington, DC.

17         The Defendant agreed and on or about July 16,

18    2017, the Defendant went to Country Q's embassy in

19    Washington, DC, and met with the ambassador.

20         The Defendant informed embassy staff and

21    Country Q's ambassador that he was there in his personal

22    capacity and not as a representative of DOJ.

23         At Coconspirator A's request, the Defendant

24    delivered a specific message during the meeting.  That

25    message was that the United States Government officials were

1   working on the matter involving Foreign National 1 and there

2   would be additional information in the future concerning the

3   logistics of returning Foreign National 1 to Country Q.

4          Following the meeting, the Defendant reported to

5   Coconspirator A what has occurred.  Coconspirator A informed

6   the Defendant that, based on Coconspirator A's conversation

7   with Coconspirator B, Coconspirator B was satisfied with how

8   the embassy meeting went.

9          Between in or about May 2017 and in or about

10  September 2017, tens of millions of dollars were transferred

11  from Foreign Company L, which is an entity formed in

12  Country Q, to accounts in the name of an entity in the

13  United States controlled by Coconspirator A.

14         The Defendant understood that, although the money

15  was coming from Foreign Company L, Coconspirator B exercised

16  control over those funds and the transfers occurred at his

17  direction.

18         The Defendant also understood that the purpose of

19  the funds was to pay Person 1 and others to lobby United

20  States Government officials to resolve the 1MDB matters and

21  have Foreign National 1 removed from the United States and

22  sent back to Country Q.

23         To make these international fund transfers appear

24  legitimate, the Defendant worked on various fake loan

25  documents, investment agreements and consulting contracts at

1    the direction of Coconspirator A.

2            The documents were in the names of several

3    foreign and domestic shell companies that concealed

4    Coconspirator B's involvement in the transactions.

5            The purpose in creating the fake documents was to

6    provide a cover story in case the banks or other authorities

7    made inquiries about the true source and purpose of the

8    funds.

9            The Defendant understood that Coconspirator A and

10   Coconspirator B were are concerned that financial

11   institutions in the United States would refuse to execute

12   transactions involving any funds identified as being

13   associated with Coconspirator B.

14           In or about September 2017, at Coconspirator A's

15   request, the Defendant traveled to Country Q with

16   Coconspirator A and others to meet with Coconspirator B.

17           Over the course of several days, Higginbotham met

18   with Coconspirator B, Coconspirator A and others.  During

19   these meetings, Coconspirator B, Coconspirator A and others

20   discussed strategies for secretly funneling more of

21   Coconspirator B's money into the United States to further

22   the lobbying campaign, including coming up with cover

23   stories to explain the movement of money and to conceal the

24   fact that the money was associated with Coconspirator B.

25           They also discussed the strictness of the United

1   States banking system in the wake of the events of

2   September 11, 2001.

3            Coconspirator B stated that he wanted to send the

4   money in smaller installments over a longer period of time

5   in order to avoid scrutiny.

6            Eventually, Coconspirator B came up with a

7   proposal of giving the Defendant power of attorney over the

8   assets of Foreign Company R, another entity formed in

9   Country Q and purportedly owned by an associate of

10  Coconspirator B.

11           In reality, Coconspirator B controlled Company R's

12  assets and the associate was simply a nominee for

13  Coconspirator B.

14           According to could Coconspirator B's proposal, in

15  the event Person 1 and others were successful in having

16  Foreign National 1 removed from the United States, the

17  Defendant, using the power of attorney authority, could sell

18  Company R to Coconspirator A and others associated with

19  Person 1 and use Company R's assets to compensate those

20  involved in the lobbying campaign.

21           At Coconspirator B's direction, the Defendant

22  signed various documents while in Country Q purporting to

23  give the Defendant control over Company R's assets.

24           Upon returning to the United States, the Defendant

25  and Coconspirator A learned that Person 1 and others

involved in the lobbying campaign were dissatisfied with
Coconspirator B's proposal and the fact that the trip to
Country Q had not resulted in additional funds being sent to
the United States.

In or about October 2017, Coconspirator A and the
Defendant agreed that the additional funds that Person 1 and
associates were seeking from Coconspirator B could instead
be deposited into the Defendant's attorney escrow account
pending resolution of the issue concerning Foreign
National 1.

On or about October 23rd, 2017, approximately
$41 million was deposited into the Defendant's escrow
account from Foreign Company R at the direction of
Coconspirator B.

The Defendant, at Coconspirator A's direction,
disbursed several million dollars for one of
Coconspirator A's entertainment projects.

According to Coconspirator A, those funds were
Coconspirator A's cut for helping get the money into the
United States and acting as an intermediary between
Coconspirator B and the individuals engaged in the lobbying
campaign.

Virtually all of the remaining funds were placed
in a certificate of deposit at Coconspirator A's request
because the individuals engaged in the lobbying campaign

1    wanted the money to be secure.

2            The Defendant believed that the funds would be

3    released in the event the lobbying campaign was successful

4    in having Foreign National 1 removed from the United States.

5            Between in or about September 2017 and in or about

6    December 2017, in furtherance of the conspiracy, the

7    Defendant made and caused to be made false statements to

8    three federally insured financial institutions in the United

9    States in order to influence the financial institutions'

10   actions in connection with the tens of millions of dollars

11   transferred from Foreign Company L and Foreign Company R to

12   accounts in the United States to finance Coconspirator B's

13   lobbying campaign.

14           The Defendant understood that Coconspirator B's

15   publicly known status as one of the primary architects of

16   the 1MDB embezzlement and bribery scheme created significant

17   barriers to moving Coconspirator B's money through United

18   States financial institutions.

19           The Defendant, Coconspirator A and Coconspirator B

20   therefore agreed that Coconspirator B's connections to the

21   funds sent to the United States for the lobbying campaign

22   would be concealed from United States financial institutions

23   and the true purpose of the funds would be misrepresented to

24   the financial institutions.

25           Between in or about July and September 2017,

1    Financial Institution X, an institution with accounts

2    insured by the Federal Deposit Insurance Corporation, sent

3    inquiries to Coconspirator A, Coconspirator A's money

4    manager and the Defendant concerning the source and purpose

5    of the tens of millions of dollars in transfers from Foreign

6    Company L to Coconspirator A's business accounts at

7    Financial Institution X.

8            On or about September 27th, 2017, in order to

9    influence the bank's ongoing due diligence, the Defendant,

10   at Coconspirator A's direction, sent a detailed written

11   response to Financial Institution X claiming that Foreign

12   Company L was the source of the transfers and that the

13   purpose of the funds was to finance Coconspirator A's

14   entertainment matters and also to retain a law firm to

15   assist Foreign Company L to resolve a highly complex civil

16   litigation matter.

17           The letter made no mention of Coconspirator B or

18   the lobbying campaign to influence the 1MDB matters and have

19   the foreign -- have Foreign National 1 removed from the

20   United States.

21           In addition, the Defendant attached one of the

22   fake consulting contracts to his response to Financial

23   Institution X as a cover story for some of the money

24   Coconspirator B had transferred to Coconspirator A's

25   business accounts in the United States.

1              On or about September 28, 2017, Financial

2       Institution X informed Coconspirator A that all of his

3       business accounts would be closed on or before October 28,

4       2017, and that effective immediately wires into the accounts

5       would no longer be accepted due to insufficient information

6       regarding the source of funds on previous wires.

7              Financial Institution X subsequently issued

8       cashier's checks totaling approximately $37 million for the

9       remaining balance which were deposited with Financial

10      Institution Y a short time later.

11             Financial Institution Y was a broker-dealer

12      registered with the United States Securities and Exchange

13      Commission that had arrangements with federally insured

14      banks for offering certain account services.

15             In or about October 2017, Coconspirator A and

16      the Defendant opened business accounts at Financial

17      Institution Y that provided separate cash accounts with an

18      affiliate FDIC insured bank where some of the funds from

19      Foreign Company L, which had previously been with Financial

20      Institution X, were maintained.

21             Between in or about October and November 2017, as

22      part of its due diligence, in connection with the account

23      openings, Financial Institution Y repeatedly inquired of

24      Coconspirator A and the Defendant about the source and

25      purpose of the tens of millions of dollars in

1    Coconspirator A's business accounts that had previously been

2    with Financial Institution X.

3           In order to influence Financial Institutions Y's

4    actions with respect to maintaining the accounts,

5    Coconspirator A claimed to a representative of Financial

6    Institution Y that the money was from a foreign investor in

7    Coconspirator A's entertainment projects.

8           In addition, on or about November 6, 2017, at

9    Coconspirator A's direction, the Defendant responded to the

10   representative's question about whose money was in the

11   accounts by falsely claiming, "The funds originated with

12   Foreign Company L and corporation documents attached to an

13   investor in a slate of projects that are currently under

14   review and subject to further discussion."

15          Neither Coconspirator A nor the Defendant

16   mentioned Coconspirator B or the campaign to influence the

17   1MDB matters and have Foreign National 1 removed from the

18   United States.

19          In or about November 2017, Financial Institution Y

20   closed Coconspirator A's business accounts and disbursed the

21   remaining funds, including those from the cash accounts, to

22   Coconspirator A.

23          In or about December of 2017, Financial

24   Institution Z, an FDIC insured bank where the Defendant

25   maintained an attorney escrow account, inquired of the

1    Defendant about the source and purpose of the approximately

2    $41 million deposited into his account from Foreign

3    Company R.

4          In order to influence Financial Institution Z's

5    due diligence with respect to those funds, the Defendant

6    responded that the money was an investment from Foreign

7    Company R in music and entertainment projects for one of his

8    clients.

9          The Defendant did not mention Coconspirator B or

10   the campaign to influence the 1MDB matters and have Foreign

11   National 1 removed from the United States.

12          On or about May 9, 2017, the Defendant submitted a

13   20,000-dollar invoice to Coconspirator A for work related,

14   at least in part, to the conduct described above for

15   Coconspirator A.

16          On or about August 11, 2017, the Defendant

17   submitted a 50,000-dollar invoice to Coconspirator A and his

18   money manager for work related, at least in part, to the

19   conduct described above for Coconspirator A.

20          Coconspirator A paid the Defendant the full amount

21   of both invoices.

22          THE COURT:  If you can pick up the salient ones --

23   you can do it by paragraphs or however you want to do it --

24   in terms of the specific offense characteristics, the

25   elements of the offense.

1          MR. ELLERSICK:  Yes, your Honor.

2          The first element of the offense is that the

3    Defendant agreed with at least one other person to commit

4    the offense of making false statements to a bank, in

5    violation of 18 USC 1014.

6          THE COURT:  Hang on one second.  Let me find

7    the -- I know you gave me the elements of the offense.  Here

8    it is.

9          Okay.  Go ahead.  This is in the plea agreement

10   itself.  You have it at the beginning --

11         MR. ELLERSICK:  That's correct.

12         THE COURT:  -- in terms of what the elements are.

13   Am I correct?

14         MR. ELLERSICK:  Yes.

15         THE COURT:  Okay.

16         MR. ELLERSICK:  The first element is that the

17   Defendant agreed with at least one other person to commit

18   this offense of making false statements to a bank.

19         And the evidence of that really comes from the

20   Defendant's statements about meeting with Coconspirator A

21   and Coconspirator B, discussions about getting more of

22   Coconspirator B's money into the United States secretly and

23   concealing Coconspirator B's connection to those funds by

24   misrepresenting the true source and purpose of the funds.

25         Some of those discussions occurred during this

1    trip to Country Q that's described in the factual basis

2    where there was discussions between Coconspirator B and

3    Coconspirator A and the Defendant was present for those.

4          So those discussions formed the basis for this

5    agreement to get Coconspirator B's money into the United

6    States to finance this lobbying campaign, but to do it in a

7    way that misrepresented the source and purpose to the banks.

8          The second element is that the Defendant knowingly

9    participated in the conspiracy with the intent to commit the

10   offense of making false statements to a bank.

11         That evidence, your Honor, I think comes from the

12   Defendant's -- among other things, his work on various

13   consulting agreements, loan documents that were fake and

14   were generated as a way to provide a cover in case banks or

15   other regulators made inquiries about the money, and those

16   were generated in an effort to make the money appear

17   legitimate.

18         And then, finally, at least one overt act was

19   committed in furtherance of the conspiracy.  And the overt

20   act that's alleged in the information was an email that was

21   sent by the Defendant at Coconspirator A's direction --

22         THE COURT:  Which paragraph is it?

23         MR. ELLERSICK:  It's Paragraph 16, your Honor,

24   about two-thirds of the way down the paragraph.  It

25   described --

1          THE COURT:  If you could hold on just one second.

2          I'm sorry.  I'm trying to get an emergency order

3     out at the same time.

4          Paragraph -- I missed this.  Which one?

5          MR. ELLERSICK:  Paragraph 16 in the factual basis.

6          THE COURT:  Okay.

7          MR. ELLERSICK:  It's about two-thirds of the way

8     down in that paragraph.

9          THE COURT:  "In order to influence Financial

10    Institutions Y's actions..."?  Is that starting where it is?

11          MR. ELLERSICK:  It starts --

12          THE COURT:  Further down?

13          MR. ELLERSICK:  -- the next sentence, "In

14    addition, on or about November 6, 2017..."

15          THE COURT:  Okay.

16          MR. ELLERSICK:  And that references an email that

17    the Defendant sent, at Coconspirator A's direction, to a

18    representative of the institution falsely claiming that the

19    funds came from this foreign company for an investment in a

20    slate of projects when, in reality, it was money that had

21    come from Coconspirator B to finance this lobbying effort.

22          So that would be one, among other, overt acts, but

23    that's the overt act that's alleged in the information.

24          THE COURT:  And what are the other overt acts from

25    your perspective?  If you want to reference it in the

1    context of the -- telling me which paragraphs, that might be
2    easier for you.
3              MR. ELLERSICK:  Sure.
4              Another one is in Paragraph 15, your Honor,
5    which references a letter that was sent on or about
6    September 27, 2017, that again made misrepresentations about
7    the source and purpose of the funds.  I could go on.
8              But there would also be the Defendant's work on
9    these various written agreements that were essentially
10   generated to provide a cover story for -- in case there were
11   inquiries about the money.
12             THE COURT:  All right.  Thank you.
13             MR. ELLERSICK:  Thank you.
14             THE COURT:  Mr. Higginbotham.
15             THE DEFENDANT:  (Approaches the lectern.)
16             THE COURT:  Why don't you push the microphone up
17   so you don't have to keep leaning over.
18             Let me just start out by asking -- I understand
19   you signed it.  But do you agree with everything that's in
20   here?
21             THE DEFENDANT:  Yes, your Honor, I do.
22             THE COURT:  Is there anything that's in here, to
23   start with, that you did not know at the time or were not
24   involved with at the time?
25             THE DEFENDANT:  No, your Honor.

1          THE COURT:  So everything is something you were

2     aware of -- you were aware of at the time?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Let me just go through it.

5          I'm going to do it by paragraphs, and I'll try and

6     summarize it accurately.  If I don't, please speak up.

7          So this is a conspiracy, which would mean that you

8     and at least one other person would have agreed to commit

9     this specific offense in this case, which is making a false

10    statement to a bank.

11         So, presumably, the co-conspirators would be

12    Coconspirator A, who evidently was a longtime associate, a

13    businessperson, entertainer, and B, who was a foreign

14    national and associate of Coconspirator A.

15         He was a wealthy businessperson and he was

16    involved -- he or she -- Coconspirator B being involved in a

17    multi-billion-dollar embezzlement and bribery scheme from

18    1 Malaysia Development Berhad, which is 1MDB.

19         Is that correct?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And I take it that you already knew

22    Coconspirator A.

23         Did you then meet Coconspirator B through A or how

24    did that happen?

25         THE DEFENDANT:  I knew Coconspirator A for roughly

```
1     15 or so years.  I then on one occasion when I traveled to

2     Country Q met with and spoke with Coconspirator B.

3                 THE COURT:  So that was -- is that the trip that

4     they talk about here or some separate trip?

5                 THE DEFENDANT:  That is the trip that's referenced

6     there, ma'am.

7                 THE COURT:  So in terms of the concern about 1MDB,

8     the Justice Department filed these multiple civil forfeiture

9     complaints seeking forfeiture against 1MDB, which presumably

10    would affect Coconspirator B.

11                And so that Coconspirator B was named in the

12    complaint and was interested in having this resolved in a

13    favorable manner to Coconspirator B.

14                Would that be the goal -- one of the goals

15    initially?

16                THE DEFENDANT:  Yes, your Honor.

17                THE COURT:  And Paragraph 4 says that, in March of

18    2017, Coconspirator A asked you to assist with identifying

19    somebody who would have some political influence who could

20    assist Coconspirator B in terms of the forfeiture matters

21    that the Justice Department had launched against

22    Coconspirator B and his investment development company.

23                Is that correct?

24                THE DEFENDANT:  Yes, your Honor.

25                THE COURT:  If I'm wrong about anything, just
```

1    speak up.

2              THE DEFENDANT:  Coconspirator A asked me if I knew

3    any attorneys that, beyond their legal skill, had political

4    connections because Coconspirator B and Coconspirator A

5    believed that there was a political connection to the 1MDB

6    matter.

7              THE COURT:  So they were looking for an attorney,

8    but who was a lobbyist as well, in essence?

9              THE DEFENDANT:  In essence, yes.

10             THE COURT:  And you introduced Coconspirator A,

11   who was your friend, to a law firm recruiter, but

12   Coconspirator B ultimately found their own person.  Is that

13   correct?  And that's Person A -- Person 1?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  At what point did you meet Person 1?

16             THE DEFENDANT:  Person 1?

17             THE COURT:  1.

18             THE DEFENDANT:  I have never met Person 1.

19             THE COURT:  You never met him?

20             THE DEFENDANT:  No.

21             THE COURT:  Okay.

22             THE DEFENDANT:  Or spoken to that person.

23             THE COURT:  So the only people that you would have

24   dealt with were Coconspirator A and B?

25             THE DEFENDANT:  I spoke with Coconspirator A on a

1    regular basis.  Coconspirator B, the only time I spoke with

2    them was the trip to Country Q.

3               THE COURT:  Were you aware that somebody -- in

4    this case, happens to be Person 1 -- was in the background

5    involved in this?

6               THE DEFENDANT:  Yes, your Honor.

7               THE COURT:  So you hadn't met him and you didn't

8    know precisely who the person was or you had met him, but

9    you did know who it was -- who the person was?

10              THE DEFENDANT:  I had not met the person, but

11   Coconspirator A identified the person to me.

12              THE COURT:  So you knew who Person 1 was?

13              THE DEFENDANT:  Yes.

14              THE COURT:  So Paragraph 5 talks about how

15   Coconspirator A -- according to Coconspirator A, this person

16   that is now going to assist Coconspirator B -- Person 1 --

17   didn't want to be paid directly because he didn't want to be

18   linked to Coconspirator B and the difficulties of 1MDB.

19              Is that accurate?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  So you worked -- in order to

22   accomplish this, you worked on various retainer consulting

23   agreements that provided for payments to Person 1, but

24   through pass-through entities that would distance

25   Coconspirator B from Person 1.

1          Is that correct?

2          THE DEFENDANT:  Yes, your Honor.  At the request

3     of Coconspirator A.

4          THE COURT:  You did it at the request of

5     Coconspirator A for the benefit of Coconspirator B --

6          THE DEFENDANT:  Yes, your Honor.  I --

7          THE COURT:  -- and Person 1, presumably?

8          THE DEFENDANT:  Yes, your Honor.  I did not speak

9     to Person 1.

10          THE COURT:  What I'm trying to get at is:  You

11     indicated to me initially you never spoke to Person 1.  You

12     only met Coconspirator B once in Country Q.

13          But I take it that you were aware of their

14     intentions in doing things.

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  That's what I'm trying to get at.

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  So you knew when you were doing --

19     working in these various retainer consulting agreements for

20     the payments through pass-through entities that it was

21     because Person 1 didn't want to be associated with

22     Coconspirator B.

23          Is that accurate?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  According to these written agreements,

1    which I take it you prepared, Coconspirator B would pay tens

2    of millions of dollars to this Person 1, who was going to

3    help with the -- assist in these various lobbying efforts to

4    try and get him out of difficulties with DOJ, that there

5    would be various intermediaries and entities that would

6    provide, ultimately, the compensation and Person 1 was

7    supposed to lobby the US Government to drop the civil and

8    criminal matters related to 1MDB.

9            Is that accurate or not?

10           THE DEFENDANT:  Yes, your Honor.

11           But may I have a moment to consult with counsel?

12           THE COURT:  Sure.  Go ahead and talk.

13           THE WITNESS:  (Confers with counsel privately.)

14           MR. ROBINSON:  Your Honor, one point I want to

15   clarify --

16           THE COURT:  Sure.

17           MR. ROBINSON:  -- in terms of the -- who prepared

18   the agreements.

19           He worked on those agreements.

20           THE COURT:  Right.

21           MR. ROBINSON:  But "prepared" implies something

22   beyond what he actually did on those.  So he worked on those

23   agreements, but he did not necessarily prepare those

24   agreements.

25           A lot of times these were agreements that were

1    sent to him in various draft forms and then he made edits to

2    those agreements.  I just wanted to clarify that.

3              THE COURT:  Okay.  Well, as I said, if I'm not

4    accurate in summarizing this, do speak up, since I'm asking

5    questions slightly differently.

6              And I take it you were aware that, according to

7    Coconspirator A, which I assume informed you, that as part

8    of the lobbying campaign, Person 1 agreed to try and

9    influence some potential nominee for a federal position that

10   would ultimately have some control over the 1MDB civil

11   forfeiture matters.  Is that correct?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And that ultimately didn't pan out.

14             So then Paragraph 6.  In or about May of 2017,

15   again, Coconspirator A tells you that Coconspirator B has

16   now another request in addition to the efforts to influence

17   the criminal matters before the Justice Department that

18   Coconspirator B wanted Foreign National 1, a former resident

19   of Country 1 who was living in the United States on a

20   temporary visa and had criticized the leadership of

21   Country Q, to be removed and sent back to Country Q.

22             So that's the next sort of assignment, shall we

23   say, that Coconspirator B talked to Coconspirator A about

24   and efforts were moved in that direction.

25             Is that correct?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  And the idea was that -- and this you

3    heard, I take it, from Coconspirator A.

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  That Person A -- 1 and others with

6    political connections would lobby Government officials to

7    have this Foreign National 1 removed from the United States.

8           Is that correct?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  So you were aware of that, that that

11   was one of the functions of Person 1?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  So part of what you were arranging in

14   terms of the financial things were Coconspirator A had

15   talked to you about Coconspirator B, who did not want to be

16   upfront about what efforts that person was making based on

17   their connections to the 1MDB.

18          And so any payments to be made to Person 1, who

19   was the one who was going to try and influence Justice

20   relating to the criminal -- pending criminal and civil

21   matters -- forfeiture matters may be a better way of putting

22   it -- as well as this removal of this individual, and your

23   role related more to how the financing would be set up such

24   that the -- Coconspirator B's role wouldn't be obvious.

25          Is that a fair overall presentation or not?

1          THE DEFENDANT:  One moment, your Honor, please.

2          THE COURT:  Sure.

3          THE DEFENDANT:  (Confers with counsel privately.)

4          THE COURT:  I was really getting at the issue that

5    you were not involved with the goal of trying to resolve the

6    forfeiture matters or having the person removed.

7          Your role was more related to how the money to

8    pay -- money coming from Coconspirator B to Person 1 to pay

9    for it -- how it could be set up such that it would be

10   concealed.  Maybe that's a better way of putting it.

11         THE DEFENDANT:  Your Honor, I hesitate because I

12   think that that is --

13         THE COURT:  Correct me if I'm wrong.  And you can

14   talk to your lawyer if you want.

15         THE DEFENDANT:  I think that's a little bit broad.

16         THE COURT:  I'm doing broad strokes here.  I'm

17   just trying to figure out sort of your role.

18         You don't appear to be connected with the goal of

19   having Person 1 -- excuse me -- I hate it when they have

20   these acronyms -- having the foreign national removed or the

21   forfeiture matters resolved against 1MDB.  Your roles didn't

22   seem to be with that.  That was Person 1 doing it at the

23   behest of Coconspirator B.

24         And Coconspirator A is the one who brought in

25   Coconspirator B.  You were brought in by Coconspirator A.

1          Am I correct so far?

2          THE DEFENDANT:  So far, yes, your Honor.

3          THE COURT:  And your role was in terms of the

4     payments to be made to -- ultimately to Person 1 for these

5     various efforts how to do it such that it would not be -- it

6     would be concealed in some form because Person 1 didn't want

7     to have any association obvious to Coconspirator B.  That's

8     my wording.

9          MR. ROBINSON:  Your Honor, I think the part that's

10    tripping him up a little bit is the role on the finances.

11         THE COURT:  Okay.

12         MR. ROBINSON:  He was involved in working on these

13    various agreements.  He was involved in making statements to

14    the banks.

15         THE COURT:  Right.

16         MR. ROBINSON:  But he was not the one actually

17    directing the money going in and out of these accounts.

18    That's not --

19         THE COURT:  All right.  That's fine.

20         So you were setting up some -- the retainer

21    agreements and some later things, which I'll get to, such

22    that these would be concealed, but you were not directing it

23    specifically in the money coming in and out of the accounts?

24         THE DEFENDANT:  That would be more accurate, your

25    Honor.  Yes.

```
 1              THE COURT:  Let's move to -- you met with --

 2              MR. ROBINSON:  Your Honor, I apologize.  He wants

 3     to have a moment.

 4              THE COURT:  Sure.  Go ahead.  No problem.

 5              THE DEFENDANT:  (Confers with counsel privately.)

 6              Thank you, your Honor.

 7              THE COURT:  Anything else?  No.  Okay.

 8              We're moving now to try to have Foreign National 1

 9     sent back to Country Q.

10              And you met -- you with Coconspirator A met at

11     Country Q's embassy.  Is that correct?

12              THE DEFENDANT:  No, your Honor.

13              THE COURT:  You didn't meet with him.

14              THE DEFENDANT:  Coconspirator A was not at the

15     embassy as well.

16              THE COURT:  So they requested that you go and you

17     went?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Okay.  So you went to the embassy.

20              Did anybody else go with you or you were by

21     yourself?

22              THE DEFENDANT:  I went by myself, your Honor.

23              THE COURT:  And you informed the embassy staff --

24     I'm at the top of 4 -- and the ambassador that you were

25     there in a personal capacity, not as a representative of the
```

1    Department of Justice, and you delivered a specific message

2    that Coconspirator A had asked you to deliver, I take it.

3              Is that correct?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And that message was that the United

6    States Government officials were working on the matter

7    involving having Foreign National 1 removed and there would

8    be some additional information about how that was going to

9    get done at a later point.

10             Is that correct?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  And following that meeting, you

13   reported to Coconspirator A as to what had happened since

14   Coconspirator A had asked you to actually go to the meeting.

15             Is that correct?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  And those co-conspirators seemed

18   satisfied with what happened at the meeting.

19             Is that accurate?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Okay.  So then moving to May of 2017,

22   September 2017, tens of millions of dollars were transferred

23   from Foreign Company L, an entity formed in Country Q, to

24   accounts in the name of an entity in the United States

25   controlled by Coconspirator A.

```
 1              And you knew that the money -- where it was coming

 2     from.

 3              Is that correct?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  And Coconspirator B, you were aware,

 6     controlled the funds and the transfers and it had been done

 7     at Coconspirator B's direction.

 8              Is that correct?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  And you understood that the transfer

11     of these millions of dollars was to pay Person 1 and others

12     who were in these lobbying efforts.

13              Is that correct?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  So you knew the purpose of the funds?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  Now, 9, to make the international fund

18     transfers appear legitimate, you worked on various fake loan

19     documents, investment agreements and consulting contracts at

20     the direction of Coconspirator A.

21              Is that correct?

22              That's Paragraph 9.

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  And the names were -- and the

25     documents were in the name of several foreign and domestic
```

1    shell companies that concealed Coconspirator B's

2    involvement.

3            Is that correct?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  And were you aware that these were

6    shell companies and the purpose was to conceal

7    Coconspirator B's involvement?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  And all of these fake documents were

10   to provide a cover story in case banks or other authorities

11   made inquiries about the true source and purpose of the

12   funds.

13           Is that correct?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  And you understood that

16   Coconspirators A and B were concerned that financial

17   institutions in the United States would refuse to execute

18   the transactions involving these funds if they knew they

19   were associated with Coconspirator B.

20           Is that correct?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  So you were aware of this?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  You then evidently -- in September

25   2017, at Coconspirator A's request, you went to Country Q

1   with Coconspirator A and various others.

2           Is that correct?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  And that's when you met

5   Coconspirator B for the first time or only time?

6           THE DEFENDANT:  Yes.  First and only.  Yes, your

7   Honor.

8           THE COURT:  So you were at meetings where the

9   co-conspirators discussed the strategies for secretly

10  funneling co-conspirators' money into the United States to

11  provide the funding for these lobbying efforts that were

12  being launched and also to come up with cover stories to

13  explain and conceal that the money was connected to

14  Coconspirator B.

15          Is that correct?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  So you were part of the discussions?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Were you the one who discussed the

20  strictness of the US banking system and the fact that you'd

21  have to send money in smaller installments over a longer

22  period in order to avoid scrutiny?

23          THE DEFENDANT:  I was part of that conversation,

24  your Honor.

25          THE COURT:  And what was your role at this

1     meeting?  Why did they want you there?

2          THE DEFENDANT:  So Coconspirator B had become

3     unhappy with the money that had been sent to the US because

4     nothing had -- no action had taken place on the resolution

5     of the DOJ matter regarding 1MDB.

6          I believe that Coconspirator A on behalf of -- I'm

7     sorry -- Person 1 -- I believe that Person 1 was applying

8     pressure to Coconspirator A in order to continue the funds

9     coming, even though there was no -- even though no action

10    had taken place.

11         So when I arrived in Country Q, Coconspirator A

12    informed me that I was more or less on -- or to play the

13    role of being on Person 1's team and that I was a

14    representative of Person 1 and that I was there to work out

15    some kind of agreement on how to move forward.

16         Coconspirator B at that point in time expressed

17    concerns about the amount of money that had passed and the

18    means by which it was coming into the country.

19         THE COURT:  In terms of -- so Paragraph 11 is, out

20    of this meeting, there was a proposal of giving you the

21    power of attorney.

22         So is that the result of -- part of the result of

23    going to the meeting?

24         THE DEFENDANT:  There was an initial meeting, your

25    Honor, where -- over dinner.  And then I think in the next

1    day or so after that, Coconspirator B came up with this idea

2    because I think that Coconspirator B was reluctant to send

3    any more money because no action had taken place.

4          THE COURT:  So then, instead of going through

5    these intermediaries, et cetera, you would be given the

6    power of attorney over this particular foreign company that

7    was formed in Country B, but was actually owned by somebody

8    associated with Coconspirator B.

9          Is that correct?

10          THE DEFENDANT:  It's Country --

11          THE COURT:  With the idea that Coconspirator B

12    would put money in this and that you would then have the

13    power of attorney over it and could make payments from it.

14          Is that correct?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  So if they were successful in their

17    lobbying efforts on the two fronts that they were making,

18    Person 1, then you, using your power of attorney, would sell

19    the company to Coconspirator A and others and in that way

20    they would be compensated for the lobbying campaign through

21    the funds that had been put in your escrow account.

22          Is that correct?

23          THE DEFENDANT:  That was the idea that was

24    suggested by Coconspirator B.  Yes, your Honor.

25          THE COURT:  So you signed various documents

1    purporting to give you control over Company R and its

2    assets, although I take it you didn't -- was it only on

3    paper that you had control?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  12 talks about the dissatisfaction

6    that you just discussed that they brought up at the meeting.

7    And so they moved to this attorney escrow account pending

8    the resolution of their lobbying efforts.

9            So as I understand it, then, around October 23rd

10   of 2017, approximately $41 million was deposited in this

11   escrow account from Foreign Company R at the direction of

12   Coconspirator B, who, in essence, controlled that company.

13   And you disbursed several million dollars for one of

14   Coconspirator A's entertainment projects.

15           And this presumably was providing him with some

16   compensation for acting as an intermediary between

17   Coconspirator B and others in the lobbying campaign?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And then the rest of it was put in a

20   certificate of deposit because those involved in the

21   lobbying campaign wanted the money to be secure.

22           Is that correct?

23           THE DEFENDANT:  Yes, your Honor.  With the slight

24   caveat that some of the money still remained that was

25   attributable to Coconspirator A.

```
1              THE COURT:  So in the escrow account?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And you believed that the funds would

4    be released in the event that the lobbying campaign was

5    successful in having Foreign National 1 removed from the

6    United States.

7              Is that correct?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  In terms of 14, getting to your

10   statements to the financial institutions -- and they have

11   various dates in 2017 -- you made false statements to three

12   federally insured financial institutions in the United

13   States in order to influence those institutions' actions in

14   connection with tens of millions of dollars transferred from

15   various foreign companies to accounts in the United States.

16             Is that correct?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And all of this was to finance

19   Coconspirator B's lobbying campaign.

20             Is that correct?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And you understood that

23   Coconspirator B's publicly known status was such, based on

24   his connection to the 1MDB embezzlement and bribery scheme,

25   that the money could not be associated with him.
```

1          Is that correct?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  So your efforts that you and

4   Coconspirator A and B therefore needed to be concealed from

5   financial institutions and so the true purpose of the funds

6   would be misrepresented to the financial institutions.  And

7   you understood that.

8          Correct?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  So your actions were to accomplish

11   that purpose?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And then, again, between July and

14   September, the first institution, Financial Institution X,

15   covered by the FDIC, sent -- their funds were, I take it,

16   there and they sent inquiries out concerning the source and

17   purpose of the tens of millions of dollars that had been

18   transferred from the foreign company.

19          Is that correct?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And you -- understanding that you did

22   not want to tell them the true purpose and source, you sent

23   a detailed written response to that financial institution

24   indicating that it related to entertainment matters.

25          Is that correct?

```
 1                 THE DEFENDANT:  Yes, your Honor.

 2                 THE COURT:  And entertainment matters to resolve

 3      some civil litigation.  Is that correct?

 4                 THE DEFENDANT:  Yes, your Honor.

 5                 THE COURT:  And the letter -- and this is the

 6      letter that you wrote and sent out? --

 7                 THE DEFENDANT:  Yes, your Honor.

 8                 THE COURT:  -- did not mention Coconspirator B,

 9      the lobbying campaign, the 1MDB matters or the Foreign

10      National 1 removal.

11                 Is that correct?

12                 THE DEFENDANT:  No, it did not.

13                 THE COURT:  Even though you knew that that was

14      actually the purpose of the funds?

15                 THE DEFENDANT:  Yes, your Honor.

16                 THE COURT:  And you also attached one of the fake

17      consulting contracts in response to this.

18                 Is that correct?

19                 THE DEFENDANT:  Yes, your Honor.

20                 THE COURT:  And that was to further support and

21      conceal what the true source and purpose of the funds were?

22                 THE DEFENDANT:  Yes, your Honor.

23                 THE COURT:  And then, eventually, in September

24      2017, that financial institution closed the account.

25                 Is that correct?
```

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  They were no longer accepted.

3           And so you were -- received -- or I guess the

4    cashier's checks were then taken from the first financial

5    institution and put in another one.

6           Is that correct?

7           So it went from X to Y?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  So the next one, which is Financial

10   Institution Y, was a broke-dealer registered under the SEC

11   and had arrangements with federally insured banks providing

12   account services.  So you went to them and you opened

13   business accounts with Financial Institution Y.

14          Is that correct?

15          THE DEFENDANT:  Your Honor, with the correction

16   that it was Coconspirator A that opened those accounts.

17          THE COURT:  Okay.

18          MR. ROBINSON:  Your Honor, one moment.

19          THE COURT:  Sure.

20          THE DEFENDANT:  (Confers with counsel privately.)

21          Just so that you're clear, myself and

22   Coconspirator A signed the contracts to open these accounts.

23          THE COURT:  So the funds came from another foreign

24   company associated with Coconspirator B, presumably.

25          Is that correct?

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  So this institution inquired of you

3    and Coconspirator A about the source and purpose of these

4    tens of millions of dollars that were sitting in these

5    business accounts.

6            Is that correct?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  And these source of funds had been in

9    the earlier financial institution.

10           Is that correct?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Okay.  And in order to influence

13   Financial Institution Y actions about keeping these

14   accounts, Coconspirator A claimed to be a representative of

15   the -- Financial Institution Y to them, that the money was

16   from a foreign investor in Coconspirator A's entertainment

17   projects.

18           Is that correct?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And then, at his direction or her

21   direction, you responded to the representative's questions

22   about whose money was actually in the accounts by falsely

23   claiming -- and they have it, I guess, in quotes here --

24   "the funds originated with Foreign Company L in corporation

25   documents attached, who was an investor in a slate of

1    projects currently under review and subject to further

2    discussion."

3              Is that accurate?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And neither you nor Coconspirator A

6    talked anything about the campaign, Coconspirator B, about

7    the purpose of removing Foreign National 1 or the lobbying

8    campaigns or anything else.

9              Is that correct?

10             THE DEFENDANT:  That is correct, your Honor.

11             THE COURT:  And then, eventually, they closed the

12   business accounts and disbursed the remaining funds.

13             Is that correct?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now, back to your attorney escrow

16   account, the financial institution inquired of you again

17   about the source and purpose of approximately $41 million

18   deposited into your account from Foreign Company R.

19             And in order to influence them, you said that the

20   money was an investment from Foreign Company R in music and

21   entertainment projects for one of your clients.

22             Is that correct?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And you didn't mention again anything

25   about the true source of the funds and the purpose.

```
 1              Is that correct?

 2              THE DEFENDANT:  No, your Honor, I did not.

 3              THE COURT:  And you knew that all of this

 4    information was false that you were providing --

 5              THE DEFENDANT:  Regarding --

 6              THE COURT:  -- to the banks?

 7              THE DEFENDANT:  Regarding the entertainment fees,

 8    yes, your Honor.  Yes.

 9              THE COURT:  And in May of 2017, you submitted a

10    20,000-dollar invoice to Coconspirator A for the work that

11    you had done and also you submitted a 50,000-dollar invoice

12    to Coconspirator A and his money manager for also the work

13    that you had done that we've just described.

14              Is that correct?

15              THE DEFENDANT:  Yes, your Honor.

16              THE COURT:  And so you received --

17              MR. ROBINSON:  Your Honor, if I may.  Sorry.

18              THE COURT:  No problem.

19              THE DEFENDANT:  (Confers with counsel privately.)

20              Just to clarify, your Honor, I want you to

21    understand that it was the source of the funds and --

22              THE COURT:  I'm sorry.  Say that again.

23              THE DEFENDANT:  Just to clarify that it was not

24    only the purpose of the funds, but also the source of the

25    funds that I did not reveal to the bank.
```

1          THE COURT:  Okay.  I dropped one of these.

2     Obviously, it would have been.

3          So you basically received $70,000 for your efforts

4     at the request of Coconspirator A to assist Coconspirator B

5     and Person 1 in the issue of the forfeiture relating to 1MDB

6     and removing Foreign National 1.

7          In your role, you, as we've talked about, provided

8     false information not providing the true source and purpose

9     of the funds, even though you knew what the true source and

10    purpose of the funds were.

11         Is that correct?

12         MR. ROBINSON:  Your Honor, if I could just clarify

13    quickly on the 70,000 issue.

14         THE COURT:  Sure.

15         MR. ROBINSON:  This may come up later.

16         THE COURT:  I've separated two things.  But go

17    ahead.

18         MR. ROBINSON:  Right.  For both those invoices.

19         This is going to come up --

20         THE COURT:  Can you talk into the microphone.

21    It's --

22         MR. ROBINSON:  I'm sorry, your Honor.

23         On the 70,000 issue, we agree that he was paid --

24    he was also doing other work for Coconspirator A unrelated

25    to this.

1           THE COURT:  Okay.

2           MR. ROBINSON:  So we agree that he was paid some

3    amount.  And there's maybe a dispute at sentencing over

4    exactly what that dollar amount is.

5           We agree that he submitted these invoices and he

6    was paid for it.  And least part of that payment was for

7    work directly related to this.

8           But we also contend that there was work that was

9    related to work that did not have anything to do with the

10   conspiracy charged.

11          THE COURT:  Is that accurate?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Is there any issue from the

14   Government's perspective in terms of anything that he's

15   answered that you have any question about?

16          MR. ELLERSICK:  No, your Honor.

17          THE COURT:  All right.  Then, I'll find that both

18   the Government's proffer as well as the admissions that

19   Mr. Higginbotham has made is that the elements of the

20   offense have been met beyond a reasonable doubt with these

21   proffers that he agreed with at least one other person --

22   and we would be talking about Coconspirator A and, to some

23   degree, Coconspirator B, although he only met him once -- to

24   commit the offense of making false statements to a bank with

25   the purpose of concealing the source and purpose of the

```
1    funds, that he knowingly participated in the conspiracy,

2    which is this agreement with another person, with the intent

3    to commit the offense -- he worked on these agreements --

4    loan documents, et cetera -- and provided false information

5    to these financial institutions -- and the overt act -- I

6    think there are a couple of them, but certainly in terms of

7    responding to specific requests for these financial

8    information, where he specifically provided false

9    information relating to the source and purpose of the funds.

10            Let me move back to my questions.

11            I take it that you have gone over the plea

12   agreement carefully.

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  And do you have any questions about it

15   at this point?

16            THE DEFENDANT:  No, your Honor.

17            THE COURT:  Anything that needs to be clarified?

18            THE DEFENDANT:  No, your Honor, I do not.

19            THE COURT:  I'm going to go over -- I'm not going

20   to go through all of it, since it's a very long one, but I

21   am going to go over certain parts that I think are important

22   based on the consequences that are associated with the plea

23   or areas where past experience has shown sometimes there's

24   misunderstandings.

25            The fact that I don't go through every single
```

1    paragraph or every part of it doesn't mine it's not

2    important and that you haven't agreed to it.  It's just that

3    I'm going to be selective about it.

4         If there's something in here you wish to bring

5    up -- you or counsel -- to make sure it's on the record as

6    to precisely the understanding, then that's fine.  You can

7    do that as well.

8         I'm going to discuss this a little differently in

9    terms of the consequences in terms of sentencing than the

10   way it's set out.

11        So let me start with statutory penalties.

12        The statutory penalties are important because the

13   Court cannot sentence you to anything higher than what they

14   are.

15        So you don't have to look through -- eventually,

16   we'll get to the specifics in the agreement.  I've culled

17   out certain portions.

18        So the statutory penalties in terms of

19   incarceration, maximum is five years in jail.  Maximum fine

20   is $250,000 or two times the pecuniary gain or loss.

21        Supervised release is if you are given a period of

22   jail time and given a period in the community where you're

23   supervised.  There are conditions that are set.  You need to

24   report, do certain things as well as not commit another

25   criminal offense.  And the maximum time that I can put you

1    on supervised release is three years.

2           If at some point you violate it, either you don't

3    follow through with the conditions or you commit a new

4    crime, then, based on that violation, your supervised

5    release can be revoked.

6           If it's revoked, then a new sentence is -- can be

7    imposed.  It's a combination of statutory and advisory

8    sentencing guideline calculation.

9           There's two important parts to it.  One is that

10   the sentence that you originally got and the new one cannot

11   combine to be more than the statutory maximum, and the other

12   important part is your new sentence, based on the

13   revocation, will not -- you will not get credit for the

14   period you've already served on the original sentence.  So

15   you would serve the sentence you actually were given.

16          There's a special assessment of $100.  That cannot

17   be waived at any point.  So you need to make it at some

18   point.

19          There is restitution and forfeiture requirements

20   here.  As I understand it, reading the agreement, you've

21   agreed to them, but it has not been determined at this point

22   what the amounts would be.

23          So you can contest the amounts, but not the fact

24   that you're going to be paying -- usually, it's a consent

25   judgment of forfeiture and restitution.

1              Is that an accurate description?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  So in terms of how the sentencing is

4      going to occur, you know what the statutory maximum is.  By

5      statute, there are certain factors the Court needs to

6      consider.

7              They're under 18 USC 3553(a) and a series of other

8      sections.  And they're very broad things:  The seriousness

9      of the offense, the specific characteristics as to you,

10     background information, which the Court will be provided,

11     any rehab issues.  Any mitigation issues would be provided.

12             We then would consider punishment, what's just,

13     what's reasonable and appropriate, as well as deterrence to

14     you, as well as deterrence to others.

15             So those are sort of the principal things that are

16     sort of this umbrella under which the Court considers what

17     is a reasonable, just and appropriate sentence.

18             There's going to be a presentence report

19     developed.  The probation office prepares it.  They'll talk

20     to you, the Government counsel.  They'll contact other

21     people about your background and put a report together.

22             They will share it with your counsel and the

23     Government.  You'll have a chance to review it, as will

24     they.

25             And if you have objections -- and this is before I

1   get it -- either factual objections or the calculations --

2   because that's going to be the official calculation that

3   we'll start from.

4           Even though the agreement has the best guess of

5   the parties, the official one is what's in the presentence

6   report.

7           If there are objections, there'll be an

8   opportunity to resolve them with the probation department.

9           I will then get it.  If there are objections still

10  outstanding, I will resolve them before you go forward with

11  the sentencing.

12          Now, the first one is going to be the offense

13  level.  It's a calculation under the advisory sentencing

14  guidelines.

15          The commission has set up various numbers and

16  considerations relating to how judges are to make a decision

17  and impose a sentence with the goal of having more

18  uniformity in the sentences.

19          The first aspect of this in terms of the

20  sentencing guidelines is to come up with a calculation for

21  offense level.  This relates to the characteristics of the

22  offense, either the offense itself or your actions related

23  to it.

24          And so they're all numbers.  As calculated, as I

25  understand it from the plea agreement, there's a base

1      offense of six points.

2              There is under this discussion -- if you use

3      roughly the $70,000 as loss or gain, which can be disputed,

4      it would be six points.

5              Also, what can be disputed is whether or not this

6      consists of a sophisticated scheme.  If it is, then it is an

7      additional two points.

8              Depending on whether this all adds up to greater

9      than 16 or less than 16 -- if it's greater, you have the

10     possibility of having three points deducted for acceptance

11     of responsibility.  If it's less, then it's two points.  If

12     you accept responsibility, you get the two points.

13             If the third point is based on the government in

14     their motion or sentencing memoranda indicating that you

15     have continued to accept responsibility and -- they would

16     agree to the third point.

17             So the two possibilities in terms of sentencing,

18     if you succeed in convincing me and the presentence report

19     writer of the lower amount, would be zero to six months of

20     incarceration.  That would be the lowest.  Or it could go up

21     to 10 to 16 months, which would be the highest, if I

22     understood what's set out.

23             So you're agreeing to this not knowing what the

24     final calculation is actually going to be.  But it's going

25     to be somewhere in there.

1        And the fines will either be 500 to 9,500 or

2    5500 to $55,000.  So these will be, you know, the different

3    calculations.

4        Now, you then look criminal history.  This is

5    convictions, not arrests.  It depends on the nature of the

6    offense, the sentence, how long ago, and it's criminal

7    points that are put together.

8        So you go down the chart on the left, which is the

9    offense level, across the top, you're Criminal History I.

10   You have no points, according to what -- everybody's

11   knowledge.  And, therefore, you go down the list to see

12   where you fit as to what the range is.

13       And, as I said, since there's some disputed

14   things, that'll obviously be litigated as part of the

15   sentencing.

16       Now, we're under the umbrella of the advisory

17   sentencing guidelines.  There are departures.  They can be

18   departures upward.  I don't particularly see one that comes

19   to mind.  But then you can have departures that are below.

20       And the one that would be of interest to you is

21   the 5K1.1, which would be, in terms of cooperation,

22   providing substantial assistance to the Government.

23       I would indicate the Government totally controls

24   this.  They usually -- they present it to some committee

25   that considers what it is that you've done that the

1    prosecutors involved in the case have indicated what your

2    actions have been to assist them, and they will make that

3    decision and recommend whether a motion or departure should

4    be filed.

5            I cannot force them to do it.  You can't force

6    them to do it.  So if they don't file it, then you can't get

7    a departure under 5K1.1.

8            Now, the other possibility for reductions is

9    Rule 35, which I think is in here.  And that again requires

10   the Government to file it.  It's something where your

11   sentence could be reduced after sentence, again, based on

12   cooperation.

13           That's all under the advisory sentencing

14   guidelines.

15           And have I left anything out?  I think, looking

16   through it, that seemed to be what most of the

17   considerations were.

18           Is that correct?

19           MR. ROBINSON:  That's correct, your Honor.

20           THE COURT:  Government, am I correct?

21           MR. ELLERSICK:  That's correct, your Honor.

22           THE COURT:  Okay.  So it's advisory.  It's not

23   mandatory, these guidelines.  So you can do -- the Court can

24   do a variance, is what they call it.

25           I have to do all this calculation and the advisory

1    sentencing guidelines.  I then have to give reasons why I'm

2    not sentencing you under the advisory sentencing guidelines.

3           They have to be very specific, according to our

4    circuit, in order to give you a sentence that doesn't fit

5    into anything that's associated with the advisory sentencing

6    guidelines.

7           But I can give you a different sentence.

8    Obviously, it can't be more than the statutory maximum.

9           So is this something you understand and you've

10   discussed with your lawyer, maybe slightly differently, but

11   in essence?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Is there anything -- besides the

14   disputes you've indicated, are there any other areas of

15   dispute in the calculations I should be aware of between the

16   parties?

17          MR. ROBINSON:  No, your Honor.

18          MR. ELLERSICK:  No, your Honor.

19          THE COURT:  So I want to make sure you understand

20   that I won't be able to determine the advisory guidelines

21   sentence until after I get the presentence report, after

22   you, counsel, government have had an opportunity to object

23   to either facts or conclusions and the sentence may be

24   different than what the estimate is.  It may come out as a

25   different calculation and guideline range.

```
1              So the sentence itself may turn out to be
2       different.
3              Do you understand?
4              THE DEFENDANT:  Yes, your Honor.
5              THE COURT:  Do you also understand that, after
6       I've decided what the guideline applies, I have the
7       authority in some circumstance to make it more severe or
8       less severe than what the guidelines are and those are what
9       I talked to you about in terms of departures?
10             Do you understand that?
11             THE DEFENDANT:  Yes, your Honor.
12             THE COURT:  And do you understand that, in your
13      case, while the Government has agreed to consider filing
14      this downward departure, that it's their decision as to
15      whether to file it and that neither you, your lawyer nor I
16      can force them to file that motion and that, if they do file
17      it, I will make the final decision on the motion?
18             Do you understand that?
19             THE DEFENDANT:  Yes, your Honor.
20             THE COURT:  Those are my questions.
21             Let me get back to the plea agreement.  I'm going
22      to flip through the pages and sort of go through things that
23      I want to make sure you understand and agree to.  And I do
24      it by pages and paragraphs.
25             So I think we've done through Page 1 and 2.
```

1          The one important part is that they've agreed that

2    they will not prosecute you for any other crimes that might

3    be set out in the statement of offense.

4          Is that your understanding and agreement?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  I think Page 3 talks about the fact

7    that these are estimates and it may all turn out to be

8    different and that you will not be able to withdraw your

9    plea if it turns out to be different.

10          Do you understand and agree?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  We have the calculations on Page 4.

13          Page 5.  They've indicated on Page 5 various

14    reasons why they might oppose an adjustment for acceptance

15    of responsibility, which would allow deductions and it would

16    depend on whether it's two or three points that would be

17    applicable.  I won't go over them.

18          But it indicates to you and puts you on notice to

19    the kinds of things that might result in your not getting --

20    and this is at the top of 6 as well -- in your not getting

21    the deduction.  And it includes attempts to withdraw your

22    guilty plea.

23          Do you understand and agree?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  The substantial agreement, which is --

1    substantial assistance, rather -- on the bottom of Page 5,

2    you've agreed to do certain things -- I mean, the bottom of

3    6.  I'm sorry.

4             Provide truthful and complete information,

5    testimony, produce any materials, appear in interviews,

6    grand jury or in any kind of trial or court proceeding.

7             Do you understand and agree?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  And you're also agreeing, although

10   you're entitled to have counsel present for any of these

11   discussions with either law enforcement agents or government

12   attorneys -- that you've agreed that they can interview you

13   without your counsel, but that, if you decide you do want

14   your counsel present, you need to put something in writing

15   so there's no dispute you've asked for it and it will not in

16   any way affect negatively the fact that you've now asked to

17   have your lawyer present.

18            Is that your understanding and agreement?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  You'll show up at grand jury,

21   depositions, any other things associated with litigation.

22            Is that your understanding and agreement?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  And D is that you might also work in a

25   covert role to contact, negotiate with others that might

1    have been involved in this criminal misconduct or other

2    criminal misconduct and that you would do this only under

3    supervision, not on your own.

4               Is that your understanding and agreement?

5               THE DEFENDANT:  Yes, your Honor.

6               THE COURT:  Now, also, you're not going to be

7    sentenced immediately.  We'll not be setting -- assuming I

8    accept the plea, you're not going to be setting a sentencing

9    date.  That will give you an opportunity to cooperate with

10   the Government.

11              They will make a decision as to when they think

12   the cooperation is over and they can move forward to

13   sentence.  So you're postponing your sentencing in order to

14   hopefully get the advantage of their filing for this

15   departure under 5K1.1.

16              Do you understand and agree?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  I think 11 goes over the fact that

19   they make this decision completely on their own and that

20   there's no requirements and we can't force them to file

21   such -- either the 5K1.1 or the Rule 35 after sentencing.

22              At the bottom of 8, I'm not bound by any of the

23   stipulations or agreements.  This is an agreement between

24   you and the Government.

25              Do you understand and agree?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, I went through the trial rights

3   on Page 9.  The only one I -- I asked additionally is E,

4   15E, the right to any further discovery or disclosure of

5   information that you have not already received or that has

6   been required to be disclosed under the Federal Rules of

7   Criminal Procedure, exculpatory impeachment.

8          So you've agreed they don't need to provide you

9   anything else.

10         Is that your understanding and agreement?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  We talked about appeals already.

13         Restitution is on Page 11.  The Court may also

14  order restitution.  At this point, there is no particular

15  figure.

16         So you agree to it, should it be ordered, but you

17  can contest what the amount is.  But you have agreed that

18  there would be -- could be restitution.

19         Is that correct?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And forfeiture, again, you don't know

22  what the amount will be.  You can contest the amount.  But

23  you're not contesting the fact that there will be --

24  presumably, a consent judgment is usual for the forfeiture.

25         Is that your understanding and agreement?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  And you're waiving a whole series of

3     things associated with forfeitures:  Notice, the typical

4     things that would be required, although it was certainly

5     something that was included in the information.

6              And they can make decisions about whether they

7     pursue it criminally, civilly, administratively and how they

8     go about it.

9              Is that your understanding and agreement?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And you also agree to be -- to

12    disclose assets, sources of income from the period of

13    January 2017 to January 2018.

14             Is that your understanding and agreement?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And you're also agreeing to release

17    federal and state income tax for the previous five years.

18             Is that your understanding and agreement?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And in the middle of 13, you're

21    agreeing to forfeit all of the Defendant's interest in any

22    asset of a value of more than 1,000 that within the last two

23    years you owned or which you maintained an interest in and

24    you don't disclose the ownership.

25             Is that your understanding and agreement?

 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  Release, detention.  I will make that

 3      decision at the end.

 4              In terms of any potential breach of the

 5      agreement -- this is if you break your end of the bargain --

 6      there are certain consequences.

 7              So if you fail to perform or follow through with

 8      your obligations or engage in any new conduct, then there

 9      are certain consequences.

10              The United States will be free from its

11      obligations.  You will not have a right to withdraw the

12      guilty plea.  You'll be subject to any criminal prosecution

13      should you commit any other crimes, perjury, obstruction of

14      justice.

15              The United States will be free to use against you

16      directly and indirectly all statement made by you and any

17      information or materials provided by you, including those

18      related to this plea today and, of course, of any kind of

19      debriefing.

20              Do you understand and agree?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Now, Paragraph 26 is important.  This

23      is admissibility of statements, should the plea agreement be

24      withdrawn.

25              Under those, ordinarily, any statements that you

1    would have made, which would be considered admissions, can

2    only be used to impeach.  So you'd have to take the stand

3    and be impeached.

4          You're giving up that right so they can use those

5    statements against you as evidence.

6          Do you understand and agree?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And have you discussed that with your

9    counsel?

10         THE DEFENDANT:  Yes, I have, your Honor.

11         THE COURT:  In terms of proving a breach in terms

12   of the requirements of the plea agreement, would be by a

13   preponderance of the evidence, which, of course, is less and

14   it's the civil standard than beyond a reasonable doubt.

15         And if it's a new violation, then it would be as

16   probable cause, which is even a lower standard and burden.

17         Do you understand and agree?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Paragraph 28 talks about the

20   expectations that you will be truthful.

21         29, the top of 16, if it's vacated for some

22   reason, obviously, by statute, crimes like the one that

23   you're pleading guilty to, have a time frame within which

24   the Government needs to charge you if, presumably, they've

25   charged you within that time frame.

1          If between the time that it's vacated and they

2     decide to reprosecute you, the statute of limitations runs.

3     You are agreeing not to raise that as a defense.

4          Is that your understanding and agreement?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Is this the complete agreement in

7     writing, what we've talked about in open court?  Is there

8     anything else that you think is part of the agreement?

9     Anything anybody's told you or anything else?

10         THE DEFENDANT:  No, your Honor.

11         THE COURT:  And do you understand that it binds

12    only the public integrity section -- I'm not sure what MLARS

13    is --

14         MR. ELLERSICK:  That's just --

15         THE COURT:  Money laundering?

16         MR. ELLERSICK:  Money laundering and asset

17    recovery section.

18         THE COURT:  The money laundering and asset

19    recovery section, criminal division of the US Department of

20    Justice.

21         It does not bind any other office, component of

22    the Department of Justice, including the US Attorney's

23    Offices or any other state or local authority.

24         So do you understand who is being bound on the end

25    of the prosecutor?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Back to a few of my questions.

3              If you're given a period of jail time, you will

4    serve the actual sentence.  The Bureau of Prisons has their

5    own good-time credits or other things that may reduce it.

6    The Court has nothing to do with that.

7              So if you're given a particular sentence, that's

8    the sentence you serve from the Court's perspective.  They

9    can reduce it if they want to.

10             I'm still required to point out that the old

11   system, which you probably know only in movies, is the

12   parole, where it used to be you'd get a jail sentence and

13   then there would be a Parole Commission which could grant

14   you an opportunity to serve part of your sentence, not

15   supervised release, not probation, but your jail sentence in

16   the community.

17             There's no such thing as that anymore.  And so

18   what you get as a sentence is what you serve.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Because this is a felony offense, if I

22   accept your plea of guilty, I find you guilty, that may

23   deprive you of valuable civil rights.  That includes the

24   right to vote, the right to hold public office, the right to

25   serve on a jury, which varies, depending on where you live.

1    Some states, you never have a right.  Other states, it's a

2    time-limited period for it.  So it depends on where you're

3    going to be living as to whether that is.  I believe the

4    District of Columbia has a time-limited.  Virginia, you

5    never get it.

6            The right to possess any kind of firearm and

7    ammunition.  So even if you lived in a state where you could

8    get a license, under the federal statute, if you're a

9    convicted felon and -- you cannot possess a firearm or

10   ammunition.

11           Do you understand the implications of pleading to

12   a felony?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  A few questions on voluntariness and

15   we're done.

16           Has anyone, including your counsel, the

17   prosecutors, law enforcement agencies or, frankly, anybody

18   else that you've come in contact with since your arrest

19   promised or suggested to you that just by pleading guilty,

20   that it guarantees you a lighter sentence?

21           There may be considerations about it, but there

22   is -- should be no guarantee.

23           Has anybody guaranteed you a lighter sentence?

24           THE DEFENDANT:  No, your Honor.

25           THE COURT:  Has anyone forced, threatened or

1    coerced you in any way into entering this plea of guilty?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Do you understand that the agreement

4    reached in this case resulted from negotiations between your

5    lawyer and the Government's lawyer?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Anyone made any promises to you in

8    connection with your guilty plea other than those in the

9    plea letter or that we've talked about here in open court?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Anyone made any promises to you as to

12   what sentence I'll impose in this case if I accept your

13   guilty plea?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  And you understand there are certain

16   issues that have been left open that are disputed to be

17   decided by the Court at a later time?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  So do you understand that at this time

20   I don't know what sentence I'll impose, since I haven't

21   heard from the probation office or the attorneys?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Are you entering this plea of guilty

24   voluntarily and of your own free will?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Are you entering this plea of guilty

2     because you are guilty?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Anything you don't understand?

5     Anything you want to ask me or your lawyer at this time?

6          THE DEFENDANT:  No.  No, your Honor.

7          THE COURT:  Is there anything that you would have

8     raised as a defense -- and this is -- probably goes more to

9     the lawyer -- that we should discuss before we finally make

10    a decision that he would need to waive?

11         MR. ROBINSON:  No, your Honor.

12         THE COURT:  George Higginbotham, how do you plead

13    to Count 1 of the criminal information, conspiracy to make

14    false statements to banks?

15         THE DEFENDANT:  I plead guilty, your Honor.

16         THE COURT:  I'm satisfied the Defendant is fully

17    competent, capable of making a decision, understands the

18    nature and consequences of what he's doing.  He's acting

19    voluntarily of his own free will.  There's an adequate

20    factual basis for his plea.

21         Therefore, the plea is accepted and the Court

22    finds George Higginbotham guilty of Count 1 of the criminal

23    information, conspiracy to make false statements to banks,

24    and there is an agreement to a forfeiture.

25         So why don't you -- you can go ahead and sit down,

1    Mr. Higginbotham.

2             We have two things to discuss at this point.  One

3    is his conditions of release, and the other -- let me sign

4    these papers first.  And then the other is what the next

5    dates, et cetera, are.

6             So let me just sign these first.

7             MR. ROBINSON:  Sure.

8             THE COURT:  The unredacted factual statement will

9    be filed under seal.  The case is not under seal, but that

10   will be filed under seal.

11            Let's deal first with the conditions of release.

12            I have received the pretrial services report.  He

13   appears to -- there are two residencies.  Is there one --

14   one appears to be in the District of Columbia.

15            Is the other one in the District of Columbia or

16   someplace else?

17            MR. ROBINSON:  It's in Seattle, Washington, your

18   Honor.

19            THE COURT:  Okay.

20            MR. ROBINSON:  His wife has accepted a job out

21   there, and he would like to move out there, if possible.

22            THE COURT:  Well, we'll have to talk about that.

23            So I won't put on the record what it is.

24            Those are the two addresses.

25            He is employed.  Is he living at this point in

1    Seattle or here or is he required to live here because of

2    the --

3            MR. ROBINSON:  Right now he is living here.  And

4    his hope would be to move out to Seattle, you know, as soon

5    as possible, hopefully, on Sunday, if -- depending on what

6    happens today.

7            THE COURT:  Would he have the same employer?

8            MR. ROBINSON:  He would have -- so, your Honor,

9    just to clarify that, he hasn't started employment there

10   yet.  So there is a job offer which he has accepted, but he

11   has not started employment there.

12           THE COURT:  But is it the same one that's listed

13   in here?

14           MR. ROBINSON:  It's the same one.  Yes, your

15   Honor.

16           THE COURT:  Okay.  There appears to be no other

17   flags in here, including any other kind of criminal record,

18   as I understand it.

19           I do this in all of my cases.  So it has nothing

20   to do specifically with him.  But I would ask that there be

21   a -- one drug test.  If it comes back negative, that's the

22   end of it.

23           The Government has indicated they have no

24   objection to his being in the community.  But presumably we

25   would discuss what conditions.  I don't see any reason why

1    he cannot be in the community based on what little

2    information I have.  And the Government knows better --

3    knows him better.  I'm assuming that, if they don't think

4    there's a problem, that we would release him.

5              So there's a couple of things that they ask for

6    that I would be -- we would be putting in.  One is the drug

7    test -- one drug test.  If it's negative, that's the end of

8    it.  If it's not, then they have a regular protocol of what

9    they would do.

10             They would have him reporting weekly.  Generally,

11   they're suggesting by phone.  I think that's probably

12   sufficient.  That's usually a weekly phone call that they

13   set up.  It depends on where he lives as to how this would

14   be done.

15             He has to hand over, if he has not already, his

16   passport.  He needs to do that.  I understand he has one.

17             MR. ROBINSON:  Your Honor, there's, I guess, two

18   issues that we'd like to raise with respect to this.  We've

19   discussed these with the Government.  I understand the

20   Government will agree to these two exceptions that we're

21   asking here.

22             The first is, in light of his desire to move to

23   Seattle to be with his wife, we'd ask that the pretrial

24   services office in Seattle be the office that is supervising

25   him during this --

1          THE COURT:  Well, if he -- let me be blunt.  If

2     he's allowed to live in Seattle -- and I'll hear from you

3     all -- if he's allowed to live in Seattle, he would be

4     supervised by them and they report here.  And then, since

5     the case is here, they will report to me if there's any

6     issues.  But they will rely on the office in Seattle if he's

7     out there.

8          But he does need to hand over his passport.  They

9     can work out whether it's done here or whether it's done in

10    Seattle.  But he does need to hand it over.  And I

11    understand he has one.

12         MR. ROBINSON:  He does, your Honor.  And on that

13    point -- and, again, we've discussed this with the

14    Government -- his current job offer would require

15    international travel.  It's estimated to be about 25 percent

16    of his time.

17         And so, instead of moving the Court for permission

18    each time and having to pick up his passport, what we're

19    asking for is that he just has to notify pretrial services

20    in advance of any employment-related travel.

21         THE COURT:  Let me hear from the Government.

22         Do you have a problem with that?

23         MR. ELLERSICK:  We don't, your Honor.  I think in

24    the interest of allowing Mr. Higginbotham to be gainfully

25    employed for the duration of his supervision, we don't have

1    an objection to that.

2              THE COURT:  Let me start with the first question I

3    should have asked.

4              Are you agreeing that he can live in Seattle?

5              MR. ELLERSICK:  Yes.

6              THE COURT:  He's got an address here, I take it,

7    which is where he would live initially?  You haven't seen

8    the report.  Can you show it to him.

9              MR. ELLERSICK:  I do have the report, your Honor.

10             THE COURT:  Okay.  At the bottom there.

11             So he can live in Seattle.  He's going to have to

12   provide a specific address.

13             So from your perspective, he can live in

14   Seattle?

15             MR. ELLERSICK:  Yes.

16             THE COURT:  And he can keep his passport and

17   travel for work as long as he gives advance notice to

18   pretrial that he's traveling?

19             MR. ELLERSICK:  For work.

20             THE COURT:  For work.

21             Which generally includes, "I'm going to be in

22   Madrid this day to that day.  This is where I'm staying"

23   kind of thing.

24             But they would give him that type of information.

25             It should be understood that, if he wants to

1    travel for nonwork, he does have to come to the Court first.

2    He cannot ask pretrial.  He has to get a court order from me

3    indicating that he can travel for vacations or something

4    else.  Okay?

5          For work, I don't have a problem.  Presumably,

6    they'd have a way of checking that.  But if he wants to go

7    on vacation to the Cayman Islands or something, he's going

8    to have to come to me, which means he has to decide early on

9    that he wants to do that because he needs to get a court

10   order.

11         I check with pretrial services to make sure of it.

12   I see pretrial services in the back, who -- do you have a

13   question and can assist in this?  Do you want to come up.

14         THE PROBATION OFFICER:  I just --

15         THE COURT:  If you could come to the microphone so

16   we have a record.

17         THE PROBATION OFFICER:  Christine Schuck, pretrial

18   services.

19         I just wanted to let the Court know that, if the

20   Defendant is going to be reporting by telephone, pretrial

21   services here in the District of Columbia will maintain

22   supervision of the case.  The case will not be transferred

23   out to Seattle.

24         THE COURT:  They can't do the phone there?

25         THE PROBATION OFFICER:  He'll just call.  We'll

1    give him the phone number for the District of Columbia.

2    With that type of supervision for a telephone check-in, we

3    don't do -- we don't transfer it out to another office.

4              THE COURT:  Okay.  So the phone he's going to --

5    you'll take of it.

6              THE PROBATION OFFICER:  We would maintain it.

7              THE COURT:  But it all the other conditions will

8    be monitored by -- presumably, at some point, by Seattle.

9              You all will make these arrangements.  You will

10   presumably check with Seattle to make sure they'll accept

11   it.

12             THE PROBATION OFFICER:  There will actually be no

13   request for courtesy supervision based on these conditions

14   because the drug test would actually be done -- it could be

15   done today.

16             Now, if there is --

17             THE COURT:  So let me just understand.

18             You don't have to ask Seattle.  In other words,

19   the phone calls would come here.

20             Would everything else come here or would he be

21   reporting his work travel there?

22             THE PROBATION OFFICER:  He would report it to us.

23             THE COURT:  Okay.  Well, that makes it easier.

24             THE PROBATION OFFICER:  We can actually do the

25   drug test that you would like today.

1          THE COURT:  That would be --

2          THE PROBATION OFFICER:  Or as -- it closes at

3     5:15.  As long as it's negative, that's the end of it.

4          THE COURT:  I think I would do that, if you don't

5     mind.  He's here.  It takes care of it.

6          As I understand it, the drug testing you can do

7     here.  I'm going to assume that it's going to come back

8     negative, I hope.

9          If you're on medications, you should let them know

10    before they do the test that you're on something, vitamins

11    or something else, which may come up with -- not after the

12    fact.  You don't have to tell me how.

13         I'm telling you to let them know so, if it comes

14    back with something, you have to come up with the

15    medication.  You should let them know if you're on

16    something.

17         The phone would be DC.  The passport and travel

18    advice is easy enough to provide you here.  Is that correct?

19         THE PROBATION OFFICER:  Correct.  Since he's going

20    to be allowed to keep his passport and -- he would just have

21    to notify us.  And then any type of international travel,

22    that would just be filed here.

23         The only time we would have to send it out to

24    another office is if weekly drug testing would be required.

25         THE COURT:  Okay.  Well, then, we'll find out --

1    we'll know today presumably.

2              Will the test come back quickly enough today?

3              THE PROBATION OFFICER:  Given the time of day, I'm

4    not -- I cannot say for sure.  But if for some unforeseen

5    reason weekly testing is required, we can always make the

6    call out to Seattle and set up the arrangements.

7              THE COURT:  Do you have any suggestions for

8    anything else I need to put in this order that you would

9    require ordinarily?

10             THE PROBATION OFFICER:  No.  Everything -- I

11   actually did the report.  So everything I put in here --

12   like I said, we had only requested about the surrender of

13   the passports, but that's already been addressed by the

14   Court, that he'll be allowed to keep it.

15             That's the only thing we would ask that be put in

16   the orders, that he's being allowed to keep his passport.

17             THE COURT:  Right.  Okay.  Thank you.

18             THE PROBATION OFFICER:  Thank you, your Honor.

19             THE COURT:  That'll make it easier in terms of his

20   not fooling around with different places.

21             So at this point he doesn't have to actually

22   report in person.  It's phone.  As long as you follow

23   through with everything, you won't have to make appearances

24   with pretrial services.

25             Once we have problems with you, then you'll start

1     having to do that.  They'll give you advice about all of it.

2     My suggestion is you pay careful attention.  People,

3     especially first offenders, don't always listen in terms of

4     making sure they do things correctly.  If you don't, then

5     that adds additional conditions to it.  Okay?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Anything else from your perspective?

8                The one question that I had is:  Do you want any

9     kind of stay-aways from any of these other individuals or do

10    you want to leave that out in the wind?

11               MR. ELLERSICK:  I think we would prefer that, your

12    Honor, that there be some provision to not contact other

13    individuals who --

14               THE COURT:  Do you have -- we can -- are there

15    particular -- why don't you talk for a quick second or you

16    can talk among yourselves.  We can just put in, you know,

17    the acronyms, if that's what you want.

18               MR. ELLERSICK:  I think the parties have an

19    understanding of who's on that list of individuals.

20               THE COURT:  Do you want me to put it in the order

21    or not?  I don't have to.

22               MR. ELLERSICK:  No.  I would maybe leave it

23    generic as potential witnesses.

24               THE COURT:  You can't do that because that's not

25    fair to him, you know, in terms of what he -- who he can

1   talk to, who he can't.  I mean, part of it may be he may

2   wish to as part of his cooperation actually have him talk.

3          MR. ELLERSICK:  We're fine to leave it out, your

4   Honor.

5          THE COURT:  I'm just bringing it up because

6   occasionally it comes up at a later point.

7          Anything else of clarification?

8          MR. ROBINSON:  No, your Honor.

9          THE COURT:  When we're finished here, we'll do the

10  order.  You'll go with pretrial services and take care of

11  the drug test things so that's out of the way.  And they'll

12  explain certain things to you.

13         Now, when do you wish to be back in court?  I am

14  not somebody who does reports.  I like to see people in.

15  But we can spread them out.  I don't have a problem.

16         You lose control of these cases if, you know, I

17  get reports saying cooperation is ongoing, blah, blah, blah

18  blah.

19         So when do you want to have another status at

20  least to start with?

21         MR. ELLERSICK:  Could we have just a moment, your

22  Honor?

23         THE COURT:  Sure.  Go ahead.

24         (Discussion had off the record amongst counsel.)

25         THE COURT:  Can I ask:  Has the family already

1   moved out to Seattle or are they waiting to move out?

2          MR. ROBINSON:  The family has already moved out,

3   your Honor.

4          THE COURT:  Okay.

5          MR. ELLERSICK:  Your Honor, we would be fine with

6   a status conference in the March time period, if that's --

7          THE COURT:  Fine.  You can set out the time frame.

8   It's just that I have found that it's helpful to have people

9   come in and have -- make sure something's happening in the

10  meantime and there's a reason for delaying the sentencing.

11         MR. ELLERSICK:  That would be our request, your

12  Honor, sometime in the March time period that works for the

13  Court.

14         THE COURT:  Okay.

15         MR. ROBINSON:  Your Honor, the only thing I'd ask

16  is if Mr. Higginbotham needs to appear at the status

17  conference, if he can do so telephonically and his counsel

18  be here in person?

19         THE COURT:  Instead of telephonically, we can do

20  it by videoconference.  Okay?

21         MR. ROBINSON:  That would be great, your Honor.

22         THE COURT:  I don't know whether pretrial has it.

23  There are various ways of setting up videoconferencing from

24  there.

25         I may want him to come to the first one to make

1  sure all is going well and we don't have any issues.  And

2  then afterwards there is a way of doing videoconferencing.

3          What I would suggest is that you speak to John

4  Cramer, who's our person at the courthouse -- C-r-a-m-e-r --

5  to see where in Seattle he can hook up.  And then Mr. Cramer

6  will make the arrangement at the other end.

7          MR. ROBINSON:  Thank you, your Honor.

8          THE COURT:  Let me look at March.

9          Is there a day of the week that's particularly

10  better for either counsel or Mr. Higginbotham?

11          MR. ROBINSON:  Your Honor, if convenient to the

12  Court, we would prefer a Friday.

13          THE COURT:  Not a problem.

14          How about March 15th -- Friday, March 15th?  I can

15  do it in the afternoon, although I'm not sure you get to fly

16  here and out.  Do you want to do it, say, at 2:00?  Does

17  that work?

18          MR. ROBINSON:  That's fine, your Honor.  Thank

19  you.

20          THE COURT:  I'll see you back then on March 15th

21  at 2:00.

22          And I cannot reiterate more specifically,

23  Mr. Higginbotham, to make sure that you start following

24  through from the very beginning in doing what you're

25  supposed to do.

1              If you have any questions, contact them --

2     okay? -- or contact your lawyer.  Don't be out there doing

3     stuff that's going to create a problem for you or it'll make

4     it much more difficult in terms of monitoring you.

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Anything else?

7              MR. ELLERSICK:  Your Honor, our case agent, who's

8     been coordinating with the marshals, asked that we inquire

9     about a booking order --

10             THE COURT:  Yes.

11             MR. ELLERSICK:  -- I think to assist with the

12    processing.

13             THE COURT:  Is he going to be here for a bit?

14    When are you going to do the booking?  Do you want to do it

15    today or tomorrow or next week?

16             THE US MARSHAL:  Your Honor, we can take him

17    downstairs, try to get it done as quickly as possible so he

18    can go to pretrial afterwards.

19             THE COURT:  Do you need an order or are can you

20    just do it?

21             THE US MARSHAL:  I believe we do.  The order is up

22    there.

23             THE COURT:  Do you have it?

24             MR. ELLERSICK:  We don't have the booking order.

25    We have the information.  But we can --

1              THE COURT:  You still need the order.

2              Do we have a form, Dorothy?

3              THE COURTROOM DEPUTY:  No.

4              THE COURT:  Let me see if we've got a form that

5      you can just fill in the blanks.

6              The booking order is fingerprinting, et cetera,

7      Mr. Higginbotham.

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  But we can do it quickly enough to

10     have that.  I do want the drug test, especially if he's

11     planning on getting out of here next week.

12             MR. MEAD:  Your Honor, may I suggest that, while

13     we're awaiting the booking order --

14             THE COURT:  Can you come over.

15             MR. MEAD:  I just talked to the marshal.

16             May I suggest that, while we're awaiting the

17     booking order, we get him over to pretrial for that test

18     first and we can come back for the booking order?

19             THE COURT:  That's fine.  I'm going nowhere.  So I

20     don't have to be in here.  Why don't we -- I have to sign

21     the order when he has to be warned.  But, yes, we can do

22     that.

23             Do you have the --

24             THE COURTROOM DEPUTY:  We don't have one.

25             THE COURT:  From pretrial services, have you been

```
1    putting together the order or has Dorothy?

2              THE PROBATION OFFICER:  We're not doing the orders

3    up here.  But I was going to run back to my office and put

4    in what I need to get him over to there.

5              THE COURTROOM DEPUTY:  We have a new form, Judge.

6              THE COURT:  Hold on one second.

7              (Confers with the courtroom deputy privately.)

8              They have a new form.  I'm sorry.  I must admit

9    that not too many people in the courthouse get to walk out.

10   So I haven't looked at one of these before.

11             Where are you going to take him to the drug test?

12   Downstairs or across the street?

13             THE PROBATION OFFICER:  It's going to be across

14   the street, your Honor.  I can fill out the order if you

15   need me to.

16             THE COURT:  The new one?

17             THE PROBATION OFFICER:  Uh-huh.

18             THE COURT:  Here you are.  I just want to make

19   sure we have what you need.

20             THE PROBATION OFFICER:  I just need a couple

21   seconds.

22             THE COURTROOM DEPUTY:  We don't have a standard

23   form here.  Usually the US Attorney's Office does it.  But

24   they will need a copy of the information in order to do --

25   is that what you need?
```

1          THE US MARSHAL:  The agent has a copy.  So we

2     should be good.  That's fine.

3          THE COURTROOM DEPUTY:  As long as they have a copy

4     of the information, they can book him downstairs today.

5          THE COURT:  Okay.  Let's -- we need to finish this

6     so we can give him the warnings and he can be released with

7     his conditions and then you can work out taking him down

8     with the copy of the criminal information and take him

9     across the street.  It's not -- the drug testing is not in

10    this building.

11         THE COURTROOM DEPUTY:  Can I ask the Defendant to

12    come forward, please?

13         THE COURT:  We need to give him his warnings.

14         THE COURTROOM DEPUTY:  Would you raise your right

15    hand, please.

16         Do you solemnly swear you'll abide by all your

17    conditions of release?  Your next hearing is March 15th at

18    2:00 p.m. here in Courtroom 28A.  Failure to come to court

19    is another criminal offense that you can be imprisoned for.

20         THE DEFENDANT:  I do.

21         THE COURT:  If I could get you to sign here.

22         THE DEFENDANT:  (Complies.)

23         THE COURTROOM DEPUTY:  They just have to wait

24    until I process it.

25         THE COURT:  It sounds like I'm finished in terms

1    of my role, at least.

2            So they will process it.  They need to scan it,

3    give you -- everybody gets copies, including me.  And

4    pretrial services and the marshal will work on getting the

5    processing and the drug test.

6            If we can do it today, terrific.  If not, perhaps

7    then perhaps they can do it tomorrow.  I know it's a

8    Saturday.

9            MR. ROBINSON:  Thank you, your Honor.

10           THE COURT:  The parties are excused.

11           MR. ELLERSICK:  Thank you, your Honor.

12           (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 3rd day of December, 2018.

11

12                   <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, NW, Room 6706
                 Washington, DC 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25

**$**

**$100** [1] - 64:16
**$250,000** [2] - 14:3, 63:20
**$37** [1] - 28:8
**$41** [4] - 25:12, 30:2, 52:10, 58:17
**$55,000** [1] - 68:2
**$70,000** [2] - 60:3, 67:3

**/**

**/s** [1] - 102:12

**1**

**1** [71] - 4:14, 6:11, 6:15, 19:6, 19:24, 20:5, 20:6, 20:13, 20:17, 20:22, 21:5, 21:10, 21:12, 22:1, 22:3, 22:19, 22:21, 24:15, 24:16, 24:19, 24:25, 25:6, 25:10, 26:4, 27:19, 29:17, 30:11, 35:18, 37:13, 37:15, 37:16, 37:17, 37:18, 38:4, 38:12, 38:16, 38:23, 38:25, 39:7, 39:9, 39:11, 39:21, 40:2, 40:6, 41:8, 41:18, 41:19, 42:5, 42:7, 42:11, 42:18, 43:8, 43:19, 43:22, 44:4, 44:6, 45:8, 46:7, 47:11, 50:7, 50:14, 51:18, 53:5, 55:10, 58:7, 60:5, 60:6, 71:25, 83:13, 83:22
**1's** [2] - 20:18, 50:13
**1,000** [1] - 76:22
**10** [1] - 67:21
**1014** [1] - 31:5
**10th** [1] - 1:19
**11** [6] - 11:21, 24:2, 30:16, 50:19, 74:18, 75:13
**12** [5] - 9:4, 9:15, 9:21, 14:2, 52:5
**1200** [1] - 1:16
**1225** [1] - 2:3
**13** [1] - 76:20
**14** [2] - 15:24, 53:9
**1400** [1] - 1:16
**15** [2] - 34:4, 36:1

**15E** [1] - 75:4
**15th** [4] - 96:14, 96:20, 100:17
**16** [9] - 9:4, 11:20, 21:17, 32:23, 33:5, 67:9, 67:21, 78:21
**18** [3] - 11:21, 31:5, 65:7
**18-343** [3] - 1:3, 3:5, 4:13
**19th** [1] - 2:3
**1:21** [1] - 1:7
**1MDB** [26] - 19:7, 19:13, 19:19, 20:2, 20:20, 20:24, 21:3, 21:4, 22:20, 26:16, 27:18, 29:17, 30:10, 35:18, 36:7, 36:9, 37:5, 38:18, 40:8, 41:10, 42:17, 43:21, 50:5, 53:24, 55:9, 60:5

**2**

**2** [1] - 71:25
**20,000-dollar** [2] - 30:13, 59:10
**20001** [2] - 2:9, 102:14
**20005** [1] - 1:17
**2001** [1] - 24:2
**20036** [1] - 2:4
**2016** [1] - 19:9
**2017** [34] - 18:18, 19:16, 21:1, 21:14, 21:18, 22:9, 22:10, 23:14, 25:5, 25:11, 26:5, 26:6, 26:25, 27:8, 28:1, 28:4, 28:15, 28:21, 29:8, 29:19, 29:23, 30:12, 30:16, 34:6, 36:18, 41:14, 46:21, 46:22, 48:25, 52:10, 53:11, 55:24, 59:9, 76:13
**2017..** [1] - 33:14
**2018** [4] - 1:6, 18:19, 76:13, 102:10
**202** [2] - 2:9, 102:15
**20530** [2] - 1:20, 1:24
**2255** [1] - 12:11
**23** [1] - 9:5
**23rd** [2] - 25:11, 52:9
**25** [1] - 87:15
**26** [1] - 77:22
**27** [1] - 34:6
**27th** [1] - 27:8
**28** [3] - 28:1, 28:3,

78:19
**28A** [1] - 100:18
**29** [1] - 78:21
**2:00** [2] - 96:16, 96:21, 100:18
**2B1.1(b)(1** [1] - 14:2

**3**

**3** [1] - 72:6
**30** [1] - 1:6
**320** [1] - 2:4
**333** [2] - 2:8, 102:14
**35** [2] - 69:9, 74:21
**354-3269** [2] - 2:9, 102:15
**3553(a** [1] - 65:7
**3rd** [1] - 102:10

**4**

**4** [3] - 36:17, 45:24, 72:12
**46** [1] - 7:9
**48** [1] - 7:16

**5**

**5** [4] - 38:14, 72:13, 73:1
**50,000-dollar** [2] - 30:17, 59:11
**500** [1] - 68:1
**5500** [1] - 68:2
**5:15** [1] - 91:3
**5K1.1** [4] - 68:21, 69:7, 74:15, 74:21

**6**

**6** [5] - 29:8, 33:14, 41:14, 72:20, 73:3
**6706** [2] - 2:8, 102:14

**7**

**70,000** [2] - 60:13, 60:23

**8**

**8** [1] - 74:22

**9**

**9** [6] - 11:20, 11:22, 30:12, 47:17, 47:22, 75:3
**9,500** [1] - 68:1
**9-18-72** [1] - 7:11
**950** [1] - 1:23

**A**

**A's** [22] - 20:10, 21:23, 22:6, 23:14, 25:15, 25:17, 25:19, 25:24, 27:3, 27:6, 27:10, 27:13, 27:24, 29:1, 29:7, 29:9, 29:20, 32:21, 33:17, 48:25, 52:14, 57:16
**abide** [1] - 100:16
**ability** [1] - 102:7
**able** [6] - 12:8, 13:14, 14:13, 15:22, 70:20, 72:8
**accept** [9] - 8:19, 11:3, 16:7, 67:12, 67:15, 74:8, 80:22, 82:12, 90:10
**acceptance** [2] - 67:10, 72:14
**accepted** [5] - 28:5, 56:2, 83:21, 84:20, 85:10
**accomplish** [2] - 38:22, 54:10
**according** [11] - 20:6, 20:15, 20:21, 21:10, 24:14, 25:18, 38:15, 39:25, 41:6, 68:10, 70:3
**account** [14] - 25:8, 25:13, 28:14, 28:22, 29:25, 30:2, 51:21, 52:7, 52:11, 53:1, 55:24, 56:12, 58:16, 58:18
**accounts** [26] - 18:23, 22:12, 26:12, 27:1, 27:6, 27:25, 28:3, 28:4, 28:16, 28:17, 29:1, 29:4, 29:11, 29:20, 29:21, 44:17, 44:23, 46:24, 53:15, 56:13, 56:16, 56:22, 57:5, 57:14, 57:22, 58:12
**accurate** [10] - 38:19, 39:23, 40:9, 41:4, 44:24, 46:19, 58:3,

61:11, 65:1, 102:4
**accurately** [1] - 35:6
**acronyms** [2] - 43:20, 93:17
**act** [4] - 32:18, 32:20, 33:23, 62:5
**acting** [2] - 25:20, 52:16, 83:18
**action** [2] - 50:4, 50:9, 51:3
**Action** [1] - 1:3
**actions** [8] - 17:3, 26:10, 29:4, 53:13, 54:10, 57:13, 66:22, 69:2
**actions..** [1] - 33:10
**acts** [2] - 33:22, 33:24
**actual** [1] - 80:4
**addition** [4] - 27:21, 29:8, 33:14, 41:16
**additional** [6] - 22:2, 25:3, 25:6, 46:8, 67:7, 93:5
**additionally** [1] - 75:3
**address** [2] - 88:6, 88:12
**addressed** [1] - 92:13
**addresses** [1] - 84:24
**adds** [2] - 67:8, 93:5
**adequate** [1] - 83:19
**adjustment** [1] - 72:14
**administratively** [1] - 76:7
**admissibility** [1] - 77:23
**admissions** [2] - 61:18, 78:1
**admit** [1] - 99:8
**admitted** [1] - 12:21
**advance** [2] - 87:20, 88:17
**advantage** [1] - 74:14
**advice** [2] - 91:18, 93:1
**advisory** [10] - 14:20, 64:7, 66:13, 68:16, 69:13, 69:22, 69:25, 70:2, 70:5, 70:20
**affect** [2] - 36:10, 73:16
**affiliate** [1] - 28:18
**afford** [3] - 10:3, 15:25, 16:3
**afternoon** [11] - 3:1,

3:2, 3:3, 3:9, 3:14, 3:15, 3:19, 3:20, 3:21, 3:22, 96:15
**afterwards** [2] - 96:2, 97:18
**agencies** [1] - 81:17
**agent** [2] - 97:7, 100:1
**agents** [1] - 73:11
**ago** [1] - 68:6
**agree** [17] - 34:19, 60:23, 61:2, 61:5, 67:16, 71:23, 72:10, 72:23, 73:7, 74:16, 74:25, 75:16, 76:11, 77:20, 78:6, 78:17, 86:20
**agreed** [18] - 6:18, 20:22, 21:17, 25:6, 26:20, 31:3, 31:17, 35:8, 41:8, 61:21, 63:2, 64:21, 71:13, 72:1, 73:2, 73:12, 75:8, 75:17
**agreeing** [8] - 6:16, 17:2, 67:23, 73:9, 76:16, 76:21, 79:3, 88:4
**agreement** [34] - 5:25, 6:25, 11:17, 12:16, 31:9, 32:5, 50:15, 62:2, 62:12, 63:16, 64:20, 66:4, 66:25, 71:21, 72:4, 72:25, 73:18, 73:22, 74:4, 74:23, 75:10, 75:25, 76:9, 76:14, 76:18, 76:25, 77:5, 77:23, 78:12, 79:4, 79:6, 79:8, 82:3, 83:24
**agreements** [19] - 20:11, 20:15, 22:25, 32:13, 34:9, 38:23, 39:19, 39:25, 40:18, 40:19, 40:23, 40:24, 40:25, 41:2, 44:13, 44:21, 47:19, 62:3, 74:23
**ahead** [8] - 3:4, 17:11, 31:9, 40:12, 45:4, 60:17, 83:25, 94:23
**alcohol** [1] - 7:17
**allegation** [1] - 4:15
**alleged** [3] - 19:4, 32:20, 33:23
**allegedly** [1] - 19:12
**allocution** [1] - 6:21
**allow** [1] - 72:15

**allowed** [5] - 87:2, 87:3, 91:20, 92:14, 92:16
**allowing** [1] - 87:24
**ambassador** [4] - 21:15, 21:19, 21:21, 45:24
**AMERICA** [1] - 1:3
**ammunition** [2] - 81:7, 81:10
**amount** [9] - 6:17, 30:20, 50:17, 61:3, 61:4, 67:19, 75:17, 75:22
**amounts** [2] - 64:22, 64:23
**AND** [2] - 1:10, 1:22
**anonym** [1] - 20:13
**answer** [2] - 5:13, 6:7
**answered** [1] - 61:15
**anyway** [1] - 14:17
**apologize** [1] - 45:2
**appeal** [25] - 11:10, 11:11, 11:15, 11:25, 12:6, 12:17, 12:23, 13:4, 13:5, 13:9, 13:15, 13:22, 14:6, 14:9, 14:13, 14:23, 15:6, 15:13, 15:22, 15:23, 15:25, 16:1, 16:9, 16:15
**appeals** [2] - 13:3, 75:12
**Appeals** [1] - 11:10
**appear** [6] - 22:23, 32:16, 43:18, 47:18, 73:5, 95:16
**APPEARANCES** [1] - 2:1
**appearances** [2] - 1:13, 92:23
**applicable** [1] - 72:17
**applies** [1] - 71:6
**applying** [1] - 50:7
**appointed** [2] - 10:4, 11:12
**approaches** [1] - 34:15
**appropriate** [2] - 65:13, 65:17
**April** [1] - 18:18
**architects** [2] - 19:15, 26:15
**areas** [2] - 62:23, 70:14
**argue** [1] - 12:9
**arises** [1] - 12:23
**arraign** [1] - 4:1

**arraigned** [1] - 4:2
**ARRAIGNMENT** [1] - 1:10
**arrangement** [1] - 96:6
**arrangements** [4] - 28:13, 56:11, 90:9, 92:6
**arranging** [1] - 42:13
**arrest** [1] - 81:18
**arrests** [1] - 68:5
**arrived** [1] - 50:11
**aside** [2] - 12:10
**aspect** [1] - 66:19
**asserted** [1] - 10:24
**assessment** [1] - 64:16
**ASSET** [1] - 1:22
**asset** [4] - 3:13, 76:22, 79:16, 79:18
**assets** [7] - 19:12, 24:8, 24:12, 24:19, 24:23, 52:2, 76:12
**assignment** [1] - 41:22
**assist** [10] - 19:17, 27:15, 36:18, 36:20, 38:16, 40:3, 60:4, 69:2, 89:13, 97:11
**assistance** [3] - 15:2, 68:22, 73:1
**associate** [5] - 19:2, 24:9, 24:12, 35:12, 35:14
**associated** [14] - 11:25, 19:12, 23:13, 23:24, 24:18, 39:21, 48:19, 51:8, 53:25, 56:24, 62:22, 70:5, 73:21, 76:3
**associates** [1] - 25:7
**association** [1] - 44:7
**assume** [2] - 41:7, 91:7
**assuming** [6] - 5:8, 15:21, 17:12, 18:1, 74:7, 86:3
**attached** [4] - 27:21, 29:12, 55:16, 57:25
**attack** [2] - 12:18, 12:23
**attempts** [1] - 72:21
**attention** [1] - 93:2
**attorney** [16] - 5:5, 5:9, 5:17, 8:14, 8:18, 24:7, 24:17, 25:8, 29:25, 37:7, 50:21, 51:6, 51:13, 51:18, 52:7, 58:15

**Attorney's** [2] - 79:22, 99:23
**attorneys** [3] - 37:3, 73:12, 82:21
**attributable** [1] - 52:25
**August** [1] - 30:16
**authorities** [2] - 23:6, 48:10
**authority** [4] - 20:24, 24:17, 71:7, 79:23
**Avenue** [5] - 1:16, 1:19, 1:23, 2:8, 102:14
**avoid** [2] - 24:5, 49:22
**awaiting** [2] - 98:13, 98:16
**aware** [12] - 12:4, 35:2, 38:3, 39:13, 41:6, 42:10, 47:5, 48:5, 48:22, 70:15
**aways** [1] - 93:9

# B

**B's** [19] - 19:19, 23:4, 23:21, 24:14, 24:21, 25:2, 26:12, 26:14, 26:17, 26:20, 31:22, 31:23, 32:5, 42:24, 47:7, 48:1, 48:7, 53:19, 53:23
**background** [4] - 7:6, 38:4, 65:10, 65:21
**balance** [1] - 28:9
**bank** [9] - 18:21, 28:18, 29:24, 31:4, 31:18, 32:10, 35:10, 59:25, 61:24
**bank's** [1] - 27:9
**banking** [2] - 24:1, 49:20
**banks** [13] - 4:15, 6:12, 6:15, 23:6, 28:14, 32:7, 32:14, 44:14, 48:10, 56:11, 59:6, 83:14, 83:23
**bargain** [1] - 77:5
**barriers** [1] - 26:17
**base** [1] - 66:25
**based** [12] - 9:22, 10:23, 22:6, 42:16, 53:23, 62:22, 64:4, 64:12, 67:13, 69:11, 86:1, 90:13
**basic** [3] - 6:25, 7:4, 8:21

**basis** [8] - 8:2, 12:21, 18:4, 32:1, 32:4, 33:5, 38:1, 83:20
**became** [1] - 13:11
**become** [1] - 50:2
**BEFORE** [1] - 1:11
**beginning** [2] - 31:10, 96:24
**behalf** [3] - 3:16, 10:17, 50:6
**behest** [1] - 43:23
**below** [1] - 68:19
**benefit** [1] - 39:5
**Berhad** [2] - 19:6, 35:18
**best** [2] - 66:4, 102:7
**better** [5] - 42:21, 43:10, 86:2, 86:3, 96:10
**between** [13] - 14:15, 22:9, 25:20, 26:5, 26:25, 28:21, 32:2, 52:16, 54:13, 70:15, 74:23, 79:1, 82:4
**beyond** [5] - 11:5, 37:3, 40:22, 61:20, 78:14
**billion** [2] - 19:5, 19:11, 35:17
**bind** [1] - 79:21
**binds** [1] - 79:11
**birth** [1] - 7:10
**bit** [3] - 43:15, 44:10, 97:13
**blah** [4] - 94:17, 94:18
**blanks** [1] - 98:5
**blunt** [1] - 87:1
**book** [1] - 100:4
**booking** [7] - 97:9, 97:14, 97:24, 98:6, 98:13, 98:17, 98:18
**born** [1] - 7:14
**bottom** [5] - 11:23, 73:1, 73:2, 74:22, 88:10
**bound** [2] - 74:22, 79:24
**breach** [2] - 77:4, 78:11
**break** [1] - 77:5
**bribery** [5] - 19:5, 19:13, 26:16, 35:17, 53:24
**bring** [2] - 7:4, 63:4
**bringing** [1] - 94:5
**broad** [4] - 13:2, 43:15, 43:16, 65:8
**broke** [1] - 56:10
**broke-dealer** [1] -

56:10
**broker** [1] - 28:11
**broker-dealer** [1] - 28:11
**brought** [3] - 43:24, 43:25, 52:6
**building** [1] - 100:10
**burden** [2] - 11:4, 78:16
**Bureau** [1] - 80:4
**business** [10] - 19:24, 27:6, 27:25, 28:3, 28:16, 29:1, 29:20, 56:13, 57:5, 58:12
**businessperson** [2] - 35:13, 35:15
**BY** [1] - 2:6

## C

**calculated** [1] - 66:24
**calculation** [7] - 64:8, 66:2, 66:13, 66:20, 67:24, 69:25, 70:25
**calculations** [4] - 66:1, 68:3, 70:15, 72:12
**campaign** [21] - 20:22, 23:22, 24:20, 25:1, 25:22, 25:25, 26:3, 26:13, 26:21, 27:18, 29:16, 30:10, 32:6, 41:8, 51:20, 52:17, 52:21, 53:4, 53:19, 55:9, 58:6
**campaigns** [1] - 58:8
**cannot** [11] - 15:7, 16:2, 63:13, 64:10, 64:16, 69:5, 81:9, 86:1, 89:2, 92:4, 96:22
**capable** [1] - 83:17
**capacity** [2] - 21:22, 45:25
**care** [2] - 91:5, 94:10
**careful** [1] - 93:2
**carefully** [2] - 16:24, 62:12
**case** [24] - 3:4, 8:14, 8:18, 8:25, 9:15, 13:11, 13:25, 16:14, 18:17, 23:6, 32:14, 34:10, 35:9, 38:4, 48:10, 69:1, 71:13, 82:4, 82:12, 84:9, 87:5, 89:22, 97:7

**Case** [2] - 3:5, 4:13
**cases** [2] - 85:19, 94:16
**cash** [2] - 28:17, 29:21
**cashier's** [2] - 28:8, 56:4
**caused** [1] - 26:7
**caveat** [1] - 52:24
**Cayman** [1] - 89:7
**certain** [12] - 11:24, 12:8, 28:14, 62:21, 63:17, 63:24, 65:5, 73:2, 77:6, 77:9, 82:15, 94:12
**certainly** [2] - 62:6, 76:4
**certificate** [2] - 25:24, 52:20
**CERTIFICATE** [1] - 102:1
**certify** [1] - 102:4
**cetera** [4] - 51:5, 62:4, 84:5, 98:6
**challenge** [1] - 12:5
**challenges** [1] - 12:11
**challenging** [1] - 13:23
**chance** [1] - 65:23
**CHANGE** [1] - 1:10
**changed** [1] - 5:22
**characteristics** [3] - 30:24, 65:9, 66:21
**charge** [3] - 8:9, 8:10, 78:24
**charged** [4] - 4:14, 6:10, 61:10, 78:25
**chart** [1] - 68:8
**check** [3] - 89:11, 90:2, 90:10
**check-in** [1] - 90:2
**checking** [1] - 89:6
**checks** [2] - 28:8, 56:4
**choice** [1] - 18:12
**Christine** [1] - 89:17
**CHRISTOPHER** [1] - 2:2
**Christopher** [1] - 3:17
**circuit** [1] - 70:4
**circumstance** [1] - 71:7
**circumstances** [2] - 12:9, 14:23
**citizens** [2] - 9:15, 9:21
**civil** [11] - 19:10, 20:19, 20:24, 27:15,

36:8, 40:7, 41:10, 42:20, 55:3, 78:14, 80:23
**civilly** [1] - 76:7
**claim** [3] - 12:19, 13:6, 13:9
**claimed** [2] - 29:5, 57:14
**claiming** [4] - 27:11, 29:11, 33:18, 57:23
**clarification** [1] - 94:7
**clarified** [1] - 62:17
**clarify** [6] - 40:15, 41:2, 59:20, 59:23, 60:12, 85:9
**clear** [1] - 56:21
**clients** [2] - 30:8, 58:21
**closed** [4] - 28:3, 29:20, 55:24, 58:17
**closer** [1] - 4:23
**closes** [1] - 91:2
**co** [4] - 35:11, 46:17, 49:9, 49:10
**co-conspirators** [3] - 35:11, 46:17, 49:9
**co-conspirators'** [1] - 49:10
**Coconspirator** [203] - 19:3, 19:4, 19:14, 19:16, 19:19, 19:21, 19:23, 20:5, 20:6, 20:7, 20:9, 20:10, 20:13, 20:16, 20:21, 21:1, 21:2, 21:5, 21:10, 21:14, 21:23, 22:5, 22:6, 22:7, 22:13, 22:15, 23:1, 23:4, 23:9, 23:10, 23:13, 23:14, 23:16, 23:18, 23:19, 23:21, 23:24, 24:3, 24:6, 24:10, 24:11, 24:13, 24:14, 24:18, 24:21, 24:25, 25:2, 25:5, 25:7, 25:14, 25:15, 25:17, 25:18, 25:19, 25:21, 25:24, 26:12, 26:14, 26:17, 26:19, 26:20, 27:3, 27:6, 27:10, 27:13, 27:17, 27:24, 28:2, 28:15, 28:24, 29:1, 29:5, 29:7, 29:9, 29:15, 29:16, 29:20, 29:22, 30:9, 30:13, 30:15, 30:17, 30:19, 30:20, 31:20, 31:21, 31:22, 31:23, 32:2, 32:3,

32:5, 32:21, 33:17, 33:21, 35:12, 35:14, 35:16, 35:22, 35:23, 35:25, 36:2, 36:10, 36:11, 36:13, 36:18, 36:20, 36:22, 37:2, 37:4, 37:10, 37:12, 37:24, 37:25, 38:1, 38:11, 38:15, 38:16, 38:18, 38:25, 39:3, 39:5, 39:12, 39:22, 40:1, 41:7, 41:15, 41:18, 41:23, 42:3, 42:14, 42:15, 42:24, 43:8, 43:23, 43:24, 43:25, 44:7, 45:10, 45:14, 46:2, 46:13, 46:14, 46:25, 47:5, 47:7, 47:20, 48:1, 48:7, 48:19, 48:25, 49:1, 49:5, 49:14, 50:2, 50:6, 50:8, 50:11, 50:16, 51:1, 51:2, 51:8, 51:11, 51:19, 51:24, 52:12, 52:14, 52:17, 52:25, 53:19, 53:23, 54:4, 55:8, 56:16, 56:22, 56:24, 57:3, 57:14, 57:16, 58:5, 58:6, 59:10, 59:12, 60:4, 60:24, 61:22, 61:23
**Coconspirators** [1] - 48:16
**coerced** [1] - 82:1
**collateral** [4] - 12:10, 12:23, 13:6, 15:7
**collaterally** [1] - 12:18
**COLLEEN** [1] - 1:11
**Columbia** [10] - 2:7, 9:16, 9:21, 18:19, 81:4, 84:14, 84:15, 89:21, 90:1, 102:13
**COLUMBIA** [1] - 1:1
**combination** [1] - 64:7
**combine** [1] - 64:11
**coming** [7] - 22:15, 23:22, 43:8, 44:23, 47:1, 50:9, 50:18
**commission** [1] - 66:15
**Commission** [2] - 28:13, 80:13
**commit** [10] - 18:20, 31:3, 31:17, 32:9, 35:8, 61:24, 62:3, 63:24, 64:3, 77:13
**committed** [3] - 9:6,

32:19
**committee** [1] - 68:24
**commonly** [1] - 19:6
**community** [4] - 63:22, 80:16, 85:24, 86:1
**companies** [4] - 23:3, 48:1, 48:6, 53:15
**Company** [23] - 22:11, 22:15, 24:8, 24:11, 24:18, 24:19, 24:23, 25:13, 26:11, 27:6, 27:12, 27:15, 28:19, 29:12, 30:3, 30:7, 46:23, 52:1, 52:11, 57:24, 58:18, 58:20
**company** [8] - 19:7, 33:19, 36:22, 51:6, 51:19, 52:12, 54:18, 56:24
**compensate** [1] - 24:19
**compensated** [1] - 51:20
**compensation** [3] - 20:18, 40:6, 52:16
**competent** [1] - 83:17
**complaint** [2] - 19:14, 36:12
**complaints** [2] - 19:11, 36:9
**complete** [3] - 73:4, 79:6, 102:6
**completely** [2] - 8:13, 74:19
**complex** [1] - 27:15
**complicated** [2] - 12:3, 15:13
**complies** [1] - 100:22
**component** [1] - 79:21
**conceal** [4] - 23:23, 48:6, 49:13, 55:21
**concealed** [7] - 23:3, 26:22, 43:10, 44:6, 44:22, 48:1, 54:4
**concealing** [2] - 31:23, 61:25
**concern** [1] - 36:7
**concerned** [2] - 23:10, 48:16
**concerning** [4] - 22:2, 25:9, 27:4, 54:16
**concerns** [1] - 50:17

**concluded** [1] - 101:12

**conclusions** [1] - 70:23

**conditions** [10] - 63:23, 64:3, 84:3, 84:11, 85:25, 90:7, 90:13, 93:5, 100:7, 100:17

**conduct** [8] - 12:21, 13:10, 13:13, 16:21, 18:8, 30:14, 30:19, 77:8

**conference** [2] - 95:6, 95:17

**confers** [6] - 40:13, 43:3, 45:5, 56:20, 59:19, 99:7

**confront** [1] - 10:8

**connected** [2] - 43:18, 49:13

**connection** [7] - 26:10, 28:22, 31:23, 37:5, 53:14, 53:24, 82:8

**connections** [6] - 19:25, 21:11, 26:20, 37:4, 42:6, 42:17

**consent** [2] - 64:24, 75:24

**consequences** [5] - 62:22, 63:9, 77:6, 77:9, 83:18

**consider** [3] - 65:6, 65:12, 71:13

**considerations** [3] - 66:16, 69:17, 81:21

**considered** [1] - 78:1

**considers** [2] - 65:16, 68:25

**consists** [1] - 67:6

**conspiracy** [12] - 4:14, 6:11, 6:15, 19:1, 26:6, 32:9, 32:19, 35:7, 61:10, 62:1, 83:13, 83:23

**conspirators** [3] - 35:11, 46:17, 49:9

**conspirators'** [1] - 49:10

**conspired** [1] - 18:20

**constitutes** [1] - 102:4

**Constitution** [3] - 1:19, 2:8, 102:14

**constitutional** [3] - 8:22, 10:24, 11:25

**constitutionality** [1] - 15:15

**consult** [2] - 5:14,

40:11

**consulting** [8] - 20:11, 22:25, 27:22, 32:13, 38:22, 39:19, 47:19, 55:17

**CONT'D** [1] - 2:1

**contact** [6] - 65:20, 73:25, 81:18, 93:12, 97:1, 97:2

**contend** [1] - 61:8

**contest** [3] - 64:23, 75:17, 75:22

**contesting** [1] - 75:23

**context** [1] - 34:1

**continue** [1] - 50:8

**continued** [1] - 67:15

**contracts** [5] - 22:25, 27:22, 47:19, 55:17, 56:22

**control** [6] - 22:16, 24:23, 41:10, 52:1, 52:3, 94:16

**controlled** [5] - 22:13, 24:11, 46:25, 47:6, 52:12

**controls** [1] - 68:23

**convenient** [1] - 96:11

**conversation** [2] - 22:6, 49:23

**convicted** [3] - 11:6, 11:9, 81:9

**conviction** [2] - 11:10, 12:18

**convictions** [1] - 68:5

**convince** [1] - 9:4

**convincing** [1] - 67:18

**cooperate** [1] - 74:9

**cooperation** [5] - 68:21, 69:12, 74:12, 94:2, 94:17

**coordinating** [1] - 97:8

**copies** [1] - 101:3

**copy** [6] - 4:4, 8:8, 99:24, 100:1, 100:3, 100:8

**corporation** [2] - 29:12, 57:24

**Corporation** [1] - 27:2

**corpus** [1] - 12:12

**correct** [63] - 5:10, 5:11, 17:23, 17:24, 31:11, 31:13, 35:19, 36:23, 37:13, 39:1, 41:11, 41:25, 42:8,

43:13, 44:1, 45:11, 46:3, 46:10, 46:15, 47:3, 47:8, 47:13, 47:21, 48:3, 48:13, 48:20, 49:2, 49:15, 51:9, 51:14, 51:22, 52:22, 53:7, 53:16, 53:20, 54:1, 54:8, 54:19, 54:25, 55:3, 55:11, 55:18, 55:25, 56:6, 56:14, 56:25, 57:6, 57:10, 57:18, 58:9, 58:10, 58:13, 58:22, 59:1, 59:14, 60:11, 69:18, 69:19, 69:20, 69:21, 75:19, 91:18, 91:19

**correction** [1] - 56:15

**correctly** [1] - 93:4

**corresponding** [1] - 14:3

**cost** [2] - 15:25, 16:1

**counsel** [29] - 3:7, 3:11, 3:17, 7:3, 7:23, 7:25, 8:11, 9:18, 15:3, 15:14, 16:2, 40:11, 40:13, 43:3, 45:5, 56:20, 59:19, 63:5, 65:20, 65:22, 70:22, 73:10, 73:13, 73:14, 78:9, 81:16, 94:24, 95:17, 96:10

**Count** [5] - 4:14, 6:11, 6:15, 83:13, 83:22

**count** [1] - 6:13

**Country** [28] - 21:6, 21:8, 21:9, 21:15, 21:16, 21:18, 21:21, 22:3, 22:12, 22:22, 23:15, 24:9, 24:22, 25:3, 32:1, 36:2, 38:2, 39:12, 41:19, 41:21, 45:9, 45:11, 46:23, 48:25, 50:11, 51:7, 51:10

**country** [1] - 50:18

**couple** [3] - 62:6, 86:5, 99:20

**course** [3] - 23:17, 77:18, 78:13

**Court** [27] - 2:6, 2:7, 6:19, 6:22, 9:19, 11:10, 13:22, 14:20, 17:17, 18:3, 63:13, 65:5, 65:10, 65:16, 69:23, 75:13, 80:6, 82:17, 83:21, 87:17, 89:1, 89:19, 92:14,

95:13, 96:12, 102:12, 102:13

**court** [7] - 73:6, 79:7, 82:9, 89:2, 89:9, 94:13, 100:18

**COURT** [300] - 1:1, 3:1, 3:4, 3:14, 3:19, 3:21, 3:23, 4:6, 4:8, 4:21, 5:12, 6:5, 6:10, 7:3, 7:6, 7:10, 7:12, 7:14, 7:16, 7:19, 7:21, 8:3, 8:5, 8:8, 8:13, 8:17, 8:21, 9:10, 9:12, 9:14, 10:1, 10:6, 10:10, 10:15, 11:2, 11:8, 11:14, 11:20, 12:8, 12:15, 13:2, 13:21, 14:9, 14:13, 15:1, 15:6, 15:10, 15:12, 15:18, 15:21, 16:6, 16:13, 16:17, 17:18, 17:25, 18:5, 18:15, 30:22, 31:6, 31:12, 31:15, 32:22, 33:1, 33:6, 33:9, 33:12, 33:15, 33:24, 34:12, 34:14, 34:16, 34:22, 35:1, 35:4, 35:21, 36:3, 36:7, 36:17, 36:25, 37:7, 37:10, 37:15, 37:17, 37:19, 37:21, 37:23, 38:3, 38:7, 38:12, 38:14, 38:21, 39:4, 39:7, 39:10, 39:16, 39:18, 39:25, 40:12, 40:16, 40:20, 41:3, 41:13, 42:2, 42:5, 42:10, 42:13, 43:2, 43:4, 43:13, 43:16, 44:3, 44:11, 44:15, 44:19, 45:1, 45:4, 45:7, 45:13, 45:16, 45:19, 45:23, 46:5, 46:12, 46:17, 46:21, 47:5, 47:10, 47:15, 47:17, 47:24, 48:5, 48:9, 48:15, 48:22, 48:24, 49:4, 49:8, 49:17, 49:19, 49:25, 50:19, 51:4, 51:11, 51:16, 51:25, 52:5, 52:19, 53:1, 53:3, 53:9, 53:18, 53:22, 54:3, 54:10, 54:13, 54:21, 55:2, 55:5, 55:8, 55:13, 55:16, 55:20, 55:23, 56:2, 56:9, 56:17, 56:19, 56:23, 57:2, 57:8, 57:12, 57:20, 58:5,

58:11, 58:15, 58:24, 59:3, 59:6, 59:9, 59:16, 59:18, 59:22, 60:1, 60:14, 60:16, 60:20, 61:1, 61:11, 61:13, 61:17, 62:14, 62:17, 62:19, 65:3, 69:20, 69:22, 70:13, 70:19, 71:5, 71:12, 71:20, 72:6, 72:12, 72:25, 73:9, 73:20, 73:24, 74:6, 74:18, 75:2, 75:12, 75:21, 76:2, 76:11, 76:16, 76:20, 77:2, 77:22, 78:8, 78:11, 78:19, 79:6, 79:11, 79:15, 79:18, 80:2, 80:21, 81:14, 81:25, 82:3, 82:7, 82:11, 82:15, 82:19, 82:23, 83:1, 83:4, 83:7, 83:12, 83:16, 84:8, 84:19, 84:22, 85:7, 85:12, 85:16, 87:1, 87:21, 88:2, 88:6, 88:10, 88:16, 88:20, 89:15, 89:24, 90:4, 90:7, 90:17, 90:23, 91:1, 91:4, 91:25, 92:7, 92:17, 92:19, 93:7, 93:14, 93:20, 93:24, 94:5, 94:9, 94:23, 94:25, 95:4, 95:7, 95:14, 95:19, 95:22, 96:8, 96:13, 96:20, 97:6, 97:10, 97:13, 97:19, 97:23, 98:1, 98:4, 98:9, 98:14, 98:19, 98:25, 99:6, 99:16, 99:18, 100:5, 100:13, 100:21, 100:25, 101:10

**Court's** [1] - 80:8

**courtesy** [1] - 90:13

**courthouse** [2] - 96:4, 99:9

**COURTROOM** [13] - 3:5, 4:3, 4:9, 4:13, 4:18, 98:3, 98:24, 99:5, 99:22, 100:3, 100:11, 100:14, 100:23

**courtroom** [3] - 9:17, 9:23, 99:7

**Courtroom** [1] - 100:18

**cover** [7] - 23:6, 23:22, 27:23, 32:14, 34:10, 48:10, 49:12

**covered** [1] - 54:15
**covert** [1] - 73:25
**Cramer** [2] - 96:4, 96:5
**CRAMER** [1] - 96:4
**create** [1] - 97:3
**created** [1] - 26:16
**creating** [1] - 23:5
**credit** [1] - 64:13
**credits** [1] - 80:5
**crime** [2] - 9:5, 64:4
**crimes** [3] - 72:2, 77:13, 78:22
**criminal** [19] - 3:5, 6:10, 20:19, 40:8, 41:17, 42:20, 63:25, 68:4, 68:6, 74:1, 74:2, 77:12, 79:19, 83:13, 83:22, 85:17, 100:8, 100:19
**Criminal** [4] - 1:3, 4:13, 68:9, 75:7
**criminally** [1] - 76:7
**criticized** [2] - 21:7, 41:20
**cross** [1] - 10:8
**cross-examine** [1] - 10:8
**CRR** [3] - 2:6, 102:3, 102:12
**culled** [1] - 63:16
**current** [1] - 87:14
**cut** [1] - 25:19

## D

**date** [2] - 7:10, 74:9
**Dated** [1] - 102:10
**dates** [2] - 53:11, 84:5
**days** [2] - 15:24, 23:17
**DC** [11] - 1:6, 1:17, 1:20, 1:24, 2:4, 2:9, 7:15, 21:16, 21:19, 91:17, 102:14
**deal** [2] - 3:25, 84:11
**dealer** [2] - 28:11, 56:10
**dealt** [1] - 37:24
**debriefing** [1] - 77:19
**December** [3] - 26:6, 29:23, 102:10
**decide** [3] - 73:13, 79:2, 89:8
**decided** [2] - 71:6, 82:17
**decision** [12] - 6:20,

8:19, 13:24, 66:16, 69:3, 71:14, 71:17, 74:11, 74:19, 77:3, 83:10, 83:17
**decisions** [1] - 76:6
**deducted** [1] - 67:10
**deduction** [1] - 72:21
**deductions** [1] - 72:15
**DEFENDANT** [198] - 2:2, 3:22, 4:12, 4:17, 6:4, 6:9, 7:2, 7:9, 7:11, 7:13, 7:15, 7:18, 7:20, 7:24, 8:4, 8:7, 8:12, 8:15, 8:20, 9:9, 9:11, 9:13, 9:25, 10:5, 10:9, 10:14, 11:1, 11:7, 11:13, 11:19, 12:7, 12:14, 13:1, 13:20, 14:8, 14:12, 14:25, 15:5, 15:9, 15:11, 15:17, 16:5, 16:12, 16:16, 34:15, 34:21, 34:25, 35:3, 35:20, 35:25, 36:5, 36:16, 36:24, 37:2, 37:9, 37:14, 37:16, 37:18, 37:20, 37:22, 37:25, 38:6, 38:10, 38:13, 38:20, 39:2, 39:6, 39:8, 39:15, 39:17, 39:24, 40:10, 41:12, 42:1, 42:4, 42:9, 42:12, 43:1, 43:3, 43:11, 43:15, 44:2, 44:24, 45:5, 45:12, 45:14, 45:18, 45:22, 46:4, 46:11, 46:16, 46:20, 47:4, 47:9, 47:14, 47:16, 47:23, 48:4, 48:8, 48:14, 48:21, 48:23, 49:3, 49:6, 49:16, 49:18, 49:23, 50:2, 50:24, 51:10, 51:15, 51:23, 52:4, 52:18, 52:23, 53:2, 53:8, 53:17, 53:21, 54:2, 54:9, 54:12, 54:20, 55:1, 55:4, 55:7, 55:12, 55:15, 55:19, 55:22, 56:1, 56:8, 56:15, 56:20, 57:1, 57:7, 57:11, 57:19, 58:4, 58:10, 58:14, 58:23, 59:2, 59:5, 59:7, 59:15, 59:19, 59:23, 61:12, 62:13, 62:16, 62:18, 65:2, 70:12, 71:4, 71:11,

71:19, 72:5, 72:11, 72:24, 73:8, 73:19, 73:23, 74:5, 74:17, 75:1, 75:11, 75:20, 76:1, 76:10, 76:15, 76:19, 77:1, 77:21, 78:7, 78:10, 78:18, 79:5, 79:10, 80:1, 80:20, 81:13, 81:24, 82:2, 82:6, 82:10, 82:14, 82:18, 82:22, 82:25, 83:3, 83:6, 83:15, 93:6, 97:5, 98:8, 100:20, 100:22
**Defendant** [61] - 1:7, 3:16, 4:4, 4:5, 4:10, 4:16, 4:20, 17:22, 18:20, 19:2, 19:17, 19:21, 20:4, 20:10, 21:2, 21:15, 21:17, 21:18, 21:20, 21:23, 22:4, 22:6, 22:14, 22:18, 22:24, 23:9, 23:15, 24:7, 24:17, 24:21, 24:23, 24:24, 25:6, 25:15, 26:2, 26:7, 26:14, 26:19, 27:4, 27:9, 27:21, 28:16, 28:24, 29:9, 29:15, 29:24, 30:1, 30:5, 30:9, 30:12, 30:16, 30:20, 31:3, 31:17, 32:3, 32:8, 32:21, 33:17, 83:16, 89:20, 100:11
**Defendant's** [6] - 25:8, 25:12, 31:20, 32:12, 34:8, 76:21
**defense** [3] - 10:13, 79:3, 83:8
**degree** [1] - 61:23
**delaying** [1] - 95:10
**deliver** [1] - 46:2
**delivered** [2] - 21:24, 46:1
**Department** [7] - 19:10, 36:8, 36:21, 41:17, 46:1, 79:19, 79:22
**department** [1] - 66:8
**DEPARTMENT** [3] - 1:15, 1:18, 1:22
**departure** [7] - 14:10, 14:15, 14:22, 69:3, 69:7, 71:14, 74:15
**departures** [4] - 68:17, 68:18, 68:19, 71:9

**deposit** [2] - 25:24, 52:20
**Deposit** [1] - 27:2
**deposited** [6] - 25:8, 25:12, 28:9, 30:2, 52:10, 58:18
**depositions** [1] - 73:21
**deprive** [1] - 80:23
**deputy** [1] - 99:7
**DEPUTY** [13] - 3:5, 4:3, 4:9, 4:13, 4:18, 98:3, 98:24, 99:5, 99:22, 100:3, 100:11, 100:14, 100:23
**described** [5] - 30:14, 30:19, 32:1, 32:25, 59:13
**description** [1] - 65:1
**desire** [1] - 86:22
**detail** [1] - 18:10
**detailed** [2] - 27:10, 54:23
**detention** [2] - 6:18, 77:2
**determine** [2] - 9:22, 70:20
**determined** [2] - 6:17, 64:21
**deterrence** [2] - 65:13, 65:14
**developed** [1] - 65:19
**Development** [2] - 19:6, 35:18
**development** [2] - 19:7, 36:22
**deviate** [1] - 18:14
**difference** [1] - 14:15
**different** [10] - 5:6, 19:22, 68:2, 70:7, 70:24, 70:25, 71:2, 72:8, 72:9, 92:20
**differently** [4] - 5:17, 41:5, 63:8, 70:10
**difficult** [1] - 97:4
**difficulties** [2] - 38:18, 40:4
**diligence** [3] - 27:9, 28:22, 30:5
**dinner** [1] - 50:25
**direct** [3] - 12:5, 13:4, 13:5
**directing** [2] - 44:17, 44:22
**direction** [16] - 20:10, 22:17, 23:1, 24:21, 25:13, 25:15, 27:10, 29:9, 32:21,

33:17, 41:24, 47:7, 47:20, 52:11, 57:20, 57:25
**directly** [5] - 13:9, 20:7, 38:17, 61:7, 77:16
**disbursed** [4] - 25:16, 29:20, 52:13, 58:12
**disclose** [2] - 76:12, 76:24
**disclosed** [1] - 75:6
**disclosure** [1] - 75:4
**discovery** [1] - 75:4
**discuss** [6] - 6:24, 8:18, 63:8, 83:9, 84:2, 85:25
**discussed** [13] - 5:17, 8:1, 8:10, 15:14, 23:20, 23:25, 49:9, 49:19, 52:6, 70:10, 78:8, 86:19, 87:13
**discussion** [8] - 11:16, 15:12, 15:18, 16:18, 29:14, 58:2, 67:2, 94:24
**discussions** [6] - 31:21, 31:25, 32:2, 32:4, 49:17, 73:11
**dispute** [3] - 61:3, 70:15, 73:15
**disputed** [4] - 67:3, 67:5, 68:13, 82:16
**disputes** [1] - 70:14
**dissatisfaction** [1] - 52:5
**dissatisfied** [1] - 25:1
**distance** [2] - 20:12, 38:24
**District** [11] - 2:7, 2:7, 9:16, 9:21, 18:19, 81:4, 84:14, 84:15, 89:21, 90:1, 102:13
**DISTRICT** [3] - 1:1, 1:1, 1:11
**district** [1] - 102:13
**disturbance** [1] - 8:6
**division** [1] - 79:19
**doctor** [1] - 7:13
**documents** [12] - 22:25, 23:2, 23:5, 24:22, 29:12, 32:13, 47:19, 47:25, 48:9, 51:25, 57:25, 62:4
**DOJ** [4] - 19:20, 21:22, 40:4, 50:5
**dollar** [3] - 19:5, 35:17, 61:4
**dollars** [15] - 18:23,

19:11, 20:16, 22:10, 25:16, 26:10, 27:5, 28:25, 40:2, 46:22, 47:11, 52:13, 53:14, 54:17, 57:4
**domestic** [2] - 23:3, 47:25
**done** [13] - 46:9, 47:6, 59:11, 59:13, 68:25, 71:25, 81:15, 86:14, 87:9, 90:14, 90:15, 97:17
**Dorothy** [2] - 98:2, 99:1
**doubt** [3] - 11:5, 61:20, 78:14
**down** [8] - 17:11, 32:24, 33:8, 33:12, 68:8, 68:11, 83:25, 100:7
**downstairs** [3] - 97:17, 99:12, 100:4
**downward** [1] - 71:14
**draft** [1] - 41:1
**drop** [2] - 20:19, 40:7
**dropped** [1] - 60:1
**drug** [12] - 85:21, 86:6, 86:7, 90:14, 90:25, 91:6, 91:24, 94:11, 98:10, 99:11, 100:9, 101:5
**drugs** [1] - 7:17
**due** [4] - 27:9, 28:5, 28:22, 30:5
**duly** [1] - 4:20
**duration** [1] - 87:25
**during** [4] - 21:24, 23:18, 31:25, 86:25

## E

**early** [1] - 89:8
**easier** [4] - 11:21, 34:2, 90:23, 92:19
**easy** [1] - 91:18
**edits** [1] - 41:1
**EDWARDS** [2] - 2:6, 102:3
**Edwards** [1] - 102:12
**effective** [2] - 15:2, 28:4
**effort** [1] - 32:16, 33:21
**efforts** [12] - 20:18, 40:3, 41:16, 41:24, 42:16, 44:5, 47:12, 49:11, 51:17, 52:8, 54:3, 60:3

**either** [9] - 17:3, 64:2, 66:1, 66:22, 68:1, 70:23, 73:11, 74:21, 96:10
**element** [3] - 31:2, 31:16, 32:8
**elements** [7] - 16:22, 17:16, 18:9, 30:25, 31:7, 31:12, 61:19
**Ellersick** [1] - 3:10
**ELLERSICK** [40] - 1:14, 3:2, 3:9, 17:17, 18:2, 18:13, 18:16, 31:1, 31:11, 31:14, 31:16, 32:23, 33:5, 33:7, 33:11, 33:13, 33:16, 34:3, 34:13, 61:16, 69:21, 70:18, 79:14, 79:16, 87:23, 88:5, 88:9, 88:15, 88:19, 93:11, 93:18, 93:22, 94:3, 94:21, 95:5, 95:11, 97:7, 97:11, 97:24, 101:11
**elsewhere** [1] - 18:19
**email** [2] - 32:20, 33:16
**embassy** [8] - 21:16, 21:18, 21:20, 22:8, 45:11, 45:15, 45:19, 45:23
**embezzlement** [6] - 19:5, 19:13, 19:15, 26:16, 35:17, 53:24
**emergency** [1] - 33:2
**emotional** [1] - 8:6
**employed** [2] - 84:25, 87:25
**employer** [1] - 85:7
**employment** [3] - 85:9, 85:11, 87:20
**employment-related** [1] - 87:20
**end** [10] - 3:25, 5:1, 17:15, 77:3, 77:5, 79:24, 85:22, 86:7, 91:3, 96:6
**enforcement** [2] - 73:11, 81:17
**engage** [1] - 77:8
**engaged** [2] - 25:21, 25:25
**entering** [4] - 5:2, 82:1, 82:23, 83:1
**entertainer** [1] - 35:13
**entertainment** [10] - 25:17, 27:14, 29:7, 30:7, 52:14, 54:24,

55:2, 57:16, 58:21, 59:7
**entities** [5] - 20:12, 20:17, 38:24, 39:20, 40:5
**entitled** [1] - 73:10
**entity** [5] - 22:11, 22:12, 24:8, 46:23, 46:24
**escrow** [8] - 25:8, 25:12, 29:25, 51:21, 52:7, 52:11, 53:1, 58:15
**especially** [2] - 93:3, 98:10
**ESQ** [7] - 1:14, 1:14, 1:18, 1:21, 1:21, 2:2, 2:2
**essence** [4] - 37:8, 37:9, 52:12, 70:11
**essentially** [1] - 34:9
**estimate** [1] - 70:24
**estimated** [1] - 87:15
**estimates** [1] - 72:7
**et** [4] - 51:5, 62:4, 84:5, 98:6
**event** [3] - 24:15, 26:3, 53:4
**events** [1] - 24:1
**eventually** [4] - 24:6, 55:23, 58:11, 63:15
**evidence** [11] - 9:22, 10:17, 10:18, 10:20, 16:20, 17:5, 18:17, 31:19, 32:11, 78:5, 78:13
**evidently** [2] - 35:12, 48:24
**exactly** [1] - 61:4
**examine** [1] - 10:8
**exceeds** [1] - 13:22
**exceptions** [5] - 15:8, 15:19, 15:22, 16:10, 86:20
**exchange** [1] - 12:15
**Exchange** [1] - 28:12
**exculpatory** [1] - 75:7
**excuse** [1] - 43:19
**excused** [1] - 101:10
**execute** [2] - 23:11, 48:17
**exercised** [1] - 22:15
**expect** [1] - 18:16
**expectations** [1] - 78:20
**experience** [1] - 62:23
**explain** [4] - 7:23, 23:23, 49:13, 94:12

**explained** [2] - 16:8, 16:15
**explaining** [1] - 5:16
**expressed** [1] - 50:16
**expressly** [1] - 12:17

## F

**fact** [11] - 10:23, 23:24, 25:2, 49:20, 62:25, 64:23, 72:6, 73:16, 74:18, 75:23, 91:12
**factors** [1] - 65:5
**facts** [1] - 70:23
**factual** [8] - 8:2, 12:21, 18:4, 32:1, 33:5, 66:1, 83:20, 84:8
**fail** [1] - 77:7
**failure** [1] - 100:18
**fair** [3] - 9:20, 42:25, 93:25
**fairly** [2] - 12:3, 15:13
**fake** [7] - 22:24, 23:5, 27:22, 32:13, 47:18, 48:9, 55:16
**fall** [1] - 12:22
**falls** [1] - 16:10
**false** [18] - 4:15, 6:8, 6:11, 6:15, 18:21, 26:7, 31:4, 31:18, 32:10, 35:9, 53:11, 59:4, 60:8, 61:24, 62:4, 62:8, 83:14, 83:23
**falsely** [3] - 39:11, 33:18, 57:22
**family** [3] - 94:25, 95:2
**far** [3] - 7:12, 44:1, 44:2
**favorable** [1] - 36:13
**FDIC** [3] - 28:18, 29:24, 54:15
**federal** [4] - 20:23, 41:9, 76:17, 81:8
**Federal** [2] - 27:2, 75:6
**federally** [5] - 18:24, 26:8, 28:13, 53:12, 56:11
**fees** [1] - 59:7
**fell** [1] - 15:21
**felon** [1] - 81:9
**felony** [3] - 8:25, 80:21, 81:12

**few** [2] - 80:2, 81:14
**figure** [2] - 43:17, 75:15
**file** [8] - 13:4, 13:5, 69:6, 69:10, 71:15, 71:16, 74:20
**filed** [8] - 15:23, 16:1, 19:10, 36:8, 69:4, 84:9, 84:10, 91:22
**filing** [2] - 71:13, 74:14
**fill** [2] - 98:5, 99:14
**final** [2] - 67:24, 71:17
**finally** [2] - 32:18, 83:9
**finance** [5] - 26:12, 27:13, 32:6, 33:21, 53:18
**finances** [1] - 44:10
**financial** [20] - 18:24, 23:10, 26:8, 26:9, 26:18, 26:22, 26:24, 42:14, 48:16, 53:10, 53:12, 54:5, 54:6, 54:23, 55:24, 56:4, 57:9, 58:16, 62:5, 62:7
**Financial** [23] - 27:1, 27:7, 27:11, 27:22, 28:1, 28:7, 28:9, 28:11, 28:16, 28:19, 28:23, 29:2, 29:3, 29:5, 29:19, 29:23, 30:4, 33:9, 54:14, 56:9, 56:13, 57:13, 57:15
**financier** [1] - 19:25
**financing** [1] - 42:23
**fine** [12] - 17:20, 18:12, 18:15, 44:19, 63:6, 63:19, 94:3, 95:5, 95:7, 96:18, 98:19, 100:2
**fines** [1] - 68:1
**fingerprinting** [1] - 98:6
**finish** [1] - 100:5
**finished** [2] - 94:9, 100:25
**firearm** [2] - 81:6, 81:9
**firm** [3] - 19:22, 27:14, 37:11
**firms** [1] - 19:22
**first** [18] - 8:24, 31:2, 31:16, 49:5, 49:6, 54:14, 56:4, 66:12, 66:19, 84:4, 84:6,

84:11, 86:22, 88:2, 89:1, 93:3, 95:25, 98:18
**fit** [2] - 68:12, 70:4
**five** [2] - 63:19, 76:17
**flags** [1] - 85:17
**flip** [1] - 71:22
**fly** [1] - 96:15
**follow** [3] - 64:3, 77:7, 92:22
**following** [3] - 22:4, 46:12, 96:23
**fooling** [1] - 92:20
**FOR** [3] - 1:1, 1:14, 2:2
**force** [4] - 69:5, 71:16, 74:20
**forced** [2] - 10:20, 81:25
**foregoing** [1] - 102:4
**Foreign** [37] - 21:5, 21:12, 22:1, 22:3, 22:11, 22:15, 22:21, 24:8, 24:16, 25:9, 25:13, 26:4, 26:11, 27:5, 27:11, 27:15, 27:19, 28:19, 29:12, 29:17, 30:2, 30:6, 30:10, 41:18, 42:7, 45:8, 46:7, 46:23, 52:11, 53:5, 55:9, 57:24, 58:7, 58:18, 58:20, 60:6
**foreign** [14] - 18:23, 19:3, 23:3, 27:19, 29:6, 33:19, 35:13, 43:20, 47:25, 51:6, 53:15, 54:18, 56:23, 57:16
**forfeit** [1] - 76:21
**forfeiture** [20] - 4:15, 6:13, 6:16, 19:10, 19:11, 19:19, 20:24, 36:8, 36:9, 36:20, 41:11, 42:21, 43:6, 43:21, 60:5, 64:19, 64:25, 75:21, 75:24, 83:24
**forfeitures** [1] - 76:3
**form** [7] - 12:11, 44:6, 98:2, 98:4, 99:5, 99:8, 99:23
**formal** [1] - 4:10
**formed** [5] - 22:11, 24:8, 32:4, 46:23, 51:7
**former** [2] - 21:6, 41:18
**forms** [1] - 41:1
**forward** [6] - 10:16,

11:9, 50:15, 66:10, 74:12, 100:12
**frame** [1] - 78:23, 78:25, 95:7
**frankly** [1] - 81:17
**free** [4] - 77:10, 77:15, 82:24, 83:19
**Friday** [2] - 96:12, 96:14
**friend** [1] - 37:11
**fronts** [1] - 51:17
**full** [2] - 30:20, 102:5
**fully** [2] - 8:10, 83:16
**functions** [1] - 42:11
**fund** [2] - 22:23, 47:17
**funding** [1] - 49:11
**fundraiser** [1] - 19:25
**funds** [44] - 22:16, 22:19, 23:8, 23:12, 25:3, 25:6, 25:18, 25:23, 26:2, 26:21, 26:23, 27:13, 28:6, 28:18, 29:11, 29:21, 30:5, 31:23, 31:24, 33:19, 34:7, 47:6, 47:15, 48:12, 48:18, 50:8, 51:21, 53:3, 54:5, 54:15, 55:14, 55:21, 56:23, 57:8, 57:24, 58:12, 58:25, 59:21, 59:24, 59:25, 60:9, 60:10, 62:1, 62:9
**funneling** [2] - 23:20, 49:10
**furtherance** [2] - 26:6, 32:19
**future** [1] - 22:2

**G**

**gain** [3] - 14:3, 63:20, 67:3
**gainfully** [1] - 87:24
**generally** [4] - 11:24, 14:17, 86:10, 88:21
**generated** [3] - 32:14, 32:16, 34:10
**generic** [1] - 93:23
**GEORGE** [1] - 1:6
**George** [4] - 3:6, 3:16, 83:12, 83:22
**given** [8] - 9:10, 51:5, 63:21, 63:22, 64:15, 80:3, 80:7, 92:3
**goal** [4] - 36:14,

43:5, 43:18, 66:17
**goals** [1] - 36:14
**good-time** [1] - 80:5
**Government** [34] - 6:18, 6:22, 9:3, 9:18, 12:16, 13:3, 16:20, 17:5, 17:13, 19:8, 20:1, 20:2, 20:19, 21:12, 21:25, 22:20, 40:7, 42:6, 46:6, 65:20, 65:23, 68:22, 68:23, 69:10, 71:13, 74:10, 74:24, 78:24, 85:23, 86:2, 86:19, 86:20, 87:14, 87:21
**government** [4] - 67:13, 69:20, 70:22, 73:11
**GOVERNMENT** [1] - 1:14
**Government's** [4] - 11:4, 61:14, 61:18, 82:5
**grand** [4] - 9:2, 9:4, 73:6, 73:20
**grant** [1] - 80:13
**great** [1] - 95:21
**greater** [2] - 67:8, 67:9
**guarantee** [1] - 81:22
**guaranteed** [1] - 81:23
**guarantees** [1] - 81:20
**guess** [4] - 56:3, 57:23, 66:4, 86:17
**guideline** [3] - 64:8, 70:25, 71:6
**guidelines** [13] - 14:10, 14:18, 14:20, 66:14, 66:20, 68:17, 69:14, 69:23, 70:1, 70:2, 70:6, 70:20, 71:8
**guilt** [4] - 9:22, 10:21, 10:23, 11:5
**guilty** [25] - 4:17, 8:24, 9:15, 11:3, 11:15, 12:9, 16:7, 16:13, 16:23, 18:9, 72:22, 77:12, 78:23, 80:22, 81:19, 82:1, 82:8, 82:13, 82:23, 83:1, 83:2, 83:15, 83:22

**H**

**habeas** [1] - 12:12

**hand** [5] - 4:19, 86:15, 87:8, 87:10, 100:15
**hang** [1] - 31:6
**hate** [1] - 43:19
**hear** [4] - 4:23, 5:13, 87:2, 87:21
**heard** [2] - 42:3, 82:21
**hearing** [1] - 100:17
**help** [2] - 11:11, 40:3
**helpful** [1] - 95:8
**helping** [1] - 25:19
**hereby** [1] - 102:3
**hesitate** [1] - 43:11
**HIGGINBOTHAM** [1] - 1:6
**Higginbotham** [15] - 3:6, 3:17, 3:21, 4:21, 23:17, 34:14, 61:19, 83:12, 83:22, 84:1, 87:24, 95:16, 96:10, 96:23, 98:7
**high** [1] - 19:25
**higher** [1] - 63:13
**highest** [1] - 67:21
**highly** [1] - 27:15
**hired** [1] - 20:2
**history** [1] - 68:4
**History** [1] - 68:9
**hold** [3] - 33:1, 80:24, 99:6
**Honor** [219] - 3:2, 3:3, 3:9, 3:15, 3:20, 4:7, 5:11, 6:4, 6:9, 7:2, 7:5, 8:4, 8:7, 8:12, 8:15, 8:20, 9:9, 9:11, 9:13, 9:25, 10:5, 10:9, 10:14, 11:1, 11:7, 11:13, 11:19, 12:7, 12:14, 13:1, 13:20, 14:8, 14:12, 14:25, 15:5, 15:9, 15:11, 15:17, 15:20, 16:5, 16:12, 16:16, 17:24, 18:2, 18:14, 18:16, 19:2, 31:1, 32:11, 32:23, 34:4, 34:21, 34:25, 35:3, 35:20, 36:16, 36:24, 37:14, 38:6, 38:20, 39:2, 39:6, 39:8, 39:15, 39:17, 39:24, 40:10, 40:14, 41:12, 42:1, 42:4, 42:9, 42:12, 43:1, 43:11, 44:2, 44:9, 44:25, 45:2, 45:6, 45:12, 45:18, 45:22, 46:4, 46:11, 46:16, 46:20,

47:4, 47:9, 47:14, 47:16, 47:23, 48:4, 48:8, 48:14, 48:21, 48:23, 49:3, 49:7, 49:16, 49:18, 49:24, 50:25, 51:15, 51:24, 52:4, 52:18, 52:23, 53:8, 53:17, 53:21, 54:2, 54:9, 54:12, 54:20, 55:1, 55:4, 55:7, 55:15, 55:19, 55:22, 56:1, 56:8, 56:15, 56:18, 57:1, 57:7, 57:11, 57:19, 58:4, 58:10, 58:14, 58:23, 59:2, 59:8, 59:15, 59:17, 59:20, 60:12, 60:22, 61:12, 61:16, 62:13, 62:16, 62:18, 65:2, 62:9, 62:19, 69:21, 70:12, 70:17, 70:18, 71:4, 71:11, 71:19, 72:5, 72:11, 72:24, 73:8, 73:19, 73:23, 74:5, 74:17, 75:1, 75:11, 75:20, 76:1, 76:10, 76:15, 76:19, 77:1, 77:21, 78:7, 78:10, 78:18, 79:5, 79:10, 80:1, 80:20, 81:13, 81:24, 82:2, 82:10, 82:14, 82:18, 82:22, 82:25, 83:3, 83:6, 83:11, 83:15, 84:18, 85:8, 85:15, 86:17, 87:12, 87:23, 88:9, 92:18, 93:6, 93:12, 94:4, 94:8, 94:22, 95:3, 95:5, 95:12, 95:15, 95:21, 96:7, 96:11, 96:18, 97:5, 97:7, 97:16, 98:8, 98:12, 99:14, 101:9, 101:11
**HONORABLE** [1] - 1:11
**hook** [2] - 17:15, 96:5
**hope** [2] - 85:4, 91:8
**hopefully** [2] - 74:14, 85:5
**hours** [1] - 7:16

**I**

**idea** [4] - 42:2, 51:1, 51:11, 51:23
**identified** [5] - 19:3, 19:4, 19:23, 23:12, 38:11

**identify** [1] - 3:7
**identifying** [2] - 19:17, 36:18
**identity** [1] - 17:21
**ii** [1] - 14:1
**illness** [1] - 8:6
**immediately** [2] - 28:4, 74:7
**impartial** [1] - 9:20
**impeach** [1] - 78:2
**impeached** [1] - 78:3
**impeachment** [1] - 75:7
**implications** [1] - 81:11
**implies** [1] - 40:21
**important** [7] - 62:21, 63:2, 63:12, 64:9, 64:12, 72:1, 77:22
**impose** [4] - 14:9, 66:17, 82:12, 82:20
**imposed** [1] - 64:7
**imprisoned** [1] - 100:19
**incarceration** [2] - 63:19, 67:20
**included** [1] - 76:5
**includes** [4] - 18:7, 72:21, 80:23, 88:21
**including** [9] - 11:11, 12:19, 23:22, 29:21, 77:17, 79:22, 81:16, 85:17, 101:3
**income** [2] - 76:12, 76:17
**increase** [2] - 13:24, 13:25
**incriminate** [1] - 10:20
**independent** [1] - 6:19
**indicate** [3] - 17:10, 17:18, 68:23
**indicated** [6] - 15:2, 39:11, 69:1, 70:14, 72:13, 85:23
**indicates** [1] - 72:18
**indicating** [3] - 54:24, 67:14, 89:3
**indicted** [1] - 9:1
**indictment** [3] - 4:1, 4:6, 9:2
**indirectly** [1] - 77:16
**individual** [2] - 19:23, 42:22
**individuals** [6] - 19:1, 25:21, 25:25, 93:9, 93:13, 93:19
**infer** [1] - 10:23

**influence** [17] - 19:18, 20:22, 26:9, 27:9, 27:18, 29:3, 29:16, 30:4, 30:10, 33:9, 36:19, 41:9, 41:16, 42:19, 53:13, 57:12, 58:19
**information** [36] - 4:4, 4:6, 4:7, 4:8, 4:9, 4:11, 6:11, 6:14, 8:1, 8:9, 8:25, 17:3, 17:21, 22:2, 28:5, 32:20, 33:23, 46:8, 59:4, 60:8, 62:4, 62:8, 62:9, 65:10, 73:4, 75:5, 76:5, 77:17, 83:13, 83:23, 86:2, 88:24, 97:25, 99:24, 100:4, 100:8
**informed** [7] - 21:1, 21:20, 22:5, 28:2, 41:7, 45:23, 50:12
**initial** [2] - 8:22, 50:24
**innocence** [1] - 9:22
**innocent** [1] - 11:4
**inquire** [1] - 97:8
**inquired** [4] - 28:23, 29:25, 57:2, 58:16
**inquiries** [6] - 23:7, 27:3, 32:15, 34:11, 48:11, 54:16
**installments** [2] - 24:4, 49:21
**instead** [4] - 25:7, 51:4, 87:17, 95:19
**Institution** [21] - 27:1, 27:7, 27:11, 27:23, 28:2, 28:7, 28:10, 28:11, 28:17, 28:20, 28:23, 29:2, 29:6, 29:19, 29:24, 30:4, 54:14, 56:10, 56:13, 57:13, 57:15
**institution** [9] - 27:1, 33:18, 54:14, 54:23, 55:24, 56:5, 57:2, 57:9, 58:16
**institutions** [12] - 18:24, 23:11, 26:8, 26:18, 26:22, 26:24, 48:17, 53:10, 53:12, 54:5, 54:6, 62:5
**Institutions** [2] - 29:3, 33:10
**institutions'** [2] - 26:9, 53:13
**insufficient** [1] - 28:5
**Insurance** [1] - 27:2
**insured** [8] - 18:24,

26:8, 27:2, 28:13, 28:18, 29:24, 53:12, 56:11
**INTEGRITY** [2] - 1:15, 1:19
**integrity** [2] - 3:12, 79:12
**intent** [2] - 32:9, 62:2
**intentions** [1] - 39:14
**interest** [4] - 68:20, 76:21, 76:23, 87:24
**interested** [1] - 36:12
**intermediaries** [3] - 20:17, 40:5, 51:5
**intermediary** [2] - 25:20, 52:16
**international** [4] - 22:23, 47:17, 87:15, 91:21
**interview** [1] - 73:12
**interviews** [1] - 73:5
**introduced** [2] - 19:21, 37:10
**introducing** [1] - 20:5
**investigation** [1] - 19:20
**investment** [7] - 19:7, 22:25, 30:6, 33:19, 36:22, 47:19, 58:20
**investor** [4] - 29:6, 29:13, 57:16, 57:25
**invoice** [4] - 30:13, 30:17, 59:10, 59:11
**invoices** [3] - 30:21, 60:18, 61:5
**involved** [13] - 19:1, 24:20, 25:1, 34:24, 35:16, 38:5, 43:5, 44:12, 44:13, 52:20, 69:1, 74:1
**involvement** [4] - 20:4, 23:4, 48:2, 48:7
**involving** [4] - 22:1, 23:12, 46:7, 48:18
**Islands** [1] - 89:7
**issue** [8] - 15:15, 21:4, 25:9, 43:4, 60:5, 60:13, 60:23, 61:13
**issued** [1] - 28:7
**issues** [8] - 15:7, 19:19, 65:11, 82:16, 86:18, 87:6, 96:1
**it'll** [1] - 97:3
**itself** [3] - 31:10, 66:22, 71:1
**ize** [1] - 20:13

## J

**jail** [5] - 63:19, 63:22, 80:3, 80:12, 80:15
**January** [3] - 18:19, 76:13
**job** [3] - 84:20, 85:10, 87:14
**JOHN** [1] - 1:18
**John** [2] - 3:11, 96:3
**Joshua** [1] - 3:12
**JOSHUA** [1] - 1:21
**Judge** [2] - 5:21, 99:5
**JUDGE** [1] - 1:11
**judge** [1] - 13:24
**judges** [1] - 66:16
**judgment** [3] - 15:24, 64:25, 75:24
**July** [5] - 19:9, 21:14, 21:17, 26:25, 54:13
**juris** [1] - 7:13
**jurors** [1] - 9:4
**jury** [8] - 9:2, 9:15, 9:19, 9:24, 10:22, 73:6, 73:20, 80:25
**justice** [1] - 77:14
**JUSTICE** [3] - 1:15, 1:18, 1:22
**Justice** [8] - 19:10, 36:8, 36:21, 41:17, 42:19, 46:1, 79:20, 79:22

## K

**keep** [6] - 4:22, 34:17, 88:16, 91:20, 92:14, 92:16
**keeping** [1] - 57:13
**Keller** [1] - 3:11
**KELLER** [1] - 1:18
**kind** [8] - 7:19, 50:15, 73:6, 77:18, 81:6, 85:17, 88:23, 93:9
**kinds** [1] - 72:19
**knowing** [1] - 67:23
**knowingly** [4] - 5:2, 18:20, 32:8, 62:1
**knowledge** [1] - 68:11
**known** [3] - 19:7, 26:15, 53:23
**knows** [2] - 86:2, 86:3
**KOLLAR** [1] - 1:11
**KOLLAR-KOTELLY**

[1] - 1:11
**KOTELLY** [1] - 1:11

## L

**Lance** [1] - 3:16
**LANCE** [2] - 2:2
**last** [3] - 7:16, 15:1, 76:22
**launched** [2] - 36:21, 49:12
**laundered** [1] - 19:12
**laundering** [4] - 3:13, 79:15, 79:16, 79:18
**LAUNDERING** [1] - 1:22
**law** [11] - 11:3, 12:24, 13:7, 13:16, 13:18, 19:21, 19:22, 27:14, 37:11, 73:11, 81:17
**lawyer** [13] - 5:14, 10:3, 10:7, 11:11, 43:14, 70:10, 71:15, 73:17, 82:5, 83:5, 83:9, 97:2
**leadership** [2] - 21:8, 41:20
**leaning** [2] - 4:22, 34:17
**learned** [1] - 24:25
**least** [12] - 5:8, 9:4, 30:14, 30:18, 31:3, 31:17, 32:18, 35:8, 61:6, 61:21, 94:20, 101:1
**leave** [5] - 18:5, 18:11, 93:10, 93:22, 94:3
**lectern** [1] - 34:15
**LEE** [1] - 1:21
**Lee** [1] - 3:12
**left** [3] - 68:8, 69:15, 82:16
**legal** [1] - 37:3
**legitimate** [3] - 22:24, 32:17, 47:18
**length** [1] - 8:2
**less** [5] - 50:12, 67:9, 67:11, 71:8, 78:13
**letter** [7] - 6:23, 7:22, 27:17, 34:5, 55:5, 55:6, 82:9
**level** [6] - 13:25, 14:2, 14:5, 66:13, 66:21, 68:9
**levels** [2] - 14:2, 20:1
**license** [1] - 81:8

**light** [1] - 86:22
**lighter** [2] - 81:20, 81:23
**limitations** [1] - 79:2
**limited** [2] - 81:2, 81:4
**linked** [2] - 20:8, 38:18
**Lisa** [1] - 102:12
**LISA** [2] - 2:6, 102:3
**list** [2] - 68:11, 93:19
**listed** [1] - 85:12
**listen** [2] - 16:24, 93:3
**litigated** [1] - 68:14
**litigation** [3] - 27:16, 55:3, 73:21
**live** [8] - 80:25, 85:1, 87:2, 87:3, 88:4, 88:7, 88:11, 88:13
**lived** [1] - 81:7
**lives** [1] - 86:13
**living** [5] - 21:6, 41:19, 81:3, 84:25, 85:3
**loan** [4] - 22:24, 32:13, 47:18, 62:4
**lobby** [6] - 20:2, 20:18, 21:11, 22:19, 40:7, 42:6
**lobbying** [25] - 20:22, 23:22, 24:20, 25:1, 25:21, 25:25, 26:3, 26:13, 26:21, 27:18, 32:6, 33:21, 40:3, 41:8, 47:12, 49:11, 51:17, 51:20, 52:8, 52:17, 52:21, 53:4, 53:19, 55:9, 58:7
**lobbyist** [1] - 37:8
**local** [1] - 79:23
**LOCKHART** [1] - 1:14
**Lockhart** [1] - 3:11
**logistics** [1] - 22:3
**LONDON** [1] - 2:3
**longtime** [1] - 35:12
**look** [6] - 11:20, 11:22, 14:1, 63:15, 68:4, 96:8
**looked** [1] - 99:10
**looking** [2] - 37:7, 69:15
**lose** [1] - 94:16
**loss** [3] - 14:3, 63:20, 67:3
**lower** [3] - 14:19, 67:19, 78:16
**lowest** [1] - 67:20

**lucrative** [1] - 21:4

# M

**ma'am** [3] - 7:20, 36:6, 53:2
**Madrid** [1] - 88:22
**maintain** [2] - 89:21, 90:6
**maintained** [3] - 28:20, 29:25, 76:23
**maintaining** [1] - 29:4
**Malaysia** [3] - 19:6, 19:8, 35:18
**manager** [3] - 27:4, 30:18, 59:12
**mandatory** [1] - 69:23
**manner** [1] - 36:13
**March** [9] - 19:16, 36:17, 95:6, 95:12, 96:8, 96:14, 96:20, 100:17
**MARSHAL** [3] - 97:16, 97:21, 100:1
**marshal** [2] - 98:15, 101:4
**marshals** [1] - 97:8
**match** [1] - 16:22
**materials** [4] - 7:22, 8:18, 73:5, 77:17
**matter** [6] - 12:19, 22:1, 27:16, 37:6, 46:6, 50:5
**matters** [21] - 19:20, 20:3, 20:20, 20:24, 21:3, 22:20, 27:14, 27:18, 29:17, 30:10, 36:20, 40:8, 41:11, 41:17, 42:21, 43:6, 43:21, 54:24, 55:2, 55:9
**maximum** [8] - 13:22, 14:19, 63:19, 63:25, 64:11, 65:4, 70:8
**MEAD** [5] - 2:2, 2:3, 3:20, 98:12, 98:15
**Mead** [1] - 3:18
**mean** [4] - 15:13, 35:7, 73:2, 94:1
**means** [3] - 9:1, 50:18, 89:8
**meantime** [1] - 95:10
**medication** [2] - 7:19, 91:15
**medications** [1] - 91:9

**meet** [6] - 18:8, 21:15, 23:16, 35:23, 37:15, 45:13
**meeting** [12] - 21:24, 22:4, 22:8, 31:20, 46:12, 46:14, 46:18, 50:1, 50:20, 50:23, 50:24, 52:6
**meetings** [2] - 23:19, 49:8
**memoranda** [1] - 67:14
**mental** [1] - 8:6
**mention** [4] - 27:17, 30:9, 55:8, 58:24
**mentioned** [1] - 29:16
**message** [4] - 21:24, 21:25, 46:1, 46:5
**met** [16] - 7:24, 21:19, 23:17, 36:2, 37:18, 37:19, 38:7, 38:8, 38:10, 39:12, 45:1, 45:10, 49:4, 61:20, 61:23
**microphone** [4] - 4:21, 34:16, 60:20, 89:15
**middle** [1] - 76:20
**might** [6] - 34:1, 72:2, 72:14, 72:19, 73:24, 73:25
**million** [7] - 25:12, 25:16, 28:8, 30:2, 52:10, 52:13, 58:17
**millions** [12] - 18:23, 20:16, 22:10, 26:10, 27:5, 28:25, 40:2, 46:22, 47:11, 53:14, 54:17, 57:4
**mind** [2] - 5:22, 68:19, 91:5
**mine** [1] - 63:1
**misconduct** [2] - 74:1, 74:2
**misrepresentations** [1] - 34:6
**misrepresented** [3] - 26:23, 32:7, 54:6
**misrepresenting** [2] - 18:22, 31:24
**missed** [1] - 33:4
**misunderstandings** [1] - 62:24
**mitigation** [1] - 65:11
**MLARS** [1] - 79:12
**moment** [5] - 40:11, 43:1, 45:3, 56:18, 94:21
**money** [43] - 3:13,

22:14, 23:21, 23:23, 23:24, 24:4, 25:19, 26:1, 26:17, 27:3, 27:23, 29:6, 29:10, 30:6, 30:18, 31:22, 32:5, 32:15, 32:16, 33:20, 34:11, 43:7, 43:8, 44:17, 44:23, 47:1, 49:10, 49:13, 49:21, 50:3, 50:17, 51:3, 51:12, 52:21, 52:24, 53:25, 57:15, 57:22, 58:20, 59:12, 79:15, 79:16, 79:18
**MONEY** [1] - 1:22
**monitored** [1] - 90:8
**monitoring** [1] - 97:4
**months** [2] - 67:19, 67:21
**most** [1] - 69:16
**motion** [6] - 67:14, 69:3, 71:16, 71:17
**move** [10] - 4:21, 4:23, 45:1, 50:15, 62:10, 74:12, 84:21, 85:4, 86:22, 95:1
**moved** [4] - 41:24, 52:7, 95:1, 95:2
**movement** [1] - 23:23
**movies** [1] - 80:11
**moving** [4] - 26:17, 45:8, 46:21, 87:17
**MR** [82] - 3:2, 3:3, 3:9, 3:15, 3:20, 4:7, 5:11, 7:5, 15:20, 17:17, 17:24, 18:2, 18:13, 18:16, 31:1, 31:11, 31:14, 31:16, 32:23, 33:5, 33:7, 33:11, 33:13, 33:16, 34:3, 34:13, 40:14, 40:17, 40:21, 44:9, 44:12, 44:16, 45:2, 56:18, 59:17, 60:12, 60:15, 60:18, 60:22, 61:2, 61:16, 69:19, 69:21, 70:17, 70:18, 79:14, 79:16, 83:11, 84:7, 84:17, 84:20, 85:3, 85:8, 85:14, 86:17, 87:12, 87:23, 88:5, 88:9, 88:15, 88:19, 93:11, 93:18, 93:22, 94:3, 94:8, 94:21, 95:2, 95:5, 95:11, 95:15, 95:21, 96:7, 96:11, 96:18, 97:7, 97:11, 97:24, 98:12, 98:15, 101:9,

101:11
**multi** [2] - 19:5, 35:17
**multi-billion-dollar** [2] - 19:5, 35:17
**multiple** [2] - 19:10, 36:8
**music** [2] - 30:7, 58:20
**must** [2] - 15:23, 99:8

# N

**name** [3] - 22:12, 46:24, 47:25
**named** [2] - 19:14, 36:11
**names** [2] - 23:2, 47:24
**national** [3] - 19:3, 35:14, 43:20
**National** [19] - 21:5, 21:12, 22:1, 22:3, 22:21, 24:16, 25:10, 26:4, 27:19, 29:17, 30:11, 41:18, 42:7, 45:8, 46:7, 53:5, 55:10, 58:7, 60:6
**nature** [2] - 68:5, 83:18
**necessarily** [1] - 40:23
**need** [25] - 5:1, 5:22, 5:24, 18:6, 18:8, 18:11, 63:23, 64:17, 73:14, 75:8, 83:10, 87:8, 87:10, 92:8, 97:19, 98:1, 99:4, 99:15, 99:19, 99:20, 99:24, 99:25, 100:5, 100:13, 101:2
**needed** [1] - 54:4
**needs** [6] - 62:17, 65:5, 78:24, 86:16, 89:9, 95:16
**negative** [4] - 85:21, 86:7, 91:3, 91:8
**negatively** [1] - 73:16
**negotiate** [1] - 73:25
**negotiations** [1] - 82:4
**never** [5] - 37:18, 37:19, 39:11, 81:1, 81:5
**new** [9] - 64:3, 64:6, 64:10, 64:12, 77:8, 78:15, 99:5, 99:8,

99:16
**New** [1] - 1:16
**next** [9] - 16:17,
33:13, 41:22, 50:25,
56:9, 84:4, 97:15,
98:11, 100:17
**Nicole** [1] - 3:11
**NICOLE** [1] - 1:14
**nominated** [1] -
20:25
**nominee** [3] - 20:23,
24:12, 41:9
**nonlawyer** [1] -
19:24
**nonwork** [1] - 89:1
**notes** [1] - 102:5
**nothing** [3] - 50:4,
80:6, 85:19
**notice** [4] - 15:23,
72:18, 76:3, 88:17
**notify** [2] - 87:19,
91:21
**notwithstanding** [1]
- 13:2
**november** [1] - 1:6
**November** [4] -
28:21, 29:8, 29:19,
33:14
**nowhere** [1] - 98:19
**number** [2] - 7:24,
90:1
**numbers** [2] - 66:15,
66:24
**NW** [6] - 1:16, 1:19,
1:23, 2:3, 2:8, 102:14

## O

**oath** [1] - 6:5
**object** [1] - 70:22
**objection** [2] - 85:24,
88:1
**objections** [4] -
65:25, 66:1, 66:7,
66:9
**obligations** [2] -
77:8, 77:11
**obstruction** [1] -
77:13
**obvious** [2] - 42:24,
44:7
**obviously** [5] -
14:18, 60:2, 68:14,
70:8, 78:22
**occasion** [1] - 36:1
**occasionally** [1] -
94:6
**occasions** [1] - 7:24
**occur** [1] - 65:4

**occurred** [3] - 22:5,
22:16, 31:25
**October** [6] - 25:5,
25:11, 28:3, 28:15,
28:21, 52:9
**OF** [7] - 1:1, 1:3,
1:10, 1:15, 1:18, 1:22
**offenders** [1] - 93:3
**offense** [31] - 13:25,
14:2, 14:5, 16:18,
16:22, 17:16, 18:9,
18:21, 30:24, 30:25,
31:2, 31:4, 31:7,
31:18, 32:10, 35:9,
61:20, 61:24, 62:3,
63:25, 65:9, 66:12,
66:21, 66:22, 67:1,
68:6, 68:9, 72:3,
80:21, 100:19
**offer** [2] - 85:10,
87:14
**offering** [1] - 28:14
**office** [10] - 65:19,
79:21, 80:24, 82:21,
86:24, 87:6, 90:3,
91:24, 99:3
**Office** [1] - 99:23
**OFFICER** [16] -
89:14, 89:17, 89:25,
90:6, 90:12, 90:22,
90:24, 91:2, 91:19,
92:3, 92:10, 92:18,
99:2, 99:13, 99:17,
99:20
**Offices** [1] - 79:23
**Official** [1] - 2:6
**official** [3] - 66:2,
66:5, 102:12
**officials** [7] - 20:2,
20:19, 21:12, 21:25,
22:20, 42:6, 46:6
**old** [2] - 7:8, 80:10
**once** [3] - 39:12,
61:23, 92:25
**one** [68] - 10:3,
11:12, 14:21, 15:1,
15:21, 16:10, 17:1,
17:18, 18:7, 19:14,
25:16, 26:15, 27:21,
30:7, 31:3, 31:6,
31:17, 32:18, 33:1,
33:4, 33:22, 34:4,
35:8, 36:1, 36:14,
40:14, 42:11, 42:19,
43:1, 43:24, 44:16,
49:19, 52:13, 55:16,
56:5, 56:9, 56:18,
58:21, 60:1, 61:21,
62:20, 64:9, 64:10,
66:5, 66:12, 68:18,

68:20, 72:1, 75:3,
78:22, 84:2, 84:13,
84:14, 84:15, 85:12,
85:14, 85:21, 86:6,
86:7, 86:16, 87:11,
93:8, 95:25, 98:24,
99:6, 99:10, 99:16
**ones** [1] - 30:22
**ongoing** [2] - 27:9,
94:17
**open** [4] - 56:22,
79:7, 82:9, 82:16
**opened** [2] - 28:16,
56:12, 56:16
**openings** [1] - 28:23
**opportunity** [4] -
66:8, 70:22, 74:9,
80:14
**oppose** [1] - 72:14
**orally** [1] - 6:1
**orchestrated** [1] -
19:5
**order** [37] - 8:19,
9:19, 18:8, 24:5, 26:9,
27:8, 29:3, 30:4, 33:2,
33:9, 38:21, 49:22,
50:8, 53:13, 57:12,
58:19, 70:4, 74:13,
75:14, 89:2, 89:10,
92:8, 93:20, 94:10,
97:9, 97:19, 97:21,
97:24, 98:1, 98:6,
98:13, 98:17, 98:18,
98:21, 99:1, 99:14,
99:24
**ordered** [1] - 75:16
**orders** [2] - 92:16,
99:2
**ordinarily** [2] -
77:25, 92:9
**original** [1] - 64:14
**originally** [1] - 64:10
**originated** [2] -
29:11, 57:24
**otherwise** [3] - 13:6,
13:16, 13:17
**outside** [2] - 13:10,
13:14
**outstanding** [1] -
66:10
**overall** [1] - 42:25
**overt** [6] - 32:18,
32:19, 33:22, 33:23,
33:24, 62:5
**own** [9] - 10:11,
10:17, 10:21, 37:12,
74:3, 74:19, 80:5,
82:24, 83:19
**owned** [4] - 19:8,
24:9, 51:7, 76:23

**owner** [1] - 19:24
**ownership** [1] -
76:24

## P

**p.m** [2] - 1:7, 100:18
**Page** [11] - 11:20,
11:21, 11:22, 71:25,
72:6, 72:12, 72:13,
73:1, 75:3, 75:13
**pages** [2] - 71:22,
71:24
**paid** [6] - 20:7,
30:20, 38:17, 60:23,
61:2, 61:6
**pan** [1] - 41:13
**paper** [1] - 52:3
**papers** [1] - 84:4
**paragraph** [5] -
32:22, 32:24, 33:4,
33:8, 63:1
**Paragraph** [12] -
11:20, 11:21, 32:23,
33:5, 34:4, 36:17,
38:14, 41:14, 47:22,
50:19, 77:22, 78:19
**paragraphs** [4] -
30:23, 34:1, 35:5,
71:24
**parole** [1] - 80:12
**Parole** [1] - 80:13
**part** [23] - 4:25, 6:2,
12:21, 17:3, 20:21,
28:22, 30:14, 30:18,
41:7, 42:13, 44:9,
49:17, 49:23, 50:22,
61:6, 63:1, 64:12,
68:14, 72:1, 79:8,
80:14, 94:1, 94:2
**participated** [2] -
32:9, 62:1
**particular** [5] -
11:16, 51:6, 75:14,
80:7, 93:15
**particularly** [2] -
68:18, 96:9
**parties** [4] - 66:5,
70:16, 93:18, 101:10
**parts** [2] - 62:21,
64:9
**pass** [3] - 20:12,
38:24, 39:20
**pass-through** [3] -
20:12, 38:24, 39:20
**passed** [1] - 50:17
**passport** [7] - 86:16,
87:8, 87:18, 88:16,
91:17, 91:20, 92:16

**passports** [1] - 92:13
**past** [1] - 62:23
**pay** [7] - 20:16,
22:19, 40:1, 43:8,
47:11, 93:2
**paying** [1] - 64:24
**payment** [1] - 61:6
**payments** [6] -
20:12, 38:23, 39:20,
42:18, 44:4, 51:13
**pecuniary** [1] - 63:20
**penalties** [3] - 63:11,
63:12, 63:18
**pending** [4] - 6:19,
25:9, 42:20, 52:7
**Pennsylvania** [1] -
1:23
**people** [7] - 17:21,
37:23, 65:21, 93:2,
94:14, 95:8, 99:9
**percent** [1] - 87:15
**perform** [1] - 77:7
**perhaps** [2] - 101:6,
101:7
**period** [10] - 24:4,
49:22, 63:21, 63:22,
64:14, 76:12, 80:3,
81:2, 95:6, 95:12
**perjury** [2] - 6:8,
77:13
**permission** [1] -
87:17
**permitted** [3] - 13:7,
13:16, 13:17
**Person** [45] - 19:24,
20:5, 20:6, 20:13,
20:17, 20:18, 20:22,
21:10, 22:19, 24:15,
24:19, 24:25, 25:6,
37:13, 37:15, 37:16,
37:18, 38:4, 38:12,
38:16, 38:23, 38:25,
39:7, 39:9, 39:11,
39:21, 40:2, 40:6,
41:8, 42:5, 42:11,
42:18, 43:8, 43:19,
43:22, 44:4, 44:6,
47:11, 50:7, 50:13,
50:14, 51:18, 60:5
**person** [21] - 7:25,
9:6, 20:1, 20:25, 31:3,
31:17, 35:8, 37:12,
37:22, 38:8, 38:9,
38:10, 38:11, 38:15,
42:16, 43:6, 61:21,
62:2, 92:22, 95:18,
96:4
**personal** [2] - 21:21,
45:25
**perspective** [5] -

33:25, 61:14, 80:8, 88:13, 93:7
**petition** [1] - 13:6
**phase** [1] - 16:17
**phone** [9] - 7:25, 86:11, 86:12, 89:24, 90:1, 90:4, 90:19, 91:17, 92:22
**pick** [2] - 30:22, 87:18
**place** [3] - 50:4, 50:10, 51:3
**placed** [2] - 6:5, 25:23
**places** [1] - 92:20
**Plaintiff** [1] - 1:4
**planning** [1] - 98:11
**play** [1] - 50:12
**plea** [34] - 3:23, 5:1, 5:2, 6:23, 7:22, 8:1, 8:19, 11:3, 11:17, 12:5, 12:9, 12:16, 16:7, 31:9, 62:11, 62:22, 66:25, 71:21, 72:9, 72:22, 74:8, 77:12, 77:18, 77:23, 78:12, 80:22, 82:1, 82:8, 82:9, 82:13, 82:23, 83:1, 83:20, 83:21
**PLEA** [1] - 1:10
**plead** [6] - 4:16, 9:14, 16:7, 16:13, 83:12, 83:15
**pleading** [10] - 6:14, 8:24, 11:14, 13:12, 13:13, 16:23, 18:9, 78:23, 81:11, 81:19
**pled** [1] - 12:20
**point** [21] - 13:8, 18:14, 37:15, 40:14, 46:9, 50:16, 62:15, 64:2, 64:17, 64:18, 64:21, 67:13, 67:16, 75:14, 80:10, 84:2, 84:25, 87:13, 90:8, 92:21, 94:6
**points** [9] - 67:1, 67:4, 67:7, 67:10, 67:11, 67:12, 68:7, 68:10, 72:16
**political** [8] - 19:17, 19:24, 19:25, 21:11, 36:19, 37:3, 37:5, 42:6
**portions** [1] - 63:17
**position** [3] - 14:6, 20:23, 41:9
**possess** [2] - 81:6, 81:9

**possibilities** [1] - 67:17
**possibility** [2] - 67:10, 69:8
**possible** [3] - 84:21, 85:5, 97:17
**postponing** [1] - 74:13
**potential** [4] - 20:23, 41:9, 77:4, 93:23
**potentially** [1] - 21:3
**power** [6] - 24:7, 24:17, 50:21, 51:6, 51:13, 51:18
**precisely** [2] - 38:8, 63:6
**prefer** [2] - 93:11, 96:12
**prepare** [2] - 11:11, 40:23
**prepared** [3] - 40:1, 40:17, 40:21
**prepares** [1] - 65:19
**preponderance** [1] - 78:13
**present** [9] - 10:11, 10:17, 10:18, 10:20, 32:3, 68:24, 73:10, 73:14, 73:17
**presentation** [1] - 42:25
**presented** [1] - 9:23
**presentence** [4] - 65:18, 66:5, 67:18, 70:21
**pressure** [1] - 50:8
**presumably** [12] - 35:11, 36:9, 39:7, 52:15, 56:24, 75:24, 78:24, 85:24, 89:5, 90:8, 90:10, 92:1
**presumed** [1] - 11:3
**pretrial** [17] - 3:24, 84:12, 86:23, 87:19, 88:18, 89:2, 89:11, 89:12, 89:17, 89:20, 92:24, 94:10, 95:22, 97:18, 98:17, 98:25, 101:4
**previous** [2] - 28:6, 76:17
**previously** [2] - 28:19, 29:1
**primary** [2] - 19:15, 26:15
**principal** [1] - 65:15
**Prisons** [1] - 80:4
**privately** [6] - 40:13, 43:3, 45:5, 56:20, 59:19, 99:7

**probable** [2] - 9:5, 78:16
**probation** [4] - 65:19, 66:8, 80:15, 82:21
**PROBATION** [16] - 89:14, 89:17, 89:25, 90:6, 90:12, 90:22, 90:24, 91:2, 91:19, 92:3, 92:10, 92:18, 99:2, 99:13, 99:17, 99:20
**problem** [8] - 45:4, 59:18, 86:4, 87:22, 89:5, 94:15, 96:13, 97:3
**problems** [1] - 92:25
**Procedure** [1] - 75:7
**proceed** [2] - 3:25, 18:17
**proceeding** [4] - 5:6, 13:7, 13:18, 73:6
**proceedings** [3] - 15:3, 101:12, 102:6
**proceeds** [1] - 19:12
**process** [3] - 7:21, 100:24, 101:2
**processing** [2] - 97:12, 101:5
**produce** [1] - 73:5
**produced** [1] - 102:6
**proffer** [5] - 16:19, 17:6, 17:12, 17:14, 61:18
**proffers** [1] - 61:21
**projects** [9] - 25:17, 29:7, 29:13, 30:7, 33:20, 52:14, 57:17, 58:1, 58:21
**promised** [1] - 81:19
**promises** [3] - 12:15, 82:7, 82:11
**proposal** [4] - 24:7, 24:14, 25:2, 50:20
**prosecute** [1] - 72:2
**prosecuted** [1] - 6:7
**prosecution** [2] - 12:19, 77:12
**prosecutor** [1] - 79:25
**prosecutors** [2] - 69:1, 81:17
**protocol** [1] - 86:8
**prove** [1] - 11:4
**provide** [11] - 17:21, 23:6, 32:14, 34:10, 40:6, 48:10, 49:11, 73:4, 75:8, 88:12, 91:18
**provided** [9] - 20:12,

28:17, 38:23, 60:7, 62:4, 62:8, 65:10, 65:11, 77:17
**providing** [5] - 52:15, 56:11, 59:4, 60:8, 68:22
**proving** [1] - 78:11
**provision** [2] - 12:24, 93:12
**PUBLIC** [2] - 1:15, 1:19
**public** [3] - 3:12, 79:12, 80:24
**publicly** [3] - 21:7, 26:15, 53:23
**punishment** [1] - 65:12
**purportedly** [1] - 24:9
**purporting** [2] - 24:22, 52:1
**purpose** [31] - 18:22, 22:18, 23:5, 23:7, 26:23, 27:4, 27:13, 28:25, 30:1, 31:24, 32:7, 34:7, 47:15, 48:6, 48:11, 54:5, 54:11, 54:17, 54:22, 55:14, 55:21, 57:3, 58:7, 58:17, 58:25, 59:24, 60:8, 60:10, 61:25, 62:9
**pursuant** [1] - 14:10
**pursue** [1] - 76:7
**push** [1] - 34:16
**put** [6] - 5:24, 51:12, 51:21, 52:19, 56:5, 63:25, 65:21, 68:7, 73:14, 84:23, 92:8, 92:11, 92:15, 93:16, 93:20, 99:3
**puts** [1] - 72:18
**putting** [4] - 42:21, 43:10, 86:6, 99:1

**Q**

**Q's** [5] - 21:15, 21:16, 21:18, 21:21, 45:11
**questions** [14] - 4:25, 5:3, 6:7, 7:7, 8:22, 9:19, 41:5, 57:21, 62:10, 62:14, 71:20, 80:2, 81:14, 97:1
**quick** [1] - 93:15
**quickly** [4] - 60:13, 92:2, 97:17, 98:9

**quotes** [1] - 57:23

**R**

**R's** [3] - 24:11, 24:19, 24:23
**raise** [5] - 4:18, 15:7, 79:3, 86:18, 100:14
**raised** [1] - 83:8
**range** [2] - 68:12, 70:25
**rather** [1] - 73:1
**RDR** [3] - 2:6, 102:3, 102:12
**reached** [1] - 82:4
**read** [3] - 8:3, 18:3, 18:12
**reading** [3] - 4:10, 18:13, 64:20
**ready** [1] - 3:25
**reality** [2] - 24:11, 33:20
**realize** [1] - 5:5
**really** [3] - 5:22, 31:19, 43:4
**reason** [4] - 78:22, 85:25, 92:5, 95:10
**reasonable** [5] - 11:5, 61:20, 65:13, 65:17, 78:14
**reasons** [2] - 70:1, 72:14
**receive** [1] - 15:2
**received** [7] - 4:4, 8:5, 56:3, 59:16, 60:3, 75:5, 84:12
**recommend** [1] - 69:3
**recommendations** [2] - 6:21, 6:23
**recommended** [1] - 19:22
**record** [9] - 3:8, 4:3, 4:24, 5:24, 63:5, 84:23, 85:17, 89:16, 94:24
**recovery** [3] - 3:13, 79:17, 79:19
**RECOVERY** [1] - 1:22
**recruiter** [2] - 19:22, 37:11
**redacted** [2] - 17:19, 18:1
**reduce** [2] - 80:5, 80:9
**reduced** [2] - 12:10, 69:11
**reductions** [1] - 69:8

**reference** [1] - 33:25
**referenced** [1] - 36:5
**references** [2] - 33:16, 34:5
**reflect** [1] - 4:3
**refuse** [2] - 23:11, 48:17
**regarding** [4] - 28:6, 50:5, 59:5, 59:7
**registered** [2] - 28:12, 56:10
**regular** [2] - 38:1, 86:8
**regulators** [1] - 32:15
**rehab** [1] - 65:11
**reiterate** [1] - 96:22
**relate** [1] - 5:3
**related** [14] - 5:25, 12:19, 20:20, 30:13, 30:18, 40:8, 42:23, 43:7, 54:24, 61:7, 61:9, 66:22, 77:18, 87:20
**relates** [1] - 66:21
**relating** [6] - 11:25, 16:21, 42:20, 60:5, 62:9, 66:16
**release** [10] - 63:21, 64:1, 64:5, 76:16, 77:2, 80:15, 84:3, 84:11, 86:4, 100:17
**released** [3] - 26:3, 53:4, 100:6
**relief** [2] - 13:6, 15:7
**reluctant** [1] - 51:2
**rely** [1] - 87:6
**remained** [1] - 52:24
**remaining** [4] - 25:23, 28:9, 29:21, 58:12
**removal** [2] - 42:22, 55:10
**removed** [14] - 21:8, 21:12, 22:21, 24:16, 26:4, 27:19, 29:17, 30:11, 41:21, 42:7, 43:6, 43:20, 46:7, 53:5
**removing** [2] - 58:7, 60:6
**repeatedly** [1] - 28:23
**report** [15] - 3:24, 63:24, 65:18, 65:21, 66:6, 67:18, 70:21, 84:12, 87:4, 87:5, 88:8, 88:9, 90:22, 92:11, 92:22
**REPORTED** [1] - 2:6
**reported** [2] - 22:4, 46:13
**Reporter** [2] - 2:6, 102:12
**reporting** [3] - 86:10, 89:20, 90:21
**reports** [2] - 94:14, 94:17
**represent** [1] - 16:2
**representative** [6] - 21:22, 29:5, 33:18, 45:25, 50:14, 57:14
**representative's** [2] - 29:10, 57:21
**represented** [1] - 10:2
**reprosecute** [1] - 79:2
**request** [12] - 16:2, 21:2, 21:23, 23:15, 25:24, 39:2, 39:4, 41:16, 48:25, 60:4, 90:13, 95:11
**requested** [3] - 21:14, 45:16, 92:12
**requests** [1] - 62:7
**require** [3] - 10:12, 87:14, 92:9
**required** [6] - 75:6, 76:4, 80:10, 85:1, 91:24, 92:5
**requirements** [3] - 64:19, 74:20, 78:12
**requires** [1] - 69:9
**reserving** [1] - 6:22
**residencies** [1] - 84:13
**resident** [2] - 21:6, 41:18
**resolution** [3] - 25:9, 50:4, 52:8
**resolve** [8] - 19:18, 20:2, 22:20, 27:15, 43:5, 55:2, 66:8, 66:10
**resolved** [2] - 36:12, 43:21
**respect** [3] - 29:4, 30:5, 86:18
**responded** [3] - 29:9, 30:6, 57:21
**responding** [1] - 62:7
**response** [4] - 27:11, 27:22, 54:23, 55:17
**responsibility** [4] - 67:11, 67:12, 67:15, 72:15
**rest** [1] - 52:19
**restitution** [5] - 64:19, 64:25, 75:13, 75:14, 75:18
**result** [3] - 50:22, 72:19
**resulted** [2] - 25:3, 82:4
**retain** [1] - 27:14
**retainer** [4] - 20:11, 38:22, 39:19, 44:20
**returning** [2] - 22:3, 24:24
**reveal** [1] - 59:25
**review** [4] - 8:18, 29:14, 58:1, 65:23
**revocation** [1] - 64:13
**revoked** [2] - 64:5, 64:6
**rights** [12] - 8:22, 8:23, 9:8, 10:24, 11:15, 11:25, 12:17, 15:16, 16:8, 16:14, 75:2, 80:23
**Robinson** [1] - 3:16
**ROBINSON** [41] - 2:2, 3:3, 3:15, 4:7, 5:11, 7:5, 15:20, 17:24, 40:14, 40:17, 40:21, 44:9, 44:12, 44:16, 45:2, 56:18, 59:17, 60:12, 60:15, 60:18, 60:22, 61:2, 69:19, 70:17, 83:11, 84:7, 84:17, 84:20, 85:3, 85:8, 85:14, 86:17, 87:12, 94:8, 95:2, 95:15, 95:21, 96:7, 96:11, 96:18, 101:9
**role** [12] - 20:4, 42:23, 42:24, 43:7, 43:17, 44:3, 44:10, 49:25, 50:13, 60:7, 73:25, 101:1
**roles** [1] - 43:21
**Room** [2] - 2:8, 102:14
**roughly** [2] - 35:25, 67:3
**Rule** [2] - 69:9, 74:21
**Rules** [1] - 75:6
**run** [1] - 99:3
**runs** [1] - 79:2
**Ryan** [1] - 3:10
**RYAN** [1] - 1:14

## S

**salient** [1] - 30:22
**satisfied** [5] - 8:13, 8:16, 22:7, 46:18, 83:16
**Saturday** [1] - 101:8
**scan** [1] - 101:2
**scheme** [8] - 19:6, 19:13, 19:15, 19:20, 26:16, 35:17, 53:24, 67:6
**school** [1] - 7:12
**Schuck** [1] - 89:17
**scope** [3] - 12:22, 13:10, 13:14
**scrutiny** [2] - 24:5, 49:22
**seal** [3] - 84:9, 84:10
**Seattle** [19] - 84:17, 85:1, 85:4, 86:23, 86:24, 87:2, 87:3, 87:6, 87:10, 88:4, 88:11, 88:14, 89:23, 90:8, 90:10, 90:18, 92:6, 95:1, 96:5
**SEC** [1] - 56:10
**second** [5] - 31:6, 32:8, 33:1, 93:15, 99:6
**seconds** [1] - 99:21
**secretly** [3] - 23:20, 31:22, 49:9
**SECTION** [3] - 1:15, 1:19, 1:23
**section** [5] - 3:12, 3:13, 79:12, 79:17, 79:19
**sections** [1] - 65:8
**secure** [2] - 26:1, 52:21
**Securities** [1] - 28:12
**see** [8] - 68:11, 68:18, 85:25, 89:12, 94:14, 96:5, 96:20, 98:4
**seek** [2] - 6:18, 15:6
**seeking** [3] - 19:11, 25:7, 36:9
**seem** [1] - 43:22
**select** [1] - 9:19
**selected** [1] - 19:23
**selective** [1] - 63:3
**sell** [2] - 24:17, 51:18
**send** [4] - 24:3, 49:21, 51:2, 91:23
**sense** [1] - 18:7
**sent** [17] - 21:9, 22:22, 25:3, 26:21, 27:2, 27:10, 32:21, 33:17, 34:5, 41:1, 41:21, 45:9, 50:3, 54:15, 54:16, 54:22, 55:6
**sentence** [37] - 6:22, 12:5, 12:10, 12:18, 13:3, 13:23, 14:4, 14:21, 33:13, 63:13, 64:6, 64:10, 64:12, 64:14, 64:15, 65:17, 66:17, 68:6, 69:11, 70:4, 70:7, 70:21, 70:23, 71:1, 74:13, 80:4, 80:7, 80:8, 80:12, 80:14, 80:15, 80:18, 81:20, 81:23, 82:12, 82:20
**sentenced** [1] - 74:7
**sentences** [1] - 66:18
**sentencing** [25] - 6:19, 13:24, 14:10, 14:18, 14:20, 61:3, 63:9, 64:8, 65:3, 66:11, 66:13, 66:20, 67:14, 67:17, 68:15, 68:17, 69:13, 70:1, 70:2, 70:5, 74:8, 74:13, 74:21, 95:10
**separate** [3] - 21:3, 28:17, 36:4
**separated** [1] - 60:16
**September** [12] - 22:10, 23:14, 24:2, 26:5, 26:25, 27:8, 28:1, 34:6, 46:22, 48:24, 54:14, 55:23
**series** [2] - 65:7, 76:2
**seriousness** [1] - 65:8
**serve** [6] - 64:15, 80:4, 80:8, 80:14, 80:18, 80:25
**served** [1] - 64:14
**services** [16] - 3:24, 8:14, 20:7, 28:14, 56:12, 84:12, 86:24, 87:19, 89:11, 89:12, 89:18, 89:21, 92:24, 94:10, 98:25, 101:4
**set** [14] - 12:9, 12:10, 14:18, 15:8, 42:23, 43:9, 63:10, 63:23, 66:15, 67:22, 72:3, 86:13, 92:6, 95:7
**sets** [1] - 8:9
**setting** [4] - 44:20, 74:7, 74:8, 95:23
**several** [5] - 23:2, 23:17, 25:16, 47:25, 52:13
**severe** [2] - 71:7,

71:8
**shall** [1] - 41:22
**share** [1] - 65:22
**shell** [3] - 23:3, 48:1, 48:6
**short** [1] - 28:10
**show** [3] - 18:18, 73:20, 88:8
**shown** [1] - 62:23
**sign** [5] - 9:12, 84:3, 84:6, 98:20, 100:21
**signed** [6] - 16:25, 17:22, 24:22, 34:19, 51:25, 56:22
**significant** [1] - 26:16
**simply** [1] - 24:12
**single** [1] - 62:25
**sit** [2] - 17:11, 83:25
**sitting** [1] - 57:4
**six** [3] - 67:1, 67:4, 67:19
**skill** [1] - 37:3
**slate** [3] - 29:13, 33:20, 57:25
**slight** [1] - 52:23
**slightly** [2] - 41:5, 70:10
**smaller** [2] - 24:4, 49:21
**Sohn** [1] - 3:12
**SOHN** [1] - 1:21
**solemnly** [1] - 100:16
**someone** [1] - 19:17
**someplace** [1] - 84:16
**something's** [1] - 95:9
**sometime** [1] - 95:12
**sometimes** [2] - 17:5, 62:23
**somewhere** [1] - 67:25
**soon** [1] - 85:4
**sophisticated** [1] - 67:6
**sorry** [7] - 33:2, 50:7, 59:17, 59:22, 60:22, 73:3, 99:8
**sort** [5] - 41:22, 43:17, 65:15, 65:16, 71:22
**sound** [1] - 5:18
**sounds** [1] - 100:25
**source** [24] - 18:22, 23:7, 27:4, 27:12, 28:6, 28:24, 30:1, 31:24, 32:7, 34:7, 48:11, 54:16, 54:22,

55:21, 57:3, 57:8, 58:17, 58:25, 59:21, 59:24, 60:8, 60:9, 61:25, 62:9
**sources** [2] - 17:6, 76:12
**special** [1] - 64:16
**specific** [10] - 13:25, 14:1, 21:24, 30:24, 35:9, 46:1, 62:7, 65:9, 70:3, 88:12
**specifically** [5] - 15:14, 44:23, 62:8, 85:20, 96:22
**specifics** [1] - 63:16
**spoken** [1] - 37:22
**spread** [1] - 94:15
**staff** [2] - 21:20, 45:23
**stand** [1] - 78:2
**standard** [3] - 78:14, 78:16, 99:22
**start** [9] - 18:13, 34:18, 34:23, 63:11, 66:3, 88:2, 92:25, 94:20, 96:23
**started** [2] - 85:9, 85:11
**starting** [1] - 33:10
**starts** [1] - 33:11
**state** [4] - 16:20, 76:17, 79:23, 81:7
**statement** [7] - 4:15, 6:8, 16:18, 35:10, 72:3, 77:16, 84:8
**statements** [17] - 6:12, 6:15, 18:21, 26:7, 31:4, 31:18, 31:20, 32:10, 44:13, 53:10, 53:11, 61:24, 77:23, 77:25, 78:5, 83:14, 83:23
**states** [2] - 81:1
**States** [49] - 2:7, 3:6, 3:10, 18:25, 19:9, 19:18, 20:1, 20:18, 21:7, 21:9, 21:11, 21:13, 21:16, 21:25, 22:13, 22:20, 22:21, 23:11, 23:21, 24:1, 24:16, 24:24, 25:4, 25:20, 26:4, 26:9, 26:12, 26:18, 26:21, 26:22, 27:20, 27:25, 28:12, 29:18, 30:11, 31:22, 32:6, 41:19, 42:7, 46:6, 46:24, 48:17, 49:10, 53:6, 53:13, 53:15, 77:10, 77:15, 102:13

**STATES** [6] - 1:1, 1:3, 1:11, 1:15, 1:18, 1:22
**status** [5] - 26:15, 53:23, 94:19, 95:6, 95:16
**statute** [7] - 12:20, 12:22, 13:12, 65:5, 78:22, 79:2, 81:8
**statutory** [10] - 12:1, 13:22, 15:15, 63:11, 63:12, 63:18, 64:7, 64:11, 65:4, 70:8
**stay** [1] - 93:9
**stay-aways** [1] - 93:9
**staying** [1] - 88:22
**stenographic** [1] - 102:5
**still** [6] - 16:25, 17:6, 52:24, 66:9, 80:10, 98:1
**stipulations** [1] - 74:23
**stories** [2] - 23:23, 49:12
**story** [4] - 23:6, 27:23, 34:10, 48:10
**straight** [1] - 4:22
**strategies** [2] - 23:20, 49:9
**Street** [1] - 2:3
**street** [3] - 99:12, 99:14, 100:9
**strictly** [1] - 7:4
**strictness** [2] - 23:25, 49:20
**strokes** [1] - 43:16
**stuff** [1] - 97:3
**subject** [3] - 29:14, 58:1, 77:12
**submitted** [5] - 30:12, 30:17, 59:9, 59:11, 61:5
**subpoena** [1] - 10:12
**subsequently** [1] - 28:7
**substantial** [3] - 68:22, 72:25, 73:1
**succeed** [1] - 67:18
**successful** [4] - 24:15, 26:3, 51:16, 53:5
**sufficient** [1] - 86:12
**suggest** [3] - 96:3, 98:12, 98:16
**suggested** [2] - 51:24, 81:19
**suggesting** [1] - 86:11
**suggestion** [1] - 93:2

**suggestions** [1] - 92:7
**Suite** [2] - 1:16, 2:4
**summarize** [1] - 35:6
**summarizing** [1] - 41:4
**summoned** [1] - 9:16
**Sunday** [1] - 85:5
**superfluous** [1] - 18:14
**supervised** [6] - 63:21, 63:23, 64:1, 64:4, 80:15, 87:4
**supervising** [1] - 86:24
**supervision** [5] - 74:3, 87:25, 89:22, 90:2, 90:13
**support** [1] - 55:20
**supposed** [2] - 40:7, 96:25
**surrender** [1] - 92:12
**surrounding** [1] - 19:19
**swear** [1] - 100:16
**sworn** [1] - 4:20
**system** [2] - 24:1, 49:20, 80:11

## T

**table** [2] - 3:11, 3:17
**talks** [4] - 38:14, 52:5, 72:6, 78:19
**tax** [1] - 76:17
**team** [1] - 50:13
**telephone** [2] - 89:20, 90:2
**telephonically** [2] - 95:17, 95:19
**temporary** [2] - 21:7, 41:20
**tens** [11] - 18:23, 20:16, 22:10, 26:10, 27:5, 28:25, 40:1, 46:22, 53:14, 54:17, 57:4
**terms** [31] - 6:21, 15:14, 15:19, 15:22, 30:24, 31:12, 36:7, 36:20, 40:17, 42:14, 44:3, 50:19, 53:9, 61:14, 62:6, 63:9, 63:18, 65:3, 66:19, 67:17, 68:21, 71:9, 77:4, 78:11, 92:19, 93:3, 93:25, 97:4, 100:25
**terrific** [1] - 101:6

**test** [12] - 85:21, 86:7, 90:14, 90:25, 91:10, 92:2, 94:11, 98:10, 98:17, 99:11, 101:5
**testify** [2] - 10:16, 10:18
**testimony** [1] - 73:5
**testing** [4] - 91:6, 91:24, 92:5, 100:9
**that'll** [2] - 68:14, 92:19
**THE** [533] - 1:1, 1:11, 1:14, 2:2, 3:1, 3:4, 3:5, 3:14, 3:19, 3:21, 3:22, 3:23, 4:3, 4:6, 4:8, 4:9, 4:12, 4:13, 4:17, 4:18, 4:21, 5:12, 6:4, 6:5, 6:9, 6:10, 7:2, 7:3, 7:6, 7:9, 7:10, 7:11, 7:12, 7:13, 7:14, 7:15, 7:16, 7:18, 7:19, 7:20, 7:21, 7:24, 8:3, 8:4, 8:5, 8:7, 8:8, 8:12, 8:13, 8:15, 8:17, 8:20, 8:21, 9:9, 9:10, 9:11, 9:12, 9:13, 9:14, 9:25, 10:1, 10:5, 10:6, 10:9, 10:10, 10:14, 10:15, 11:1, 11:2, 11:7, 11:8, 11:13, 11:14, 11:19, 11:20, 12:7, 12:8, 12:14, 12:15, 13:1, 13:2, 13:20, 13:21, 14:8, 14:9, 14:12, 14:13, 14:25, 15:1, 15:5, 15:6, 15:9, 15:10, 15:11, 15:12, 15:17, 15:18, 15:21, 16:5, 16:6, 16:12, 16:13, 16:16, 16:17, 17:18, 17:25, 18:5, 18:15, 30:22, 31:6, 31:12, 31:15, 32:22, 33:1, 33:6, 33:9, 33:12, 33:15, 33:24, 34:12, 34:14, 34:15, 34:16, 34:21, 34:22, 34:25, 35:1, 35:3, 35:4, 35:20, 35:21, 35:25, 36:3, 36:5, 36:7, 36:16, 36:17, 36:24, 36:25, 37:2, 37:7, 37:9, 37:10, 37:14, 37:15, 37:16, 37:17, 37:18, 37:19, 37:20, 37:21, 37:22, 37:23, 37:25, 38:3, 38:6, 38:7, 38:10, 38:12,

38:13, 38:14, 38:20, 38:21, 39:2, 39:4, 39:6, 39:7, 39:8, 39:10, 39:15, 39:16, 39:17, 39:18, 39:24, 39:25, 40:10, 40:12, 40:13, 40:16, 40:20, 41:3, 41:12, 41:13, 42:1, 42:2, 42:4, 42:5, 42:9, 42:10, 42:12, 42:13, 43:1, 43:2, 43:3, 43:4, 43:11, 43:13, 43:15, 43:16, 44:2, 44:3, 44:11, 44:15, 44:19, 44:24, 45:1, 45:4, 45:5, 45:7, 45:12, 45:13, 45:14, 45:16, 45:18, 45:19, 45:22, 45:23, 46:4, 46:5, 46:11, 46:12, 46:16, 46:17, 46:20, 46:21, 47:4, 47:5, 47:9, 47:10, 47:14, 47:15, 47:16, 47:17, 47:23, 47:24, 48:4, 48:5, 48:8, 48:9, 48:14, 48:15, 48:21, 48:22, 48:23, 48:24, 49:3, 49:4, 49:6, 49:8, 49:16, 49:17, 49:18, 49:19, 49:23, 49:25, 50:2, 50:19, 50:24, 51:4, 51:10, 51:11, 51:15, 51:16, 51:23, 51:25, 52:4, 52:5, 52:18, 52:19, 52:23, 53:1, 53:2, 53:3, 53:8, 53:9, 53:17, 53:18, 53:21, 53:22, 54:2, 54:3, 54:9, 54:10, 54:12, 54:13, 54:20, 54:21, 55:1, 55:2, 55:4, 55:5, 55:7, 55:8, 55:12, 55:13, 55:15, 55:16, 55:19, 55:20, 55:22, 55:23, 56:1, 56:2, 56:8, 56:9, 56:15, 56:17, 56:19, 56:20, 56:23, 57:1, 57:2, 57:7, 57:8, 57:11, 57:12, 57:19, 57:20, 58:4, 58:5, 58:10, 58:11, 58:14, 58:15, 58:23, 58:24, 59:2, 59:3, 59:5, 59:6, 59:7, 59:9, 59:15, 59:16, 59:18, 59:19, 59:22, 59:23, 60:1, 60:14, 60:16, 60:20, 61:1, 61:11, 61:12, 61:13, 61:17, 62:13,

62:14, 62:16, 62:17, 62:18, 62:19, 65:2, 65:3, 69:20, 69:22, 70:12, 70:13, 70:19, 71:4, 71:5, 71:11, 71:12, 71:19, 71:20, 72:5, 72:6, 72:11, 72:12, 72:24, 72:25, 73:8, 73:9, 73:19, 73:20, 73:23, 73:24, 74:5, 74:6, 74:17, 74:18, 75:1, 75:2, 75:11, 75:12, 75:20, 75:21, 76:1, 76:2, 76:10, 76:11, 76:15, 76:16, 76:19, 76:20, 77:1, 77:2, 77:21, 77:22, 78:7, 78:8, 78:10, 78:11, 78:18, 78:19, 79:5, 79:6, 79:10, 79:11, 79:15, 79:18, 80:1, 80:2, 80:20, 80:21, 81:13, 81:14, 81:24, 81:25, 82:2, 82:3, 82:6, 82:7, 82:10, 82:11, 82:14, 82:15, 82:18, 82:19, 82:22, 82:23, 82:25, 83:1, 83:3, 83:4, 83:6, 83:7, 83:12, 83:15, 83:16, 84:8, 84:19, 84:22, 85:7, 85:12, 85:16, 87:1, 87:21, 88:2, 88:6, 88:10, 88:16, 88:20, 89:14, 89:15, 89:17, 89:24, 89:25, 90:4, 90:6, 90:7, 90:12, 90:17, 90:22, 90:23, 90:24, 91:1, 91:2, 91:4, 91:19, 91:25, 92:3, 92:7, 92:10, 92:17, 92:18, 92:19, 93:6, 93:7, 93:14, 93:20, 93:24, 94:5, 94:9, 94:23, 94:25, 95:4, 95:7, 95:14, 95:19, 95:22, 96:8, 96:13, 96:20, 97:5, 97:6, 97:10, 97:13, 97:16, 97:19, 97:21, 97:23, 98:1, 98:3, 98:4, 98:8, 98:9, 98:14, 98:19, 98:24, 98:25, 99:2, 99:5, 99:6, 99:13, 99:16, 99:17, 99:18, 99:20, 99:22, 100:1, 100:3, 100:5, 100:11, 100:13, 100:14, 100:20, 100:21, 100:22, 100:23,

100:25, 101:10
   **there'll** [1] - 66:7
   **therefore** [4] - 26:20, 54:4, 68:11, 83:21
   **they've** [4] - 16:21, 72:1, 72:13, 78:24
   **third** [2] - 67:13, 67:16
   **thirds** [2] - 32:24, 33:7
   **threatened** [1] - 81:25
   **three** [5] - 26:8, 53:11, 64:1, 67:10, 72:16
   **time-limited** [2] - 81:2, 81:4
   **today** [9] - 77:18, 85:6, 90:15, 90:25, 92:1, 92:2, 97:15, 100:4, 101:6
   **together** [3] - 65:21, 68:7, 99:1
   **tomorrow** [2] - 97:15, 101:7
   **took** [4] - 17:4
   **top** [4] - 45:24, 68:9, 72:20, 78:21
   **totaling** [1] - 28:8
   **totally** [1] - 68:23
   **transaction** [1] - 20:14
   **transactions** [3] - 23:4, 23:12, 48:18
   **transcript** [2] - 102:5, 102:6
   **TRANSCRIPT** [1] - 1:10
   **transfer** [2] - 47:10, 90:3
   **transferred** [7] - 22:10, 26:11, 27:24, 46:22, 53:14, 54:18, 89:22
   **transfers** [7] - 18:22, 22:16, 22:23, 27:5, 27:12, 47:6, 47:18
   **travel** [8] - 87:15, 87:20, 88:17, 89:1, 89:3, 90:21, 91:17, 91:21
   **traveled** [2] - 23:15, 36:1
   **traveling** [1] - 88:18
   **treatment** [1] - 8:5
   **trial** [12] - 9:15, 9:24, 10:2, 10:7, 10:16, 11:6, 11:9, 16:9, 16:14, 18:17, 73:6, 75:2

   **trip** [6] - 25:2, 32:1, 36:3, 36:4, 36:5, 38:2
   **tripping** [1] - 44:10
   **true** [14] - 17:9, 18:22, 23:7, 26:23, 31:24, 48:11, 54:5, 54:22, 55:21, 58:25, 60:8, 60:9, 102:4, 102:5
   **truthful** [2] - 73:4, 78:20
   **truthfully** [1] - 6:7
   **try** [7] - 20:22, 35:5, 40:4, 41:8, 42:19, 45:8, 97:17
   **trying** [5] - 33:2, 39:10, 39:16, 43:5, 43:17
   **turn** [2] - 71:1, 72:7
   **turns** [1] - 72:9
   **two** [19] - 5:21, 19:22, 32:24, 33:7, 51:17, 60:16, 63:20, 64:9, 67:7, 67:11, 67:12, 67:17, 72:16, 76:22, 84:2, 84:13, 84:24, 86:17, 86:20
   **two-thirds** [2] - 32:24, 33:7
   **type** [4] - 8:6, 88:24, 90:2, 91:21
   **typical** [1] - 76:3

**U**

   **ultimately** [7] - 19:23, 20:25, 37:12, 40:6, 41:10, 41:13, 44:4
   **umbrella** [2] - 65:16, 68:16
   **unable** [1] - 15:25
   **unconstitutional** [3] - 12:20, 13:10, 13:13
   **under** [27] - 6:5, 12:11, 12:23, 13:12, 13:25, 14:2, 14:22, 29:13, 56:10, 58:1, 65:7, 65:16, 66:13, 67:2, 68:16, 69:7, 69:13, 70:2, 74:2, 74:15, 75:6, 77:25, 81:8, 84:9, 84:10
   **understood** [11] - 5:18, 22:14, 22:18, 23:9, 26:14, 47:10, 48:15, 53:22, 54:7, 67:22, 88:25
   **unforeseen** [1] -

92:4
   **unhappy** [1] - 50:3
   **uniformity** [1] - 66:18
   **united** [1] - 2:7
   **UNITED** [6] - 1:1, 1:3, 1:11, 1:15, 1:18, 1:22
   **United** [48] - 3:6, 3:10, 18:24, 19:9, 19:18, 20:1, 20:18, 21:6, 21:8, 21:11, 21:13, 21:16, 21:25, 22:13, 22:19, 22:21, 23:11, 23:21, 23:25, 24:16, 24:24, 25:4, 25:20, 26:4, 26:8, 26:12, 26:17, 26:21, 26:22, 27:20, 27:25, 28:12, 29:18, 30:11, 31:22, 32:5, 41:19, 42:7, 46:5, 46:24, 48:17, 49:10, 53:6, 53:12, 53:15, 77:10, 77:15, 102:13
   **unlawful** [1] - 13:23
   **unless** [2] - 11:2, 16:9
   **unredacted** [2] - 17:20, 84:8
   **unrelated** [1] - 60:24
   **up** [46] - 4:22, 5:19, 7:4, 9:10, 11:15, 13:8, 15:19, 16:8, 16:14, 16:22, 17:16, 23:22, 24:6, 30:22, 34:16, 35:6, 37:1, 41:4, 42:23, 43:9, 44:10, 44:20, 49:12, 51:1, 52:6, 60:15, 60:19, 63:5, 66:15, 66:20, 67:8, 67:20, 73:20, 78:4, 86:13, 87:18, 89:13, 91:11, 91:14, 92:6, 94:5, 94:6, 95:23, 96:5, 97:21, 99:3
   **upfront** [1] - 42:16
   **upward** [3] - 14:10, 14:14, 68:18
   **US** [9] - 40:7, 49:20, 50:3, 79:19, 79:22, 97:16, 97:21, 99:23, 100:1
   **USC** [2] - 31:5, 65:7
   **usual** [1] - 75:24

**V**

   **vacated** [2] - 78:21,

79:1
**vacation** [1] - 89:7
**vacations** [1] - 89:3
**valuable** [1] - 80:23
**value** [1] - 76:22
**variance** [5] - 14:14, 14:16, 14:19, 14:22, 69:24
**varies** [1] - 80:25
**various** [22] - 18:23, 20:11, 20:17, 22:24, 24:22, 32:12, 34:9, 38:22, 39:19, 40:3, 40:5, 41:1, 44:5, 44:13, 47:18, 49:1, 51:25, 53:11, 53:15, 66:15, 72:13, 95:23
**vary** [1] - 14:21
**verbatim** [1] - 18:3
**version** [3] - 17:19, 17:20, 18:1
**versus** [1] - 3:6
**videoconference** [1] - 95:20
**videoconferencing** [2] - 95:23, 96:2
**violate** [1] - 64:2
**violation** [3] - 31:5, 64:4, 78:15
**Virginia** [1] - 81:4
**virtually** [1] - 25:23
**visa** [2] - 21:7, 41:20
**vitamins** [1] - 91:10
**voluntarily** [4] - 5:2, 12:17, 82:24, 83:19
**voluntariness** [1] - 81:14
**vote** [1] - 80:24
**vs** [1] - 1:5

1:6, 1:17, 1:20, 1:24, 2:4, 2:9, 7:15, 21:16, 21:19, 84:17, 102:14
**ways** [1] - 95:23
**wealthy** [1] - 35:15
**week** [4] - 5:21, 96:9, 97:15, 98:11
**weekly** [4] - 86:10, 86:12, 91:24, 92:5
**whole** [1] - 76:2
**wholly** [1] - 19:8
**wife** [2] - 84:20, 86:23
**wind** [1] - 93:10
**wires** [2] - 28:4, 28:6
**wish** [5] - 4:16, 18:5, 63:4, 94:2, 94:13
**withdraw** [3] - 72:8, 72:21, 77:11
**withdrawn** [1] - 77:24
**WITNESS** [1] - 40:13
**witnesses** [3] - 10:8, 10:11, 93:23
**WOO** [1] - 1:21
**Woo** [1] - 3:12
**wording** [1] - 44:8
**words** [6] - 9:3, 10:12, 13:8, 13:17, 14:4, 90:18
**works** [1] - 95:12
**writ** [1] - 12:12
**writer** [1] - 67:19
**writing** [3] - 5:25, 73:14, 79:7
**written** [6] - 16:18, 20:15, 27:10, 34:9, 39:25, 54:23
**wrote** [1] - 55:6

## W

**wait** [1] - 100:23
**waiting** [1] - 95:1
**waive** [3] - 4:5, 4:10, 83:10
**waived** [1] - 64:17
**waiver** [4] - 9:12, 12:2, 13:3, 15:13
**waiving** [3] - 12:17, 13:17, 76:2
**wake** [1] - 24:1
**walk** [1] - 99:9
**wants** [4] - 45:2, 88:25, 89:6, 89:9
**warned** [1] - 98:21
**warnings** [2] - 100:6, 100:13
**Washington** [11] -

## Y

**Y's** [2] - 29:3, 33:10
**years** [5] - 36:1, 63:19, 64:1, 76:17, 76:23
**York** [1] - 1:16
**yourself** [3] - 3:7, 10:20, 45:21
**yourselves** [1] - 93:16

## Z

**Z's** [1] - 30:4
**zero** [1] - 67:19